**ORAL ARGUMENT NOT YET SCHEDULED**

No. 25-5185

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

UNITED STATES INSTITUTE OF PEACE, *et al.*,

*Plaintiffs-Appellees*,

v.

KENNETH JACKSON, *et al.*,

*Defendants-Appellants*.

———————————

On Appeal from the United States District Court for the District of Columbia
No. 25-cv-804-BAH, The Honorable Beryl A. Howell, District Judge

———————————

**PLAINTIFFS-APPELLEES' OPPOSITION TO
DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR AN
ADMINISTRATIVE STAY AND PARTIAL STAY PENDING APPEAL**

———————————

ANDREW N. GOLDFARB
JACOBUS P. VAN DER VEN
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400
Washington, DC 20037
Telephone: (202) 778-1800

WILLIAM J. MURPHY
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Telephone: (410) 332-0444

*Counsel for Plaintiffs-Appellees*

June 2, 2025

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Appellees certify as follows:

**A.    Parties and *Amici***

All parties, intervenors, and *amici* appearing before the District Court and in this Court are listed in the motion for a stay filed by Appellants.[*]

**B.    Ruling Under Review**

Appellants' motion for a stay identifies the ruling at issue in this case.

**C.    Related Cases**

This case has not previously been before this Court.  Appellants' motion for a stay identifies other cases pending in the District Court and in this Circuit that challenge the President's removal of officials.

---

[*] Appellees' position, contrary to footnote 1 of Appellants' certificate, is that USIP is properly named as a plaintiff in this action.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

STATEMENT......................................................................................................4

A.  The Structure and Duties of USIP .......................................................4

B.  DOGE's Dismantling of USIP...............................................................8

C.  Procedural History of the Litigation....................................................10

REASONS FOR DENYING A STAY ....................................................11

I.   DEFENDANTS ARE NOT LIKELY TO PREVAIL ON THE MERITS
     OF THEIR APPEAL .......................................................................11

     A.  The USIP Act's Removal Restrictions Are Constitutional .........................11

         1.  USIP's activities are not executive in nature......................................12

             a. USIP's overseas activities are independent of and do not carry
                out the foreign policy of the executive branch................................12

             b. Issuing awards, grants, and contracts is not inherently
                governmental, let alone exclusively executive in nature ...............14

         2.  USIP is not part of the executive branch...........................................16

     B.  The District Court's Remedial Orders Were Proper .................................19

II.  DEFENDANTS CANNOT SHOW IRREPARABLE INJURY ......................20

III. THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR
     MAINTAINING THE STATUS QUO PENDING APPEAL...........................21

CONCLUSION ..................................................................................22

ADDENDUM
     RULE 26.1 DISCLOSURE STATEMENT

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

*Bessent v. Dellinger*,
 145 S. Ct. 515 (2025) ............................................19

*Buckley v. Valeo*,
 424 U.S. 1 (1976) ............................................15

*Department of Transportation v. Association of American Railroads*,
 575 U.S. 43 (2015) ............................................ 16, 17

*Department of Transportation v. Association of American Railroads*,
 821 F.3d 19 (D.C. Cir. 2016) ............................................17

*Dong v. Smithsonian Inst.*,
 125 F.3d 877 (D.C. Cir. 1997) ............................................ 15, 17

*Free Enterprise Fund v. PCAOB*,
 561 U.S. 477 (2010) ............................................16

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
 527 U.S. 308 (1999) ............................................19

*Harris v. Bessent*,
 No. 25-5037, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025)....................19

*Humphrey's Executor v. United States*,
 295 U.S. 602 (1935) ............................................1, 3, 11, 15, 18

*Kuretski v. CIR*,
 755 F.3d 929 (D.C. Cir. 2014) ............................................ 17, 18

*Lebron v. Nat'l RR Passenger Corp.*,
 513 U.S. 374 (1995) ............................................17

*Marbury v. Madison*,
 5 U.S. 137 (1803) ............................................19

*Owen v. Bd. of Dirs. of Wash. City Orphan Asylum*,
 888 A.2d 255 (D.C. 2005) ............................................19

*S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
  483 U.S. 522 (1987) ........................................................................18

*Schneider v. Kissinger*,
  412 F.3d 190 (D.C. Cir. 2005) ....................................................2, 16

*Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020) ......................................................................2, 12

*Springer v. Gov't of Philippine Islands*,
  277 U.S. 189 (1928) ..........................................................................17

*Trump v. Wilcox*,
  605 U.S. __, No. 24A966 (May 22, 2025) ...................... 1, 4, 12, 19, 20

*United States v. Curtiss-Wright Exp. Corp.*,
  299 U.S. 304 (1936) ..........................................................................16

*White v. Berry,*
  171 U.S. 366 (1898) ..........................................................................19

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
  576 U.S. 1 (2015) ..........................................................................2, 16

**STATUTES**

20 U.S.C. §§ 42-43...............................................................................18

22 U.S.C. § 10010(b)(1) .....................................................................12

22 U.S.C. § 4601(a)(6)...........................................................................8

22 U.S.C. § 4603(b) ...............................................................................5

22 U.S.C. § 4603(d) ...............................................................................5

22 U.S.C. § 4604(a) ...............................................................................5

22 U.S.C. § 4604(b) ...............................................................................7

22 U.S.C. § 4604(d) ...............................................................................7

22 U.S.C. § 4604(h)(3)(A)......................................................................5

22 U.S.C. § 4604(k) ................................................................5

22 U.S.C. § 4604(o) ................................................................5

22 U.S.C. § 4605(a) ................................................................6

22 U.S.C. § 4605(b)(1)-(3) ......................................................6

22 U.S.C. § 4605(b)(4)............................................................6

22 U.S.C. § 4605(c) ................................................................6

22 U.S.C. § 4605(d) ................................................................6

22 U.S.C. § 4605(e) ................................................................6

22 U.S.C. § 4605(f) .................................................................7

22 U.S.C. § 4606(a) ................................................................7

22 U.S.C. § 4606(d) ................................................................7

22 U.S.C. § 4606(f)(1) .............................................................5

22 U.S.C. § 4607(g) ................................................................5

22 U.S.C. § 4607(i) .................................................................5

22 U.S.C. § 4608(a) ................................................................5

22 U.S.C. §§ 4601-4611 ..........................................................4

28 U.S.C. § 624(3) ................................................................15

28 U.S.C. § 991(a) ................................................................18

31 U.S.C. § 703(a) ................................................................18

31 U.S.C. § 703(e) ................................................................18

## OTHER AUTHORITIES

Exec. Order No. 14217, 90 Fed. Reg. 10577 (Feb. 25, 2025)...................................9

Natalie P. Love, Cong. Rsch. Serv., RL30705, Federal Grants to State and Local Governments: A Brief History (2008)........................................................15

Pub. L. No. 98-525, 98 Stat. 2492 (1984)................................................................4

# INTRODUCTION

Congress created the United States Institute of Peace ("USIP") as an independent non-profit corporation outside the executive branch.  Unlike the NLRB and MSPB, which the Supreme Court deemed likely to fall outside the *Humphrey's Executor*[1] exception to at-will presidential removal for multi-member boards with staggered terms and partisan balance, *see Trump v. Wilcox*, 605 U.S. __, No. 24A966 (May 22, 2025) ("*Wilcox* Stay Order"), USIP is not an executive agency.  And even if it were, USIP would fit squarely within the *Humphrey's* exception because it exercises far less executive power than the 1935 FTC.  Neither the statutory authority Congress conferred on USIP, nor the activities in which USIP engages, involve the exercise of substantial executive power or any executive power at all.  As the District Court noted in its order denying Defendants' stay motion, like the Federal Reserve, USIP is "a 'uniquely structured quasi-private entity" with a pedigree derived from a long line of corporations starting with the First and Second Banks of the United States exempted from the *Wilcox* stay rationale.  ECF 46 ("Stay Op.") 3 (quoting *Wilcox* Stay Order 1).[2]

Defendants cannot make the necessary strong showing that the statutory restrictions on removal of USIP's directors are unconstitutional.  USIP does not

---

[1] *Humphrey's Executor v. United States*, 295 U.S. 602 (1935).
[2] The District Court's order denying a stay is attached as Exhibit 1.

regulate or enforce.  As the District Court found on an undisputed factual record,

far from being inherently executive, USIP's work promoting non-violent conflict

resolution through scholarship, education, training, applied research, and analysis

is like that of many non-governmental organizations, which also make grants, enter

contracts, and award scholarships.

Defendants' contrary argument hinges on an "overly generic view" of

"exclusively" executive power over foreign affairs.  Stay Op. 5.  The Supreme

Court and this Court have recognized the concurrent foreign affairs power of

Congress.  *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 21-22 (2015); *id.* at 66

(Roberts, C.J., dissenting); *id.* at 67 (Scalia, J., dissenting); *Schneider v. Kissinger*,

412 F.3d 190, 194 (D.C. Cir. 2005) (outlining the foreign relations powers

constitutionally assigned to both Congress and the executive branch).  And USIP's

hallmark is its authority to pursue its mission of promoting peaceful conflict

resolution independently from the executive branch bodies that formulate and

implement U.S. foreign policy.  The factual record shows that USIP does not

negotiate on behalf of the United States.

Defendants' constitutional challenge thus fails twice over.  First, because

even for executive branch agencies, Congress can restrict the removal of members

of boards of experts like USIP's that, like USIP, do not exercise substantial

executive power, *see Seila Law LLC v. CFPB*, 591 U.S. 197 (2020).  And second,

because USIP does not fall within the executive branch to begin with, and thus does not implicate the President's Article II authority at all.

While it is sufficient to deny Defendants' stay motion that the removal restrictions in USIP's statute are valid under *Humphrey's Executor* and *Wiener v. United States*, 357 U.S. 349 (1958) (itself an application of the rule to an executive commission engaged in foreign affairs), USIP's status as a non-profit corporation outside the executive branch is an independent ground for rejecting the constitutional challenge. From the earliest days of the Republic—the Sinking Fund Commission and the First Bank of the United States—Congress has established quasi-official (the U.S. Government Manual's classification for USIP) entities that defy assignment to the executive branch. The Smithsonian Institution, which has a structure incompatible with at-will presidential removal, is another example. Both the American Red Cross, which acts as the United States' representative in fulfilling certain international treaty obligations, and the U.S. Olympic Committee, which represents the United States in international bodies governing sport, are congressionally-chartered non-profits.

USIP's structure, as well as its lack of any inherently executive functions, place it outside the executive. For example, Congress specifically applied some statutes like the Freedom of Information Act ("FOIA") and Federal Tort Claims Act ("FTCA") to USIP that would have applied automatically if it were an

3

executive entity.  USIP has budgetary independence—it submits its budget request directly to Congress—that is inconsistent with executive status.  And USIP's employees are not federal employees.  In 1988, the executive branch ruled they were no longer eligible for federal benefits when Congress changed the civil service laws to exclude non-governmental entities.

The other stay factors also favor USIP.  The concern in *Wilcox* that the President would be irreparably harmed by the removed officers' exercise of considerable executive power, bolstered by the Solicitor General's proffer of actual conflicts, does not apply to USIP because it does not wield such power. Defendants do not claim irreparable injury from the restoration of control over USIP's facilities and assets to USIP's duly appointed leaders, who are securing those assets from further neglect.  On the other side of the ledger, USIP and the public have an interest in resuming USIP's statutory mission.  The balance of harms and the public interest favor sticking to the current status quo, which has restored the last uncontested status quo.

**STATEMENT**

**A. The Structure and Duties of USIP**

Congress established USIP in 1984 as an "independent nonprofit corporation."  Pub. L. No. 98-525, 98 Stat. 2492 (1984) (codified at 22 U.S.C. §§ 4601-4611).  It has authority to "exercise the powers conferred upon a nonprofit

4

corporation by the District of Columbia Nonprofit Corporation Act," except that USIP does not have the power to dissolve itself or to cease operations; those powers are reserved to Congress. *Id.* §§ 4603(b), 4604(a). USIP is authorized to seek appropriations directly from Congress. OMB's only authority is "to review and submit comments on the Institute's budget request at the time it is transmitted to Congress." *Id.* § 4608(a). Congress applied specific statutes to USIP that would apply automatically if it were an executive agency. *Id.* §§ 4606(f)(1) (FTCA), 4607(i) (FOIA); *see also id.* § 4604(o) (empowering USIP to *purchase* services from GSA); Mem. Op., *USIP* v. *Jackson*, No. 25-cv-804 (BAH) (D.D.C. May 19, 2025) (ECF 40) ("Op.") 63. USIP's biannual reports to Congress soon after it was established describe USIP as independent of the executive branch. Op. 62 n.25.

USIP owns its headquarters building, built with private funds raised by its Endowment pursuant to 22 U.S.C. § 4604(h)(3)(A), as well as special appropriations. USIP is a juridical person that can sue and be sued in its own name, is subject to *respondeat superior* liability, and lacks federal sovereign immunity. *Id.* §§ 4603(d), 4604(k). USIP is free to set compensation for its employees without regard to federal pay scales (*id.* § 4606(f)(1); ECF 34-6 (OPM memo)); pays employees from a private USIP bank account, rather than the U.S. Treasury (ECF 34-11 (Blotzer Decl. ¶ 3)); and hires its own private auditor. 22 U.S.C. § 4607(g); ECF 20 at 8 (SUMF 33)).

The "powers of the Institute" are vested in its Board of Directors. 22 U.S.C. § 4605(a). Of the 15 board positions, three are filled by *ex officio* members: the Secretaries of State and Defense (or their Senate-confirmed designees) and the president or vice-president of the National Defense University. *Id.* § 4605(b)(1)-(3). Twelve directors ("(b)(4) directors") are "individuals appointed by the President, by and with the advice and consent of the Senate." *Id.* § 4605(b)(4). The USIP Act requires partisan balance: "Not more than eight voting members of the Board . . . may be members of the same political party." *Id.* § 4605(c). The (b)(4) directors must have appropriate experience "in peace and conflict resolution efforts of the United States," and may not be officers or employees of the federal government. *Id.* § 4605(d).[3]

The (b)(4) directors serve staggered four-year terms. *Id.* § 4605(e). The President may remove them under only three circumstances:

> (1) in consultation with the Board, for conviction of a felony, malfeasance in office, persistent neglect of duties, or inability to discharge duties; (2) upon the recommendation of eight voting members of the Board; or (3) upon the recommendation of a majority of the members of the Committee on Foreign Affairs and the Committee on Education and Labor of the House of Representatives and a majority of the members of the Committee on

---

[3] Defendants point to President Reagan's signing statement (Mot. 6 n.5), but cite no authority that it is entitled to legal weight. It was President Reagan's directors who proclaimed USIP as independent from the executive branch in their reports. By 2008, President George W. Bush referred to USIP as a "non-governmental organization." ECF 26-1 at 7 (amicus brief of 128 USIP employees).

Foreign Relations and the Committee on Labor and Human Resources of the Senate.

*Id.* § 4605(f).[4]  The Board appoints USIP's president.  *Id.* § 4606(a).

"Officers and employees of the Institute shall not be considered officers and employees of the Federal Government" except for specified, limited purposes.  *Id.* § 4606(f)(1); *see also id.* § 4606(d) (federal employees who accept assignment to USIP temporarily lose federal status).  USIP's employees do not have federal civil service protection.  Defendants incorrectly state (Mot. 5) that USIP employees receive federal employment benefits: in fact, when Congress amended the laws governing federal employee benefits in 1988, all future USIP employees lost access to federal health insurance and retirement benefits because executive branch officials determined that USIP was *not* an executive agency nor even part of the government for purposes of federal personnel law.  Op. 50; *see* ECF 34-11 (Blotzer Decl. ¶¶ 3-4), ECF 34-7 (White House Director of Personnel memo).

USIP's activities "are solely focused on research, education, and scholarship."  Op. 65; *see also* 22 U.S.C. § 4604(b).  To engage in these activities, USIP may make grants and enter contracts with educational and research institutions.  *Id.* § 4604(d).  These activities are similar to those carried out by non-

---

[4] Contrary to Defendants' separate challenge (Mot. 20) to the ability of the President to effectuate removal via recommendations from Congressional committees, that provision (§ 4605(f)(3)), enhances rather than restricts his removal authority.  *See* Op. 87 n.36.

governmental organizations, by congressionally-chartered non-profits, and by congressional committees. Op. 66-67, 74.

USIP "may respond" to requests for studies from federal departments and agencies, § 4604(e), but is not required to comply with such requests. Rather, USIP sets its own priorities and chooses its own projects. Op. 45 (citing ECF 20-7 (Moose Decl. ¶¶ 9-12)). USIP also has engaged in substantial projects at the request of Congress. For example, in 2006 a bipartisan congressional group enlisted USIP to facilitate the Iraq Study Group by convening expert working groups, writing papers, providing analysis, and coordinating meetings. Op. 69.

Consistent with the USIP Act (§ 4601(a)(6)), USIP also participates in applied research, including peaceful conflict resolution efforts in other countries. USIP staff and contractors facilitate discussions that do not include participation by United States government agencies. USIP selects its own projects without seeking government approval, and its overseas staff is not supervised by the U.S. chief of mission. When engaged in these efforts, USIP does not act in the name of the government. Op. 68-72.

## B. DOGE's Dismantling of USIP

On February 19, 2025, the President directed four "governmental entities," including USIP, to "eliminate[]" their "non-statutory components and functions to . . . the maximum extent consistent with applicable law," and "reduce the

8

performance of their statutory functions and associated personnel to the minimum presence and function required by law."  Exec. Order No. 14217, 90 Fed. Reg. 10577 (Feb. 25, 2025).

On March 14, 2025, Trent Morse of the Office of Presidential Personnel sent emails firing all the (b)(4) directors.  Op. 16.  It is undisputed that the emails did not comply with the USIP Act's restrictions on board member removal.  Op. 15-22. That same day, USIP's *ex officio* board members purported to terminate USIP's Acting President, Ambassador Moose, and to appoint Kenneth Jackson as his replacement.  Op. 16.

On Monday, March 17, DOGE representatives entered the building with the assistance of an employee of USIP's former security contractor, accompanied by local police and federal agents acting at the direction of the U.S. Attorney's office. Op. 18-19.

Over the next two weeks, Jackson and Nate Cavanaugh, who was appointed by two of the *ex officio* board members as Jackson's successor, fired almost all USIP's employees.  Cavanaugh acted to transfer USIP's building to GSA without compensation, and transferred the funds held in USIP's and the Endowment's bank accounts.  Op. 21-22.  Under Cavanaugh's control, USIP halted *all* of its programs, even those mandated by Congress.  Op. 22.

After the District Court invalidated the removal of the individual Plaintiffs and restored their control over the building, Plaintiffs discovered that the USIP headquarters had been "essentially abandoned for many weeks." ECF 45-1 (Moose Decl. ¶ 8). Defendants had not maintained or secured the building while it was in their possession, resulting in physical damage, water damage, and infestation by rats and roaches. *Id.* ¶¶ 10-11.

### C. Procedural History of the Litigation

On March 18, the day after DOGE seized control of USIP's headquarters, USIP and five of its directors filed a complaint and a motion for temporary restraining order, seeking to nullify the unlawful terminations of the (b)(4) directors and regain control of USIP's building. ECF 1, 2. On March 19, the District Court denied the TRO request. 03/19/2025 Minute Order. On March 24, Plaintiffs filed an amended complaint, adding Ambassador Moose and a sixth board member as parties. ECF 12.

On May 19, after full briefing on cross-motions for summary judgment and a hearing, the District Court granted summary judgment for Plaintiffs and issued declaratory and injunctive relief invalidating the board terminations and all actions that followed therefrom. Op. 101-102; ECF 39 (Order).

On May 21, after obtaining assistance from Defendants' counsel, Acting President Moose and other USIP staff regained control over USIP's headquarters.

Under their leadership, USIP has begun the process of restoring its functions.  ECF

45-1 (Moose Decl. ¶ 7).  Later on May 21, Defendants moved to stay the District

Court's judgment.  ECF 42.

On May 23, Defendants filed their emergency motion for an administrative

stay and stay pending appeal in this Court.  A few hours later, the District Court

denied Defendants' stay motion.

## REASONS FOR DENYING A STAY

## I.    DEFENDANTS ARE NOT LIKELY TO PREVAIL ON THE MERITS OF THEIR APPEAL

### A. The USIP Act's Removal Restrictions Are Constitutional

Defendants do not dispute that USIP has a multi-member board with

staggered terms and partisan balance like the FTC in *Humphrey's Executor* or the

Wartime Claims Commission in *Wiener*.  Defendants also do not dispute that USIP

does not exercise any regulatory or enforcement power.  Yet they argue (Mot. 9-16)

that the statutory removal restrictions are nonetheless unconstitutional because

USIP is an executive branch agency[5] and exercises too much executive power for

those removal restrictions to be consistent with Article II.  Defendants' contention

is based on a legally inaccurate view of the President's "exclusive" control over

---

[5] Defendants incorrectly refer to USIP as an "agency" (Mot. 8, 18, 20) and a
"department" (*id.* 17).

foreign affairs and a factually inaccurate view of the record concerning USIP's functions.

Because USIP's activities are not executive in nature, the removal restrictions in the USIP Act do not implicate the President's Article II authority. But even if some of its activities were considered to be executive in nature, USIP does not wield "considerable" (*see Wilcox* Stay Order 1) or "substantial" (*see Seila Law*, 591 U.S. at 218) executive power; as a result, the removal protections in § 4605(f) are constitutional.

### 1. USIP's activities are not executive in nature

Defendants fail to fully appreciate that the District Court found from the undisputed factual record that USIP does not exercise executive power.

### a. USIP's overseas activities are independent of and do not carry out the foreign policy of the executive branch

Relying on snippets from declarations (Mot. 10-11 & n.6), Defendants argue that USIP "participat[es] in foreign affairs" and "[f]acilitat[es] the foreign policy of the United States" in a manner "not meaningfully different from" the State Department or other agencies.[6]  But that mischaracterizes the record, as reflected in

---

[6] Defendants (Mot. 11) cite 22 U.S.C. § 10010(b)(1), which creates an exception to the general prohibition against U.S. aid to the Sudanese security services.  That statute does not confer any statutory or executive authority on USIP, but rather allows *the Secretary of State* to provide certain assistance to Sudan "through institutions such as the Africa Center for Strategic Studies and the United States Institute of Peace."

the findings of the District Court that USIP does *not* carry out U.S. foreign policy.[7]

USIP's efforts to cultivate non-violent conflict resolution are not made on behalf of the United States government, and are no different in kind from efforts of other non-governmental organizations to foster peaceful resolution of disputes.

Defendants offered *no* evidence to contradict the 16 declarations and other exhibits demonstrating that USIP's overseas role is non-governmental in nature and facilitates USIP's own selected programmatic priorities rather than the foreign policy of the United States. *See* Op. 72-74. Unlike regulation and enforcement proceedings engaged in by government agencies, there is nothing inherently "executive" about the functions USIP actually performs. The factual record establishes that USIP acts as, and is perceived and accepted as, a non-governmental actor when performing its peacebuilding activities in the U.S. and overseas. *See, e.g.*, Op. 72-73 & n.29 (describing, *inter alia*, USIP's participation in "Track 2" dialogue, which involves informal discussions among non-governmental experts without participation of "official" governmental representatives).

Even the declarations Defendants cite in a footnote (Mot. 11 n.6) do not support their claim. Scott Worden was explicit that his work at USIP was

---

[7] *E.g.*, Op. 67-68 (quoting Decl. of Frank Aum (ECF 20-36) that "At USIP, I never engaged in any work that entailed executive branch authorities or obligations, such as implementing U.S. government policy, executing or enforcing U.S. laws, negotiating or signing treaties or agreements, conducting diplomacy, representing official U.S. government policies and interests….").

"fundamentally different" from his prior experience in executive branch agencies. ECF 20-34 (Worden Decl. ¶ 4). Brian Harding was explicit that the request for USIP to facilitate a ceasefire came from the Philippine government and the Moro Islamic Liberation Front, "not by the U.S. government." ECF 20-8 (Harding Decl. ¶ 6). He also emphasized that USIP staff abroad, unlike governmental personnel, are not subject to chief-of-mission authority. *Id.* ¶ 4. And Catherine Dale stressed that USIP's independence from the U.S. government was crucial for its work, including the facilitation of talks between representatives of Armenia and Azerbaijan in which the government did not participate. ECF 20-9 (Dale Decl. ¶¶ 5-7). To be sure, Congress has enlisted USIP to staff and provide input to congressionally created working groups, and on occasion federal agencies also have drawn on USIP expertise gained from ongoing projects. *See* ECF 20-32 (Montes Decl. ¶ 6); ECF 20-14 (Phelan Decl. ¶ 6, describing the Afghanistan Peace Process Study Group). But providing input to the government incident to existing peacebuilding work does not make USIP an executive agency or transform its work into an exercise of executive power.

    b. <u>Issuing awards, grants, and contracts is not inherently</u>
      <u>governmental, let alone exclusively executive in nature</u>

    Defendants also point to USIP's statutory authority to use some of its budget to administer awards and scholarship programs (Mot. 15), but those are not even inherently governmental functions, much less executive. The award of grants or

14

contracts to support research is not inherently executive, either. *See Dong v. Smithsonian Inst.*, 125 F.3d 877, 882 (D.C. Cir. 1997) (Smithsonian's use of part of its budget to fund grants and fellowships is "no different from any private research university which receives federal funds and enjoys some control over their use"). And even within the federal government, awarding scholarships and grants to support research is not within the exclusive province of the executive branch. As but one example, the board of the Federal Judicial Center is empowered to contract with "private agencies and persons for research projects." 28 U.S.C. § 624(3).

Moreover, it is Congress, not the executive, that has the constitutional spending power and directs how appropriated funds may be spent. *See generally* NATALIE P. LOVE, CONG. RSCH. SERV., RL30705, FEDERAL GRANTS TO STATE AND LOCAL GOVERNMENTS: A BRIEF HISTORY (2008) (detailing the history of grant making directly by Congress). The fact that Congress has authorized executive agencies to administer grant programs does not render the making of grants an inherently executive function.[8]

---

[8] Defendants' snippet from *Buckley v. Valeo* (Mot. 12) is not about grantmaking, but describes funding eligibility determinations among a list of functions "usually" performed by "independent" agencies or an Executive Department, and as a "significant *governmental*" function, not an inherently *executive* function. 424 U.S. 1, 140-41 (1976). The same paragraph notes that, even when performed by an executive agency, "the President may not insist that such functions be delegated to an appointee of his removable at will," citing *Humphrey's Executor*. *Id.*

## 2. USIP is not part of the executive branch

If the test for "whether a federal entity is part of the Executive Branch" is whether "the power it exercises" is inherently executive (Mot. 9), then USIP fails to qualify. USIP does not regulate or enforce any federal laws.[9] And, as shown above, its role in foreign activities is not as a "representative" of the United States interacting "with foreign nations," Mot. 10 (quoting *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936)), but rather that of a non-governmental organization applying its expertise to advance conflict resolution. Moreover, the Supreme Court has rejected the proposition that only the President has a role in foreign affairs. *Zivotofsky*, 576 U.S. at 21-22; *id.* at 66 (Roberts, C.J., dissenting); *id.* at 67 (Scalia, J., dissenting). Indeed, *Schneider*, the primary case on which Defendants rely (Mot. 10), contradicts Defendants' claim. In *Schneider*, this Court emphasized the "delegation of foreign policy and national security powers" to *Congress* as well as the executive branch. 412 F.3d at 194.

---

[9] To the extent that USIP is deemed governmental in some respects, nothing assigns it to the executive branch in the absence of regulatory and enforcement power. In *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 486 (2010), the Court accepted the parties' agreement that PCAOB's members were executive officers, noting the Board's extensive regulatory and enforcement powers that would otherwise have raised significant private non-delegation concerns about the entire statute. And in *Department of Transportation v. Association of American Railroads,* 575 U.S. 43, 55 (2015), the Court resolved a private non-delegation challenge to Amtrak's regulatory power without placing Amtrak in the executive branch. Op. 51.

Moreover, Congress has long created entities that defy Defendants'
simplistic thesis rejected by the District Court, but repeated in Defendants' stay
application (Mot. 13-14), that USIP must be executive because it is not part of
Congress or the judiciary. *See* Op. 57-60 & n.23 (discussing *Springer v. Gov't of
Philippine Islands*, 277 U.S. 189 (1928), and *Kuretski v. CIR*, 755 F.3d 929 (D.C.
Cir. 2014)); *see also* Stay Op. 4 n.1.[10]

There are many entities that defy Defendants' classification as executive by
default. Defendants' stay motion omits any discussion, for example, of the
Smithsonian Institution, established by Congress in 1846, or this Court's decision
holding that the Smithsonian "is not an establishment in the executive branch" for
purposes of the Privacy Act. *Dong*, 125 F.3d at 352. The Smithsonian defies the
proposition that if an entity is not part of Congress or the judiciary, it must be part
of the executive branch, affording the president "illimitable power" to remove the
members of its board. *See* Op. at 56-57 & n.21 (analyzing *Springer*'s handling of

---

[10] Defendants' process-of-elimination argument assumes that USIP is governmental
for all purposes. But the question of the internal division of power between
Congress (which restricted removal of USIP's board) and the executive is quite
different from whether an entity is considered governmental with respect to actions
affecting private parties—the issue in the two cases about Amtrak. *Lebron v. Nat'l
RR Passenger Corp.*, 513 U.S. 374 (1995) (Amtrak is governmental for purposes
of application of First Amendment); *AAR*, 575 U.S. 43 (Amtrak is governmental
for purposes of determining whether its regulatory power violates the private non-
delegation doctrine), *on remand*, 821 F.3d 19, 27-31 (D.C. Cir. 2016) (regulation
by Amtrak violated due process).

the Smithsonian as an entity outside the three branches). The Smithsonian's board includes members who are not subject to presidential removal. 20 U.S.C. §§ 42-43. Defendants' theory that any congressionally-chartered non-profit entity that serves a governmental purpose must be part of the executive branch and subject to presidential control would also envelop the American Red Cross, which is responsible for carrying out United States treaty obligations, and the U.S. Olympic Committee, which represents the United States in international bodies governing athletics. But that is not the law. *See S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542-47 (1987).

Finally, the fact that USIP's directors are presidentially appointed and subject to Senate confirmation does not mean that USIP is part of the executive and its directors subject to at-will presidential removal. Op. 53, 61; *see* 31 U.S.C. §§ 703(a) & (e) (appointment and removal of Comptroller General); 28 U.S.C. § 991(a) (members of U.S. Sentencing Commission, "an independent commission in the judicial branch," are subject to removal by the President only for cause).[11]

---

[11] It would not follow, in any event, that the statutory restrictions on the removal of USIP's board are unconstitutional if USIP is placed within the executive branch—even apart from *Humphrey's Executor*. In *Kuretski*, this Court found the Tax Court to be part of the executive branch, and that the for-cause statutory removal restriction for Tax Court judges posed no constitutional problem. 755 F.3d at 939. Yet under Defendants' reasoning, judges of the Tax Court—which exercises far more executive power than USIP—must be removable by the President at-will.

## B.  The District Court's Remedial Orders Were Proper

The wrongfully removed directors of a District of Columbia non-profit corporation can sue to set aside their wrongful removal.  *Owen v. Bd. of Dirs. of Wash. City Orphan Asylum*, 888 A.2d 255 (D.C. 2005) (reinstating wrongfully removed directors of congressionally-chartered D.C. charitable corporation).[12]

This Court's *en banc* order denying the government's request for a stay in the *Wilcox* and *Harris* cases rejected the government's argument based on the impermissibility of the relief ordered.  *See Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *2 (D.C. Cir. Apr. 7, 2025) ("The government likewise has not shown a strong likelihood of success on the merits of its claim that there is no available remedy for Harris or Wilcox, or that allowing the district court's injunctions to remain in place pending appeal is impermissible.").  The Supreme

---

[12] Defendants in the past have relied on language in *White v. Berry,* 171 U.S. 366 (1898), about the general prohibition of equitable relief when legal relief is available, *see Bessent v. Dellinger*, 145 S. Ct. 515, 516-18 (2025) (Gorsuch, J. dissenting).  But even if that language had force after the merger of law and equity, the legal relief afforded by mandamus would have the same effect as an injunction, because the removal of USIP's directors violated a non-discretionary statutory duty.  *See Marbury v. Madison*, 5 U.S. 137, 166-67, 173 (1803) (holding mandamus the appropriate remedy for unlawfully withheld commission to office).

The language in *White* also does not suggest that an injunction invalidating an official's unlawful removal exceeded the scope of relief provided by courts of equity at the time of the Founding.  *Cf. Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999) (determining that an order enjoining debtor's disposition of his property at the request of nonjudgment creditor was inconsistent with traditional equitable powers).

Court reversed this Court's denial of a stay on the sole ground that it was likely to

conclude that the removals at issue were invalid under Article II, without

questioning the availability of injunctive relief to nullify and remedy unlawful

removals.

## II.    DEFENDANTS CANNOT SHOW IRREPARABLE INJURY

The District Court's judgment did not inflict irreparable injury on

Defendants, and Defendants have not identified any specific harms they will suffer

if the duly appointed leadership of USIP remains in place during the pendency of

Defendants' appeal.  Defendants rely instead on the general language of the

Supreme Court's stay order in *Wilcox*.  Mot. 23-24.  In *Wilcox,* the Court credited

harm to the government by "allowing a removed officer to continue exercising the

*executive power*."  *Wilcox* Stay Order 1 (emphasis added).  Indeed, in its stay

application in *Wilcox*, the government asserted that the Administration was harmed

by an order "to continue allowing respondents to exercise executive power as

principal officers," based on specific policy conflicts.  No. 24A966 Stay App. 33-

35.  But Defendants cite no policy conflicts here, nor could there be when, as

shown *supra*, USIP plays no role in making or implementing presidential policy.

*See also* Stay Op. 6.  Certainly, USIP does not wield the "considerable executive

power" the Supreme Court determined to be at issue in *Wilcox*.  *Wilcox* Stay Order

1.  The President does not suffer irreparable injury to his Article II power when an

entity outside the executive branch continues to operate in accord with its statutory authority using funds appropriated by Congress.

## III.    THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR MAINTAINING THE STATUS QUO PENDING APPEAL

The remaining equitable factors also cut against Defendants.  Here, the public has an interest in allowing USIP to continue to carry out its statutory mission, which Congress re-authorized in 2009 and continues to fund.  As the District Court held: "Plaintiffs and the public . . . experience harm every day that plaintiffs are not able to carry out their statutory tasks."  Stay Op. 6.  Plaintiffs have an interest, not only in carrying out their own duties, but in seeing that USIP fulfills its mission under its corporate charter from Congress.  A stay of the District Court's order would instead disrupt the process now underway of returning USIP's assets and staff to service of that mission.

Defendants are wrong (Mot. 24-25) when they ask this Court not to consider the obvious harm to USIP itself from the firing of its staff and the misappropriation of its intellectual property, bank accounts, endowment funds, and headquarters building.  USIP is a legal entity distinct from Defendants.  It has a statutory right to sue for the incontrovertible harm caused when Defendants handed over control of USIP to DOGE.  USIP was harmed when its (b)(4) directors and acting president were terminated, and USIP will continue to be harmed if its directors and officers are unable to carry out USIP's statutory mission and if its unique building (Op. 95)

21

falls into disrepair in Defendants' hands.  The entry of a stay would result in the continuation of Defendants' unlawful efforts to dismantle the entity.

The public interest is served when laws passed by Congress and signed by the President are followed.  The balance of harms and public interest weigh decidedly against the unlawful actions taken by Defendants to destroy USIP and subvert its mission.

## CONCLUSION

The motion to stay the District Court's judgment pending appeal should be denied.  For the same reasons, the request for an administrative stay should also be denied.

June 2, 2025                                      Respectfully submitted,

*/s/ Andrew N. Goldfarb*
Andrew N. Goldfarb
Jacobus P. van der Ven
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
agoldfarb@zuckerman.com
cvanderven@zuckerman.com

William J. Murphy
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Telephone: (410) 332-0444
wmurphy@zuckerman.com

*Counsel for Plaintiffs-Appellees*

22

**ADDENDUM**

**RULE 26.1 DISCLOSURE STATEMENT**

The United States Institute of Peace is an independent non-profit corporation endowed by Congress with the powers of a District of Columbia non-member non-profit corporation except the power to cease activities and dissolve.  It has no parent corporation and no publicly held corporation owns 10% or more of its stock. As a non-member non-profit corporation, USIP has no shareholders.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the applicable type-volume limitation set forth in Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,193 words, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(f).

I further certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word Office in a proportionally spaced typeface (Times New Roman, 14 point).

*/s/ Andrew N. Goldfarb*
Andrew N. Goldfarb

# Exhibit 1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES INSTITUTE FOR
PEACE, *et al.*,

                Plaintiffs,

                v.

KENNETH JACKSON, *in his official
capacity*, *et al.*,

                Defendants.

Civil Action No. 25-cv-804 (BAH)

**Judge Beryl A. Howell**

## ORDER

       Two days after this Court's order granting summary judgment to the United States Institute of Peace ("USIP" or "the Institute") and its Board members, Order, ECF No. 39, defendants President Donald J. Trump, various DOGE administrators, and the new purported presidents of USIP filed a motion to stay that judgment pending appeal. *See* Defs.' Mot. to Stay ("Defs.' Mot."), ECF No. 42. Plaintiffs oppose a stay. *See* Pls.' Opp'n to Defs.' Mot. to Stay ("Pls.' Opp'n"), ECF No. 45. This Court declared that President Trump's termination of USIP Board members violated the statutory removal protections in 22 U.S.C. § 4605(f), and because those protections posed no constitutional problem, the terminations were null and void. *See* Order at 1. This Court also declared null and void actions taken as a result of those improper removals, including the removal and replacement of USIP President Ambassador Moose, as well as the transfer of property and other actions taken by those illegitimately installed replacements. *Id.* at 2-3. This Court then ordered that plaintiff Board members and Ambassador Moose remain in their leadership positions for USIP and may not be treated as having been removed, among

1

other concomitant relief. *Id.* at 3.   For the reasons explained below, defendants' motion to stay this Court's Order is **DENIED**.

Whether a stay is appropriate depends on four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors of the traditional standard are the most critical," *id.*, and the showing of likelihood of success must be "substantial," *Citizens for Resp. & Ethics in Washington* ("*CREW*") *v. Fed. Election Comm'n*, 904 F.3d 1014, 1018 (D.C. Cir. 2018).

For all of the reasons explained in this Court's Memorandum Opinion, defendants have not made the requisite showing that they are likely to succeed on the merits. *See* Mem. Op., ECF No. 40; *United States Inst. of Peace v. Jackson*, -- F. Supp. 3d --, 2025 WL 1428641 (D.D.C. May 19, 2025).  President Trump removed the USIP Board members without complying with the statutory requirements in 22 U.S.C. § 4605(f). *See USIP*, 2025 WL 1428641, at *7.  Defendants did not argue that the President met those requirements but rather challenged the constitutionality of the statutory removal restrictions, arguing that USIP is part of the Executive branch and its Board members are subject to at-will presidential removal under Article II of the Constitution. *See id.* at *12.  As the Court explained, however, while USIP may be considered part of the federal government, USIP does not exercise executive power and thus is not part of the Executive branch, so the President does not have absolute constitutional removal authority over USIP Board members but must comply with the statute in exercising his removal power. *See id.* at 14-34.  Further, even if USIP *were* part of the Executive branch, Congress's restrictions on the

President's exercise of constitutional removal authority in 22 U.S.C. § 4605(f) would be permissible under *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and its progeny, given USIP's Board's multimember structure and *de minimis*, if any, exercise of executive power. *See USIP*, 2025 WL 1428641, at *34-39. Thus, whether USIP is or is not part of the Executive branch, the President must comply with the various mechanisms at his disposal, as provided in the statute, 22 U.S.C. § 4605(f), to remove members of USIP's Board.

Contrary to defendants' suggestion, the Supreme Court's recent stay in *Trump v. Wilcox* has no bearing here. *See Trump v. Wilcox* ("*Wilcox* Stay Order"), No. 24A966, -- S. Ct. --, 2025 WL1464804 (May 22, 2025); *see* Defs.' Notice of Supp'l Auth, ECF No. 44; Pls.' Opp'n at 3. The Supreme Court there opined that the National Labor Relations Board ("NLRB") and Merit Systems Protection Board ("MSPB") "exercise considerable executive power" and thus invoked concerns about the President's Article II removal power. *Wilcox* Stay Order at *1. As explained in the Memorandum Opinion, USIP exercises considerably *less* executive power than such agencies. *See USIP*, 2025 WL 1428641, at *36. USIP is rather a "uniquely structured, quasi-private entity that follows in the distinct historical tradition of the First and Second Banks of the United States,"—the kind the Supreme Court explicitly noted are not "implicate[d]" by its stay decision. *Wilcox* Stay Order at *1; *Lebron v. Nat'l R. R. Passenger Corp.*, 513 U.S. 374, 386-87 (in considering the quasi-private yet governmental character of Amtrak, "plac[ing] [it] within its proper context in the long history of corporations created and participated in by the United States for the achievement of governmental objectives," the "first" of which "was the Bank of the United States"); *USIP*, 2025 WL 1428641, at *20-22 (analogizing USIP to Amtrak when analyzing its hybrid characteristics).

Defendants insist that the Court erred in concluding that USIP could be part of the government while not falling within one of the three branches. *See* Defs.' Mot. at 5-6. Defendants' cited authorities do not, however, hold that every entity must fall squarely within one of the three branches, and as the Court has previously pointed out, other entities also fall outside of this tripartite structure. *See USIP*, 2025 WL 1428641, at *24-26.[1]  Refraining from classifying USIP as squarely within a particular branch does not make it "unanswerable to the electorate or the Judiciary," as defendants contend. Defs.' Mot. at 5. To the contrary, the Institute is highly responsive to both Congress and the Executive branch through numerous oversight mechanisms (including mandatory biennial reporting to both branches), control of appropriations on which the organization is largely dependent, the President's ability to appoint all voting Board members (including two that are part of his Cabinet), and the President's broad—though not limitless—removal authority. *See USIP*, 2025 WL 1428641, at *38.[2]

Moreover, defendants' argument that USIP exercises "core executive powers" because the Institute "promot[es] peace and alternatives to war, including by distributing directly appropriated funds to private entities" and "travel[s] to foreign countries and attempt[s] to

---

[1]     This Court's Memorandum Opinion addressed explicitly many of the cases cited by defendants in their Stay Motion. *See USIP*, 2025 WL 1428641, at *24-26; Defs.' Mot. at 5-6. Those not previously explicitly addressed likewise do not clearly hold that every governmental entity must fall within one of the three branches, nor are any of them binding on this Court. *See* Defs.' Mot. at 5-6; *VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 24-cv-2577 (TNM), 2024 WL 5056358, at *7 (D.D.C. 2024) (explaining that regulatory agencies are generally considered part of the executive branch, even when performing adjudicatory functions); *Commonwealth Edison Co. v. U.S. Nuclear Regul. Comm'n*, 830 F.2d 610, 619 (7th Cir. 1987) (using process-of-elimination reasoning to hold only that the Nuclear Regulatory Commission is an "executive or legislative agency" for a particular statutory purpose); *Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 896-97 (3d Cir. 1986) (Becker, J., concurring in part) (opining, only in a concurrence in a case that was subsequently reheard after the Supreme Court's opinion in *Bowser v. Synar*, 478 U.S. 714 (1986), that agency powers must "fit within a government of three branches"); *see also* Pls.' Opp'n at 5-6 (distinguishing these cases).

[2]     *See also* 22 U.S.C. § 4611 (biennial reporting to Congress and the President); *id.* § 4607(g)-(h) (requiring an annual audit that is reported to Congress); *id.* § 4606(d)(2) (allowing the Secretary of State, Secretary of Defense, and the CIA Director to assign their own officers to the Institute for certain projects); *id.* § 4605(b) (providing for presidential appointment of Board members); *id.* § 4605(f)(2)-(3) (describing how the President may remove Board members without cause upon recommendation of eight other voting Board members or upon recommendation of a majority of certain House and Senate committees).

negotiate peace" is both legally and factually wrong. Defs.' Mot. at 6-7. Those activities are not, as defendants suppose, inherently executive just because they involve foreign relations. As the Court explained, NGOs regularly engage in similar activities. *See USIP*, 2025 WL 1428641, at *33. What matters is whether the entity is doing so under the auspices of the President of the United States. *See id.* USIP neither represents nor acts on behalf of the Executive branch, and instead operates abroad as an independent think tank. *See id.* at *30-32. Further, defendants misrepresent the activities USIP undertakes abroad. USIP is a scholarly, research-oriented, educational institution or "think tank." While its focus on peace leads USIP to deliver workshops, conduct field research, and facilitate discussions on the subject of resolving conflicts, the Institute in no way occupies the same role as the Executive branch in formally negotiating foreign agreements. *See id.* at *29-32. Defendants' overly generic view of Executive power is perhaps convenient, one conducive to aggrandizing presidential authority, but this Court must take a more scrutinizing approach to the nature of executive power under the Constitution and the character of the authority USIP wields. *See Kuretski v. Comm'r of Internal Revenue*, 755 F.3d 929, 941 (D.C. Cir. 2014) (instructing courts, when resolving separation-of-powers disputes, to look not to the nature of a particular branch's power "in 'an enlarged sense'" but rather in the specific sense as meant by the Constitution (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 592 U.S. 272, 280 (1856))).

Defendants next argue that the Court's issuance of injunctive relief was improper but cite only dissenting opinions in support of that point. *See* Defs.' Mot. at 7; *see also USIP*, 2025 WL 1428641, at *44 n.43 (noting that mandamus relief would be proper if injunctive relief were not). The questions before this Court were indeed "novel," Defs.' Mot. at 1, but novelty is no substitute for failure to demonstrate likelihood of success on the merits.

Indeed, defendants' failure to show likelihood of success is "an arguably fatal flaw for a stay application," *CREW*, 904 F.3d at 1019, but regardless, defendants also fail to satisfy the other factors.  Defendants do not describe any cognizable harm they will experience without a stay, let alone an irreparable one.  *See* Defs.' Mot. at 7-8 (describing only the harm of "unwinding" Executive branch efforts that were never lawful to take and spending of government funds that have been duly appropriated); *see also USIP*, 2025 WL 1428641, at *38-39 (describing other ways the President may remove USIP Board members or otherwise exert influence over the Institute in a lawful manner).  Defendants point to the *Wilcox* Stay Order to suggest that the government faces a "risk of harm from an order allowing a removed officer" to remain.  Defs.' Notice of Supp'l Auth. at 1 (quoting *Wilcox* Stay Order at *1).  Yet, the Supreme Court specified that the risk of harm was that of allowing a removed officer to "continue exercising the *executive* power."  *Id.* (emphasis added).  Such a risk is not present in this case because, again, the Institute's Board members do not exercise any meaningful executive power under our Constitution.  Plaintiffs and the public, on the other hand, experience harm every day that plaintiffs are not able to carry out their statutory tasks and operate USIP with independence and expertise.  *See USIP*, 2025 WL 1428641, at *41-43; *cf. New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, C.J., in chambers) (describing irreparable harm to the government that occurs "any time" it is unable to "effectuat[e] statutes enacted by representatives of its people").  As plaintiffs explain, every day that goes by without the relief this Court ordered, "the job of putting [USIP] back together by rehiring employees and stemming the dissipation of USIP's goodwill and reputation for independence will become that much harder."  Pls.' Opp'n at 11.[3]

---

[3]    Plaintiffs also point out damage that occurred to the USIP headquarters building during the period where it was under GSA, rather than USIP, control.  *See* Pls.' Opp'n, Ex. A, Decl. of Amb. George Moose, USIP president

In the alternative, defendants have requested a "two-business-day administrative stay to allow defendants to seek a stay from the D.C. Circuit." *See* Defs.' Mot. at 9. Defendants do not provide any separate rationale to warrant such an administrative stay, and none is apparent in light of the equities and public interest just discussed.

Accordingly, it is hereby--

**ORDERED** that defendants' motion to stay the judgment pending appeal, ECF No. 42, is **DENIED**.

**SO ORDERED**.

Date: May 23, 2025

*This is a final and appealable order.*



**BERYL A. HOWELL**
United States District Judge

---

¶¶ 10-12, ECF No. 45-1 (describing evidence of rats and roaches, leaks, and external damage resulting from the building having been vacant and unmaintained for weeks). Such damage is relevant to the weighing of the equities in considering the state of USIP's assets during the pendency of appellate litigation.