No. 25-5185

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

UNITED STATES INSTITUTE OF PEACE, et al.,

Plaintiffs-Appellees,

v.

KENNETH JACKSON, in his official capacity as Assistant to the Administrator for Management and Resources for USAID, et al.,

Defendants-Appellants.

---

On Appeal from the United States District Court
for the District of Columbia

---

# REPLY IN SUPPORT OF EMERGENCY MOTION FOR AN ADMINISTRATIVE STAY AND FOR A STAY PENDING APPEAL

---

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE
MCKAYE L. NEUMEISTER
COURTNEY E. ALBINI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7209*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1673*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..................................................................................... i

INTRODUCTION ............................................................................................. 1

ARGUMENT ..................................................................................................... 2

A. The Government Is Likely To Prevail On The Merits. ......................... 2

    1. The President may remove USIP Board members without restriction. ................................................................................... 2

        a. USIP constitutes part of the Executive Branch for separation-of-powers purposes. ........................................ 3

        b. Because USIP exercises considerable executive power, the President's at-will removal authority applies. ............................................................................... 7

    2. The district court lacked authority to order reinstatement. ........ 9

B. The Remaining Factors Support A Stay. ............................................. 12

CONCLUSION ................................................................................................ 14

CERTIFICATE OF COMPLIANCE

## INTRODUCTION

As the government showed in its stay motion, the district court's order reinstating principal officers of the United States lawfully removed by the President works a grave harm to the separation of powers, warranting an immediate stay. Plaintiffs' contention that the President lacks inherent constitutional authority to remove Board members of the United States Institute of Peace (USIP) rests on a misreading of governing precedent and an overly restrictive view of executive power. As evidenced by its programmatic, grant-making, and peacebuilding activities, USIP is an executive agency "exercis[ing] considerable executive power." *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025). USIP's Board members are thus principal executive officers, appointed by the President to faithfully execute the United States Institute of Peace Act, and subject to the President's at-will removal authority.

Plaintiffs also contend that the district court was empowered to restore them as principal officers. But such relief "impinges on the conclusive and preclusive power through which the President controls the Executive Branch that he is responsible for supervising." *Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518, at *3 (D.C. Cir. Mar. 10, 2025).

Finally, plaintiffs' balancing of harms is contrary to the Supreme Court's recent confirmation that "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Wilcox*, 145 S. Ct. at 1415. A stay is equally warranted here.

## ARGUMENT

### A. The Government Is Likely To Prevail On The Merits.

#### 1. The President may remove USIP Board members without restriction.

The Supreme Court has repeatedly reaffirmed the "general rule" that "the President possesses 'the authority to remove those who assist him in carrying out his duties.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 215 (2020). The President "is elected by the entire Nation" and is constitutionally "responsible for the actions of the Executive Branch." *Id.* at 224. The Heads of Executive Departments must therefore be directly accountable to the President. Accordingly, "the President's power to remove 'executive officers of the United States whom he has appointed' may not be regulated by Congress or reviewed by the courts." *Trump v. United States*, 603 U.S. 593, 621 (2024).

2

Plaintiffs nevertheless insist that 22 U.S.C. § 4605(f)'s removal restrictions are constitutional because (1) USIP is not part of the Executive Branch, and (2) USIP does not exercise sufficient executive power to render inapplicable the exception in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). Both arguments are incorrect.

### a. USIP constitutes part of the Executive Branch for separation-of-powers purposes.

As an initial matter, plaintiffs do not seriously dispute that USIP is part of the federal government for constitutional separation-of-powers purposes. For good reason: "The political branches created [USIP], control its Board, define its mission, specify many of its day-to-day operations, have imposed substantial transparency and accountability mechanisms, and, for all practical purposes, set and supervise its annual budget." *Department of Transp. v. Association of Am. Railroads*, 575 U.S. 43, 55 (2015) (*AAR*); *see Herron v. Fannie Mae*, 861 F.3d 160, 167-68 (D.C. Cir. 2017).[1]

Plaintiffs contend, however, that USIP is not part of the Executive Branch because it "does not regulate or enforce any federal laws," by which

---

[1] Plaintiffs briefly suggest (Resp.17 n.10) the question here is different from *AAR* and *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995). But the Supreme Court made clear in *AAR* its test was applicable to "constitutional issues" implicating the "separation of powers." 575 U.S. at 55.

3

they appear to mean regulation or enforcement against private parties, such as by investigating legal violations and imposing sanctions. Resp.16 & n.9. Plaintiffs are wrong that only entities regulating or enforcing federal laws against private parties in this way are part of the Executive Branch. Myriad agencies implement executive policy through other means. Developing and administering programs to implement federal policy clearly entails the exercise of executive power. *See* Mot.12-13. Plaintiffs' bare assertion that "administer[ing] awards and scholarship programs" is not an "inherently governmental" or "executive" "functio[n]," Resp.14, excludes what truly matters: the exercise of statutory functions. USIP establishes, develops, and carries out programs, consistent with congressional directives, to achieve statutory objectives. In other words, USIP executes the law. And issuing grants is one means through which USIP does so, like many other grant-making executive agencies. *See Grant-Making Agencies*, https://perma.cc/C3GW-NHYT.

Contrary to plaintiffs' suggestion (Resp.15), grant-making is not a judicial or legislative power. The Federal Judicial Center Board is authorized to "contract … for research projects and other services," not to issue grants that effectuate statutory objectives in the administration of federal programs. 28 U.S.C. § 624. To be sure, Congress is free to appropriate funds.

4

But where Congress creates a grant program to effectuate statutory objectives, the discretionary function of determining how to administer that program and distribute those grants is the exercise of executive power.

Plaintiffs also object (Resp.16) that USIP's foreign-affairs activities do not render it executive, because Congress "has a role in foreign affairs." It is the President, however, who has the power "to make Treaties," to "appoint Ambassadors," and to "receive Ambassadors and other public Ministers." U.S. Const. art. II, §§ 2-3. The Supreme Court has accordingly "described the President as possessing 'plenary and exclusive power' in the international arena and 'as the sole organ of the federal government in the field of international relations.'" *Schneider v. Kissinger*, 412 F.3d 190, 195 (D.C. Cir. 2005) (quoting *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936)). Working with foreign governments to facilitate peace talks thus clearly falls within the President's foreign-affairs powers; plaintiffs provide no examples of Congress engaging in such activities.[2]

---

[2] Even assuming arguendo various "congressionally-chartered" entities plaintiffs identify exist outside the three branches of government (Resp.17-18), that is irrelevant here. The Court need not resolve whether entities that are governmental for separation-of-powers purposes can exist outside the tri-partite federal structure, because here it is clear based on an analysis of its powers that USIP is located within the Executive Branch.

5

Plaintiffs also emphasize (Resp.3-4) that Congress did not treat USIP as an executive agency under certain statutes. But "for purposes of … status as a federal actor or instrumentality under the Constitution, the practical reality of federal control and supervision prevails over Congress' disclaimer of … governmental status." *AAR*, 575 U.S. at 55. The same is true of an entity's location within the Executive Branch: practical functions trump congressional labels. *See Intercollegiate Broad. Sys. Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1341-42 (D.C. Cir. 2012).

Plaintiffs assert that Presidential appointment alone does not make Board members part of the Executive Branch. *See* Resp.18. But it is not merely appointment that is relevant; the ex officio Board members—the Secretaries of State and Defense, and the President of the National Defense University—are clearly part of the Executive Branch, *see* 22 U.S.C. § 4605(b). And the Board is designed to be controlled by the President's political party. *See id.* § 4605(c). Presidential appointment and control demonstrate executive status. *See Intercollegiate Broad. Sys.*, 684 F.3d at 1341.

Finally, plaintiffs insist (Resp.13) that USIP pursues "its own selected programmatic priorities rather than the foreign policy of the United States." But Congress expressly established USIP as a "national institution" "to further the Nation's interest in promoting international peace," "enlarge [the

6

Nation's] capacity to promote the peaceful resolution of international conflict," and "serve the people and the Government." 22 U.S.C. § 4601(a)(5), (a)(7), (a)(8), (b). It is the President who determines the contours of the Nation's peacekeeping interests.

USIP itself has explained that the President's appointment of Board members, "and the Executive branch's ongoing role in Board decision making through the *ex officio* members, reflec[t] Congress's intent that the Institute remain responsive to national policy considerations in the conduct of its programs and operations." Dkt. 1-2, at 8. "[P]ursuant to its congressional mandate, [USIP] has collaborated closely with seven presidential administrations," and through the ex officio members on its Board, "as well as its constant communication with a wide spectrum of Executive branch agencies, [USIP] has routinely sought to ensure that its work furthers common goals." *Id*. at 9.

> **b.  Because USIP exercises considerable executive power, the President's at-will removal authority applies.**

The same functions that evidence USIP's position within the Executive Branch demonstrate that USIP "exercise[s] considerable executive power," *Wilcox*, 145 S. Ct. at 1415, requiring that its Board members be removable at will. *See* Mot.18-19.

7

Plaintiffs object that its peacebuilding activities cannot be executive powers because USIP is not overtly acting as the Executive Branch. Resp.13-14. But perception does not dictate constitutional reality. The fact that USIP does not technically operate within the State Department—and can operate in certain contexts where State does not—does not mean USIP is not exercising executive power. *See Kuretski v. Commissioner*, 755 F.3d 929, 939-44 (D.C. Cir. 2014) ("Congress may afford the officers of [certain] entities a measure of independence from other executive actors, but they remain Executive-Branch officers subject to presidential removal.").

Here, the nature of USIP's powers—to "facilitate a ceasefire" and "facilitat[e] talks between representatives of" foreign nations, Resp.14, under the moniker of the United States, 22 U.S.C. § 4603(e)(2), and in alignment with executive policy, *supra*—clearly involve the exercise of executive power. The Executive Branch regularly endeavors to facilitate peace processes abroad, including by sponsoring peace talks between conflicting foreign nations and parties.[3] Because USIP likewise "exercise[s]" this "considerable

---

[3] *See, e.g.*, National Museum of American Diplomacy, *Diplomacy Ends a War: The Dayton Accords*, https://perma.cc/NT9M-MULX; U.S. Department of State, Office of the Historian, *Camp David Accords and the Arab-Israeli Peace Process*, https://perma.cc/RV9T-Z9M5.

8

executive power," *Wilcox*, 145 S. Ct. at 1415, statutory restrictions on removal of Board members are unconstitutional.

Plaintiffs nonetheless suggest USIP is "exempted from the *Wilcox* stay rationale," because it is a "uniquely structured quasi-private entity" like the Federal Reserve. Resp.1. But the Federal Reserve has a "special historical status," *Seila Law*, 591 U.S. at 222 n.8, which "follows in the distinct historical tradition of the First and Second Banks of the United States," *Wilcox*, 145 S. Ct. at 1415; *see PHH Corp. v. CFPB*, 881 F.3d 75, 192 n.17 (D.C. Cir. 2018) (en banc) (Kavanaugh, J., dissenting) (describing any "exception" for the Federal Reserve as "an historical anomaly" reflecting its "unique function … with respect to monetary policy"). USIP has no similar unique historic pedigree.

## 2. The district court lacked authority to order reinstatement.

The government is also likely to succeed in showing that the district court exceeded its remedial authority. Despite the President's removal of plaintiff Board members, the district court declared that plaintiffs "shall continue to serve" and may "be removed by the United States President only pursuant to the terms of 22 U.S.C. § 4605(f)." Order 2-3. The real-world effect of that relief is to countermand the President's removal of executive principal officers and reinstate them to office. But the well-settled rule is

9

that "a court of equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 125 U.S. 200, 212 (1888); *accord Baker v. Carr*, 369 U.S. 186, 231 (1962). Whether "directors of a District of Columbia non-profit corporation" can generally "sue to set aside their wrongful removal" is inapposite. Resp.19.

Plaintiffs offer no response to the government's showing that injunctions or declaratory judgments reinstating removed executive officers violate Article II and are not authorized by statute. Mot.21-22. And plaintiffs offer no convincing response to the long line of precedents that "'a court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee.'" *White v. Berry*, 171 U.S. 366, 377 (1898). Plaintiffs erroneously contend (Resp.19 n.12) that *White* "does not suggest that an injunction invalidating an official's unlawful removal exceeded the scope of relief provided by courts of equity at the time of the Founding." Not so. *See Dellinger*, 145 S. Ct. at 517 (Gorsuch, J., dissenting) ("[C]ourts of equity at the time of the founding were apparently powerless to 'restrain an executive officer from making a removal of a subordinate appointee.'" (quoting *White*, 171 U.S. at 377) (alteration omitted)); *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *5 (D.C. Cir. Apr. 7, 2025) (Rao, J., dissenting) (similar).

10

Plaintiffs briefly invoke (Resp.19 n.12) mandamus as a legal basis for reinstatement. But the district court issued injunctions and declaratory judgments, and plaintiffs cannot "defend the district court's exercise of its *equitable* remedial authority by pointing to a distinct legal remedy" that "the district court never invoked." *Bessent v. Dellinger*, 145 S. Ct. 515, 517 (2025) (Gorsuch, J., dissenting). Nor are the standards for mandamus met: the President's determination of who should be entrusted with powers of a principal executive officer is anything but ministerial, and plaintiffs' entitlement to restrict the President's removal authority is neither clear nor indisputable.

Finally, plaintiffs' point to this Court's rejection of the government's argument on reinstatement in *Wilcox* and *Harris*, and the fact the Supreme Court did not reach the issue in reversing this Court's denial of a stay. Resp.19-20. The *Harris/Wilcox* order, which rejects the argument in a single sentence without explanation, is not binding precedent. *See Harris*, 2025 WL 1021435, at *2 (per curiam). The government respectfully submits that Justice Gorsuch and Judge Rao have the better of the argument. *Id*. at *2-*7

11

(Rao, J., dissenting); *Dellinger*, 145 S. Ct. at 516-18 (Gorsuch, J., dissenting).[4]

## B. The Remaining Factors Support A Stay.

In staying the district courts' reinstatement orders in *Harris/Wilcox*, the Supreme Court concluded "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Wilcox*, 145 S. Ct. at 1415. The same is true here.

It would be "impossible to unwind the days during which a President is directed to recognize and work with a 'principal officer'" "whom he has already removed." *Dellinger*, 2025 WL 887518, at *3 (quotation marks and alterations omitted). The "relative importance" of USIP's functions "g[o] to the extent—and not the character—of the President's injury." *Id.* Plaintiffs "would likely be entitled to backpay if [they] were to prevail on appeal," and their removal alone "does not mean" their "injury is irreparable." *Id.* at *4. "By contrast, the potential injury to the government of … having to try and unravel [the reinstated Board's] actions is substantial." *Id.*

---

[4] Although a panel recently followed the *Harris/Wilcox* order as to the reinstatement question in a stay posture, *see* Order 4, *Aviel v. Gore*, No. 25-5105 (D.C. Cir. June 6, 2025), we respectfully disagree.

12

Plaintiffs continue to invoke an "interest … in carrying out their own duties," Mot.21, but they have no personal interest in exercising the power of their former offices. Plaintiffs also continue to improperly assert harms to USIP as an institution (Resp.21-22), but as the government has shown (Mot.24), USIP is not a proper plaintiff here.

Finally, plaintiffs assert harm to the public interest from USIP failing to "carry out its statutory mission." Resp.21. But the Executive Order specifically contemplates that USIP will continue to do so; the President has simply determined it is in the public interest for USIP's activities to be limited to its minimum statutory functions. *See* Executive Order 14,217, 90 Fed. Reg. 10,577 (Feb. 19, 2025).

## CONCLUSION

This Court should stay the district court's order pending appeal and should issue an immediate administrative stay.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE
McKAYE NEUMEISTER
<u>/s/ Courtney E. Albini</u>
COURTNEY E. ALBINI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7209*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1673*

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,584 words. This filing also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

*/s/ Courtney E. Albini*
Courtney E. Albini