**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————

UNITED STATES INSTITUTE OF PEACE, *et al.*,

*Plaintiffs-Appellees*,

v.

KENNETH JACKSON, *et al.*,

*Defendants-Appellants*.

———————

On Appeal from the United States District Court for the District of Columbia
No. 25-cv-804-BAH, The Honorable Beryl A. Howell, District Judge

———————

**PETITION FOR REHEARING EN BANC AND
APPLICATION FOR EMERGENCY ADMINISTRATIVE STAY
OF JUNE 27 ORDER BY MOTIONS PANEL**

———————

ANDREW N. GOLDFARB
JACOBUS P. VAN DER VEN
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400
Washington, DC 20037
Telephone: (202) 778-1800

WILLIAM J. MURPHY
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Telephone: (410) 332-0444

*Counsel for Plaintiffs-Appellees*

June 29, 2025

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Appellees certify as follows:

## A.    Parties and *Amici*

Plaintiffs in district court, and appellees here, are the United States Institute of Peace (USIP); Ambassador John J. Sullivan, in his official capacity as USIP's Board Chairman; Nancy Zirkin, Judy Ansley, Joseph L. Falk, Kerry Kennedy, and Mary Swig, in their official capacities as USIP Board members; and Ambassador George E. Moose, in his official capacity as USIP's Acting President and *ex officio* Board member.  Defendants are Kenneth Jackson, Amy Gleason, James Burnham, Jacob Altik, Nate Cavanaugh, Secretary Marco Rubio, Secretary Pete Hegseth, Vice Admiral Peter A. Garvin, Trent Morse, and President Donald J. Trump, in their official capacities; the U.S. DOGE Service, and the U.S. DOGE Service Temporary Organization.

A group of 113 Former Senior Military and Foreign Policy Officials filed a brief as amici curiae in district court.  Those officials are: Hon. Bernadette M. Allen, Hon. Bernard W. Aronson, Hon. J. Brian Atwood, Hon. Daniel B. Baer, Hon. Shirley Elizabeth Barnes, Hon. Frederick Barton, Hon. Peter W. Bodde, Hon. Barbara Bodine, Hon. Richard A. Boucher, Hon. Robert A. Bradtke, Hon. Kenneth C. Brill, Hon. Johnnie Carson, Hon. Wendy Chamberlin, Hon. Chester A. Crocker, Hon. Ryan Crocker, Hon. Lisa Curtis, Hon. Jeffrey Davidow, Hon. Ruth A. Davis,

Hon. Jeffrey DeLaurentis, Hon. Kathleen A. Doherty, Hon. Eric Edelman, Lt. Gen. Karl Eikenberry, Hon. Nancy H. Ely-Raphel, Hon. Kenneth J. Fairfax , Hon. John D. Feeley, Hon. Jeffrey Feltman, Hon. Robert Ford, Hon. Laurie S. Fulton, Hon. Robert L. Gallucci, Hon. Michelle Gavin, Hon. Daniel R. Glickman, Hon. Edward W. Gnehm, Hon. Rose E. Gottemoeller, Hon. Gordon Gray, Hon. Michael E. Guest, Hon. Stephen J. Hadley, Hon. John A. Heffern, Lt. Gen. Ben Hodges, Hon. Arthur H. Hughes, Hon. Cameron Hume, Hon. Robert Hutchings, Hon. Susan E. Jacobs, Hon. Makila James, Hon. David T. Johnson, Hon. Deborah K. Jones, Hon. A. Elizabeth Jones, Hon. Colin Kahl, Hon. Theodore H. Kattouf, Hon. Richard D. Kauzlarich, Hon. Laura Kennedy, Hon. Patrick F. Kennedy, Hon. Jimmy J. Kolker, Hon. Thomas C. Krajeski, Hon. Daniel C. Kurtzer, Hon. Ellen Laipson, Hon. Barbara Leaf, Hon. Richard LeBaron, Hon. Mark W. Libby, Hon. Hugo Llorens, Lt. Gen. Douglas Lute, Hon. Steven R. Mann, Hon. Dennise Mathieu, Hon. Nancy McEldowney, Hon. Elizabeth Davenport McKune, Hon. James D. Melville, Jr., Hon. Richard M. Miles, Hon. Thomas J. Miller, Hon. Derek Mitchell, Hon. Allan P. Mustard, Hon. Wanda L. Nesbitt, Hon. Ronald W. Neumann, Rear Adm. Huan Nguyen, Hon. Ted Osius, Hon. Geeta Pasi, Hon. Anne Patterson, Hon. Thomas S. P. Perriello, Hon. William J. Perry, Hon. Robert C. Perry, Hon. James D. Pettit, Hon. Thomas R. Pickering, Hon. Steven K. Pifer, Hon. Jo Ellen Powell, Hon. Robin L. Raphel, Hon. Charles Ray, Hon. Daniel N. Rosenblum, Hon. Dennis B.

Ross, Adm. Gary Roughead, Hon. William A. Rugh, Hon. Teresita C. Schaffer, Hon. Mattie R. Sharpless, Hon. David B. Shear, Hon. David H. Shinn, Hon. Anne-Marie Slaughter, Hon. Amanda Sloat, Hon. Joan Spero, Hon. Sylvia G. Stanfield, Hon. Mark C. Storella, Hon. William B. Taylor, Jr., Hon. Linda Thomas-Greenfield, Hon. Toni Verstandig, Hon. Jacob Walles, Hon. Mark Ward, Hon. Earl A. Wayne, Hon. Kevin Whitaker, Hon. Bisa Williams, Hon. Molly Williamson, Hon. Ross L. Wilson, Hon. Anne A. Witkowsky, Hon. Kenneth Yalowitz, Hon. Donald Yamamoto, Hon. Marie Yovanovitch, Hon. Uzra Zeya, and Gen. Anthony C. Zinni.

A group of 128 former USIP employees and personal service contractors also filed a brief as amici curiae in district court. Those individuals are: Pamela Aall, Camille Akinnusotu, April Alley, Sayed Habib Ameri, Kateira Aryaeinejad, Lauren Baillie, Nicoletta Barbera, Robert Barron, Jon F. Bishop, Tegan Blaine, Kent Brokenshire, Cassandra Burns, Elizabeth (Liz) Callihan, Katia Cavigelli, Aaron Chapman, Alejandro Chile, Ben Clarick, Nicole Cochran, Brittany Croll, Margo Cunniffe, Wapoenje Dacruz Evora, Catherine Dale, Anna Daley Laursen, Michael Darden, Caroline Dibble, Ena Dion, Shauna Eisenberg, Kamel Fakhry, Georges Fauriol, Mark Feierstein, Tracy Fleming, William Ford, Athena Mison Fulay, Mirna Galic, Adam Gallagher, Galen Gammino, Asalou Givens, Mary Glantz, Corinne Graff, Anne-Marie Gwynn-Sackson, Alean Haider Sayedzada,

Madison Handy, Brian Harding, Sarah Harper-Johnston, Gavin Helf, Mary Anne Holmcrans, Katie Hortenstine, Joshua Ivey, Ibanez Jacobs, Kathryn (Katie) Jones, Palwasha Kakar, Dominic Kiraly, Nicole Krakora, Kathleen Kuehnast, Lucy Kurtzer-Ellenbogen, Illana Lancaster, Allison Larmann, Philippe Lerou-Martin, Megan Madeira, Bethesda Manrique, Angelina Marioni, Daniel Markey, Carol McKay, Joia McManus, Maria Antonia Montes, Jeremy Moore, Elizabeth Murray, Garrett Nada, Anthony Navone, Analise Obremskey, Matthew Parkes, Barmak Pazhwak, Michael Phelan, Alli Phillips, Camilla Pohle, Samuel Ponzar, Brielle Powers, Thea Price, Miriam Psychas, Julie Ramirez, Harriet Randolph, Paola Ricaurte, Steven M. Riskin, Victoria Rivera, Danielle Robertson, Samantha Robinson, Steven Ruder, Katie Ruppert, Aaya Rustom, Julia Schiwal, Brigitta Schuchert, Tyler Scrimager, Gabrielle Seamon, Jayani Senanayake, Christopher M. Sfetsios, Karine Shalaby, Shafique Shalizi, Kirtika Sharad, Jamie Shillinger, Samantha Shimer, Mariam Sidibe, Shadya Sims, Jaclyn Sirc, Tiffany (Daniella) Smith, Mary Speck, Daniel Spinelli, Jennifer Staats, Susan Stigant, Allison Sturma, Hodie Sultan, Yousof Sultan, Manal Taha, Alicia Talamas, James Tanton, Kiersten Terrell, Anita Thompson, Denise Thrift, Calin Trenkov-Wermuth, Henry Tugendhat, Rachel Vandenbrink, David Vega-Pulido, Jessica Vermooten, Richard Walker, Kristen Wall, Katherine Waters, Andrew Wells-Dang, Scott Worden, and Karen Zehr.

**B.     Ruling Under Review**

The ruling under review in the underlying appeal is the District Court's order granting summary judgment (Dkt. 39) and accompanying memorandum opinion (Dkt. 40) in *United States Institute of Peace v. Jackson*, No. 1:25-cv-804 (D.D.C.), issued on May 19, 2025, by the Hon. Beryl A. Howell.  The District Court's opinion is available at 2025 WL 1428641.

The ruling under review in this Petition is the order of a panel of this Court  in *United States Institute of Peace v. Jackson*, No. 25-5185 (D.C. Cir. June 27, 2025) granting Appellant's request for an emergency stay of the District Court's injunction pending appeal.  That order, issued on June 27, 2025, is attached to this Petition.

**C.     Related Cases**

This case has not previously been before this Court.  *Pippenger v. U.S. DOGE Service*, No. 1:25-cv-909 (D.D.C. filed April 10, 2025), involves a similar challenge to the President's removal of USIP's Board members.  While other challenges involving the President's removal of government officials have been before this Court, no other case, to Counsel's knowledge, involves substantially the same parties as this case.

# TABLE OF CONTENTS

INTRODUCTION AND RULE 40(b) STATEMENT.................................................1

STATEMENT OF THE CASE..........................................................................4

    A. The Structure and Duties of USIP ....................................................4

    B. DOGE's Dismantling of USIP........................................................6

    C. Procedural History of the Litigation ...............................................7

ARGUMENT ................................................................................................8

I.   THE PANEL'S CONCLUSION THAT USIP EXERCISES EXECUTIVE
    POWER MISSTATES THE RECORD .............................................9

II.  THE PANEL WENT FAR BEYOND THE *WILCOX* STAY ORDER IN
    ABROGATING THE *HUMPHREY'S EXECUTOR* AND *WIENER*
    EXCEPTION ..................................................................................12

CONCLUSION ...........................................................................................17

## INTRODUCTION AND RULE 40(b) STATEMENT

The Supreme Court's May 22 stay order in *Trump v. Wilcox* signaled an inclination to narrow the recognized exception to at-will presidential removal for Executive Branch agencies with multi-member bipartisan boards to exclude two agencies (NLRB and MSPB) that the Court found "exercise considerable executive power." *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025). The *Wilcox* stay order did not overrule any precedent and the Court was careful to acknowledge that the merits question "is better left for resolution after full briefing and argument." *Id.* The merits question in those cases is now before a panel of this Court. Yet, on June 27, a motions panel of this Court stayed a judgment blocking presidential orders to remove members of the multimember bipartisan board of the U.S. Institute of Peace ("USIP") contrary to statutory removal restrictions—even though USIP is an independent non-profit corporation outside the Executive Branch that primarily assists Congress through research and efforts to implement nonviolent conflict resolution. Pursuant to authority conferred by Congress, USIP also promotes peaceful conflict resolution through scholarship, grantmaking, and awards. It neither portrays itself, nor is it understood by foreign parties or (before this case) Executive Branch officials, to be acting on behalf of the Executive.

The motions panel's stay order goes far beyond *Wilcox* by mandating at-will presidential removal not just for every executive agency, but also for bodies

performing quasi-private non-executive work that Congress intentionally placed outside the Executive Branch, in keeping with a long tradition. *See id.* ("The Federal Reserve is a uniquely structured, quasi-private entity that follows in the distinct historical tradition of the First and Second Banks of the United States."). En banc review is warranted, because under the panel's view there is *nothing* left of *Humphrey's Executor* and *Wiener*.

The panel's ruling thus conflicts with the Supreme Court's long-recognized exceptions to the President's at-will removal power. And it involves questions of exceptional importance regarding the scope of the President's executive power. This court's full review is thus warranted under Federal Rule of Appellate Procedure 40(b)(2)(B) and (D). En banc consideration will "resolve for the circuit," for purposes of likelihood of success on the merits questions, the effect of the *Wilcox* stay order on Circuit and Supreme Court precedent at a time when other cases—and other stay applications—are in the pipeline. *Am. Meat Inst. v. U.S. Dep't of Agric.*, 746 F.3d 1065, 1073 n.1 (D.C. Cir.), *reh'g en banc granted, opinion vacated*, 2014 WL 2619836 (D.C. Cir. 2014), *and judgment reinstated*, 760 F.3d 18 (D.C. Cir. 2014).

Vacating the panel's order is necessary because during the 10 weeks Defendants were in control of USIP, their representatives (from DOGE) decimated USIP's staff, headquarters, and computer systems, transferred ownership of its

building (constructed in part with private donations) to GSA for free, and transferred its funds from its private bank account to the Treasury. A stay will enable DOGE personnel to shutter USIP's just-resuming programs, to re-fire its rehired staff, and to damage the USIP building again. If that were to happen, it is not clear that USIP will be able to survive until Defendants' appeal is resolved on the merits. In short, without immediate action to lift the stay imposed by the panel, there will likely be nothing left of USIP by the time the District Court's judgment in USIP's favor reaches a merits panel. The President is entitled to ask Congress to abolish USIP and reclaim its assets, but he cannot do so unilaterally through a DOGE demolition team.

Even a brief return to DOGE's control while the en banc Court considers the Petition could inflict serious, irreparable harm to USIP. And the Supreme Court has counseled that "the disruptive effect[s] of the repeated removal and reinstatement of officers during the pendency of [] litigation" should be avoided. *Wilcox*, 145 S. Ct. at 1415.

For this reason, Appellees also respectfully request an immediate administrative stay of the panel's order while the Court considers the en banc Petition. Staying the panel's order will restore the *status quo ante*, and allow the full Court to consider the merits of this Petition without risking the imminent destruction of USIP. On the other side of the ledger, Defendants' stay motion

3

failed to identify any specific, concrete way in which the Administration's agenda will be harmed if the District Court's order remains in effect during Defendants' appeal.

## STATEMENT OF THE CASE

### A. The Structure and Duties of USIP

Congress established USIP in 1984 as an "independent nonprofit corporation." Pub. L. No. 98-525, 98 Stat. 2492 (1984) (codified at 22 U.S.C. §§ 4601-4611). USIP owns its headquarters building—built largely with private funds. It is a juridical person that can sue and be sued in its own name, and it lacks federal sovereign immunity. *Id.* §§ 4603(d), 4604(k). USIP has independent authority to submit funding requests directly to Congress, unlike Executive Branch entities, which funnel their requests through OMB. *See id.* § 4608(a).

USIP's activities "are solely focused on research, education, and scholarship." Mem. Op., Dkt. 40 ("Op.") 65; *see also* 22 U.S.C. § 4604(b). To engage in these activities, USIP may make grants and enter contracts with educational and research institutions. *Id*. § 4604(d). These activities are similar to those carried out by non-governmental organizations, by congressionally-chartered non-profits, and by congressional committees. Op. 66-67, 73-74.

"[D]erivative of and in furtherance of its educational and research missions," USIP also participates in peaceful conflict resolution efforts in other countries. Op.

70.  When it serves as a third-party neutral in mediating conflicts around the globe, it does so not in furtherance of "Executive branch foreign policy," but rather to "teach[] others how to resolve conflict peacefully by facilitating conversation."  *Id.* These efforts *do not* include planning or participation by United States government agencies.  Importantly, USIP selects its own projects and programmatic priorities, and its overseas staff is not supervised by the U.S. chief of mission.  When engaged in these efforts, USIP does *not* act in the name of the United States.  Op. 68-72.

When USIP does choose to respond to a request for assistance from a government branch, it is often Congress.  For example, in 2006 a bipartisan congressional group enlisted USIP to facilitate the Iraq Study Group by convening expert working groups, writing papers, providing analysis, and coordinating meetings.  Op. 69.

USIP's powers are vested in a Board of Directors.  Twelve directors of USIP's Board (the "(b)(4) directors") are "individuals appointed by the President, by and with the advice and consent of the Senate."  22 U.S.C. § 4605(b)(4).  The Board must have partisan balance—no more than eight of the fifteen members may belong to the same political party—and its members must have appropriate experience in peace and conflict resolution efforts.  *Id.* §§ 4605(c), (d)(1).  The President may remove them under defined circumstances, including "for

conviction of a felony, malfeasance in office, persistent neglect of duties, or inability to discharge duties." *Id.* § 4605(f). The Board appoints USIP's president. *Id.* § 4606(a).

### B. DOGE's Dismantling of USIP

On March 14, 2025, the Office of Presidential Personnel sent emails firing all the (b)(4) directors. Op. 16. It is undisputed that these emails did not comply with the USIP Act's restrictions on board member removal. Op. 15-22. That same day, USIP's *ex officio* board members purported to terminate USIP's Acting President, Ambassador George Moose, and to appoint Defendant Jackson as his replacement. Mr. Jackson in turn was almost immediately replaced by a young and inexperienced DOGE representative, Defendant Cavanaugh. Op. 16. On March 17, 2025, DOGE took control of USIP headquarters in a "tense sequence of events," during which DOGE enlisted law enforcement from multiple separate agencies to effectuate DOGE's takeover of the building. Op. 18-19.

Over the next two weeks, DOGE fired almost all USIP's employees. It acted to transfer USIP's building to GSA without compensation, and transferred to the Treasury $13 million held in USIP's private bank account and the account of its separately incorporated private Endowment. Op. 21-22. DOGE's Cavanaugh halted *all* of USIP's programs, even those mandated by Congress, and canceled

USIP's contracts, including those providing security for USIP personnel overseas. Op. 22.

After the District Court invalidated the removal of the individual Plaintiffs and restored their control over the building, Plaintiffs discovered that the USIP headquarters had been "essentially abandoned for many weeks." Moose Decl. ¶ 8, Dkt. 45-1. DOGE had not maintained or secured the building while it was in their possession, resulting in physical damage, water damage, and infestation by rats and roaches. *Id.* ¶¶ 10-11. Public reports noted that DOGE staff used one area of the building as a party den: USIP's regular cleaning staff found significant amounts of marijuana when inspecting the building after regaining access. *See* Nikki McCann Ramirez, *Did DOGE Staffers Leave Weed in the U.S. Institute of Peace*?, ROLLING STONE (June 3, 2025), https://perma.cc/SG2K-LSUS.

### C. Procedural History of the Litigation

On March 18, the day after DOGE seized control of USIP's headquarters, USIP and five of its directors filed a complaint seeking to nullify the unlawful terminations of the (b)(4) directors and all actions that followed, including Defendants' takeover of USIP's headquarters building. Dkt. 1, 2. On May 19, after full briefing on cross-motions for summary judgment and a hearing, the District Court granted summary judgment for Plaintiffs in a 102-page ruling and

issued declaratory and injunctive relief invalidating the board terminations and all actions that followed therefrom. Op. 101-102; Dkt. 39 (Order).

On May 21, after obtaining assistance from Defendants' counsel, Acting President Moose and other USIP staff regained control over USIP's headquarters. Under their leadership, USIP has begun the process of rehiring staff and restoring its functions. Moose Decl. ¶ 7, Dkt. 45-1.

Defendants appealed, sought a stay in the District Court on May 22, and then moved for a stay of the District Court's Order in the D.C. Circuit on May 23. Later on May 23, the District Court denied the stay request. Dkt. 46. Over a month later, on June 27, a motions panel of this Court granted Defendants' stay request in a brief order, attached to this Petition.

## ARGUMENT

The full Court's intervention is urgently needed. For nearly a century, Congress has created non-profit corporations outside the Executive Branch to engage in particular activities that broadly serve the nation's interests. The Smithsonian Institution, which has a structure incompatible with at-will presidential removal, is one example. Both the American Red Cross, which acts as the United States' representative in fulfilling certain international treaty

obligations, and the U.S. Olympic Committee, which represents the United States in international bodies governing sport, are two more. USIP is another.

The panel's decision upends this historical balance of power, threatening to transform all entities created by Congress into agencies of the Executive Branch subject to the unrestricted removal authority of the President, and contrary to legislative intent. The panel has gone far beyond the *Wilcox* stay order. It does not apply or even cite *Humphrey's Executor*'s exception for bipartisan multimember expert boards. The implication of the panel's decision extending at-will presidential removal to a non-profit corporation is that no entity established by Congress, and certainly no entity actually within the Executive Branch (which USIP is not), is exempt from the President's absolute removal authority. To reach its outcome, the panel disregarded the District Court's careful analysis of the extensive factual record, cherry-picked snippets to find executive power where there is none, and simply declared USIP's activities to be "substantial executive power." Without the full Court's intervention, the panel's decision threatens to limit Congress's ability to create organizations that serve unique functions outside the Executive Branch.

## I. THE PANEL'S CONCLUSION THAT USIP EXERCISES EXECUTIVE POWER MISSTATES THE RECORD

The panel based its determination on a single conclusion: that "the Institute exercises substantial executive power" because it engages in "foreign affairs."

Exhibit 1, Panel Stay Order ("Order") 2-3. To support its conclusion, the panel references USIP's "peacebuilding" and "post-conflict . . . stabilization" work. *Id.* at 3.

But as the District Court recognized, the question is not whether USIP has focused its efforts on "international peace and conflict resolution"—all parties agree that it has. Op. 8-10, 66-67. The relevant question is whether USIP performs this work "on behalf of the government." Op. 67. If it does not, then it is not "wield[ing] any executive power as understood in Article II." Op. 72. And on this question, the record, and the District Court's factual conclusions, could not be clearer: USIP "*never* represents the U.S. government in its interactions abroad" and "*acts as a completely independent, nongovernmental organization* when engaging with foreign groups." Op. 72 (emphases added); *see also* Appellees' Stay Opposition Br., USCA No. 25-5185, Doc. 2118622 ("Stay Opp.") 12-14.

The panel disregarded the District Court's careful, thorough analysis of the extensive, undisputed factual record. It instead reaches its conclusion based on a few selectively quoted passages from four of the sixteen declarations that Plaintiffs submitted to the District Court in support of their motion for summary judgment. Those declarations, and the other evidence offered by Plaintiffs, explained fully USIP's study, training, and applied research activities focused on peacebuilding and nonviolent conflict resolution. As the District Court found, those declarations,

individually and collectively, make it clear that USIP does not exercise executive power. But the panel ignored statements, often in the very same sentence or paragraph of the declarations it cited, that are directly contrary to the panel's conclusion.

- The panel quotes Scott Worden's description of USIP's peacebuilding efforts in Afghanistan, Order 3 (quoting Worden Decl., ¶ 5, Dkt. 20-34), but omits Worden's explanation, in the very same sentence, that the only reason USIP was able to carry out this work was because USIP was "viewed as non-governmental" by Afghan and international stakeholders. Worden Decl., ¶ 5.

- The panel quotes Catherine Dale's declaration, which talks about USIP's peace-related work with the Azerbaijani and Armenian embassies, Order 3 (quoting Dale Decl., ¶ 6, Dkt. No. 20-9), but omits Dale's statement that the participants took part only because they "trust[ed]" USIP's role as a "neutral arbiter" independent of any government. Dale Decl., ¶ 5.

- The panel relies on Samantha Robinson's statement that USIP "has engaged in peacebuilding with conflict parties," Order 3 (citing Robinson Decl. ¶ 4, Dkt. No. 20-11), but omits that USIP is only able to meaningfully engage in these activities because of its "independence from the government." Robinson Decl., ¶ 4.

- The panel cites Brian Harding's description of USIP's efforts to facilitate cease-fire efforts with a rebel group in the Philippines, Order 3 (quoting Harding Decl., ¶ 6, Dkt. No. 20-8), but fails to mention that USIP undertook these efforts ***not*** pursuant to a request "by the U.S. government (who are barred from traveling in this area)," but from parties in the Philippines. Harding Decl., ¶ 6. Indeed, Harding stated that "USIP personnel are explicitly advised that they are not to take orders from U.S. ambassadors." *Id.* ¶ 4.

These declarations and the entire record show that USIP does not hold itself out as, and is not engaged in, international activities on behalf of the Executive Branch. *See, e.g.*, Aum Decl., ¶ 4, Dkt. 20-36; Helf Decl., ¶¶ 5-6, Dkt. 20-10 (each

11

establishing that USIP's work overseas was not undertaken on behalf of the government or in the implementation of government policy).

In short, the panel adopts (Order 3) an assertion by Defendants that USIP's activities "facilitat[e] the foreign policy of the United States," which is flatly contrary to the factual record. That record demonstrates that USIP operates independently of the entities in the Executive Branch that formulate and execute the nation's foreign policy. *See* Stay Opp. 12-14.

## II. THE PANEL WENT FAR BEYOND THE *WILCOX* STAY ORDER IN ABROGATING THE *HUMPHREY'S EXECUTOR* AND *WIENER* EXCEPTION

USIP's independence from the Executive Branch is no accident. It is fundamental to Congress's intent. As an amicus brief submitted in the District Court by 113 former Executive Branch officials explained, Congress made a "considered and intentional" decision: to have USIP "operate independently precisely so that it could perform work that Congress deemed most appropriately performed outside of the Executive Branch, none of which is executive in nature." Dkt. 31 at 3, 7; *see also* Op. 73 (citing the amicus brief).

The panel's decision is thus not only a departure from the record; it reflects a departure from the separation of powers principles that define our government. It threatens a revolution of unlimited executive control over entities that are not within the scope of the President's Article II powers. And without a mention, it

casts aside the *Humphrey's Executor* and *Wiener* rule allowing Congress to impose restrictions on the President's removal power for multimember, nonpartisan expert bodies like USIP that do not exercise substantial executive power. *See Humphrey's Executor v. United States*, 295 U.S. 602 (1935); *Wiener v. United States*, 357 U.S. 349 (1958).

For more than a century, courts have recognized Congress's power to create congressionally chartered corporations outside of Executive Branch control. *See, e.g.*, *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542-47 (1987) (holding that the U.S. Olympic Committee is not a governmental actor); *Dong v. Smithsonian Inst.*, 125 F.3d 877, 879 (D.C. Cir. 1997) (holding that the Smithsonian "is not an establishment in the executive branch" for purposes of the Privacy Act); *see also* Stay Opp. 16-18. But the panel's order reflects a vision of executive control fundamentally at odds with Congress's longstanding exercise of its Article I powers.

Start with the panel's treatment of foreign affairs. It concludes that *any* involvement in matters abroad places an entity within the President's unrestricted removal power. Order 3. But an entity that engages in international work outside the Executive Branch is no novelty. As the District Court explained, "the Executive branch does not control everything touching that subject area." Op. 67. Non-governmental organizations, for instance, have long had a history of

promoting peacebuilding and conflict resolution. Op. 66-74. Organizations like the National Endowment for Democracy, the International Republican Institute, and the Carter Center all play such roles. *See* Council on Foreign Relations, Soft Power: Democracy-Promotion and U.S. NGOs (Mar. 17, 2006), https://perma.cc/MZ58-V5ZF; *see also* Op. 74.

Like NGOs, governmental—but non-executive—organizations also engage on international matters. Congress established the American Red Cross as a federally chartered entity that carries out treaty obligations and acts as an independent interlocutor with foreign groups. Stay Opp. 3, 18; Op. 74. But is not an Executive Branch agency. Congress established and charged the U.S. Olympic Committee with representing the United States on the world stage of athletic competition. *Id.* But it is not a "governmental actor" (for the purpose of a constitutional analysis). *U.S. Olympic Comm.*, 483 U.S. at 542-47.

The same is true for USIP. It should come as no surprise that Congress structured USIP to pursue its research and peacebuilding functions free from unfettered Executive Branch control. As the Supreme Court has recognized, Congress has concurrent foreign affairs powers and plays a substantial role in foreign affairs. *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 21-22 (2015); *id.* at 66 (Roberts, C.J., dissenting); *id.* at 67 (Scalia, J., dissenting); *see also* Stay Opp. 2, 16. And as the declarations cited above make clear, Congress did so because it

understood that USIP's peacebuilding activities would be enhanced—and indeed, only would be possible—*because* USIP is outside of the Executive Branch and not acting on behalf of, official U.S. policymaking bodies like the State Department. *See, e.g.*, Dale Decl., ¶¶ 5-7; Harding Decl., ¶¶ 6-7; Robinson Decl., ¶4; Worden Decl., ¶ 5.

But the panel's order wipes this away. It threatens the ability of any non-Executive (but congressionally created) actor to operate in the manner Congress intended. Subjecting USIP to unrestricted Article II power would eliminate the independence from Executive Branch policymaking bodies that enables USIP to effectively fulfill the mission assigned it by Congress.

The panel's order goes even further. It also finds that USIP is likely to be found subject to unfettered Executive Branch control because it provides "stipends, grants, and fellowships" and provides "training, symposia, and continuing education programs" for "noncitizens" and people outside the United States. Order 3. The panel's view that such conduct constitutes the exercise of "substantial executive power" (*id.* at 2), if accepted, would render the *Seila Law* standard meaningless. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020) (referencing the exception for "multimember expert agencies that do not wield substantial executive power"). The award of grants or contracts to support research is not an inherently executive function, let alone a "considerable" one. *See Dong*, 125 F.3d

at 882 (Smithsonian's funding of grants and fellowships is "no different from any private research university which receives federal funds and enjoys some control over their use"); *see also* Stay Opp. 14-15. Even within the federal government, awarding scholarships and grants to support research is not within the exclusive province of the Executive Branch. As but one example, the board of the Federal Judicial Center is empowered to contract with "private agencies and persons for research projects." 28 U.S.C. § 624(3). And, it is Congress, not the executive, that has the constitutional spending power and directs how appropriated funds may be spent.

Under the panel's reasoning, however, all entities empowered by Congress to administer grants and contracts are threatened with unrestricted executive control. The panel's order, if allowed to stand, would alter the balance of power between the Executive Branch and Congress. It would dramatically limit the latter's ability to exercise its Article I powers by creating entities outside of the President's unrestricted removal power when it finds a measure of independence is necessary to accomplish important goals that serve the public's interests.

## CONCLUSION

For these reasons, Plaintiffs-Appellees request that the en banc Court vacate the panel's order staying the District Court's injunction and grant en banc rehearing of the panel's order.

Plaintiffs-Appellees also request a temporary, administrative stay of the panel's order while the Court considers this Petition. Control over USIP has already ping-ponged during the course of this litigation. And interim control by DOGE resulted in the cessation of contracts, the termination of nearly all employees, the seizure of funds, and damage to USIP's headquarters and assets. During the last time control of USIP was disputed without any operative court order in place, DOGE sought to take control of USIP's headquarters building by force. Once in control, DOGE left the building largely vacant and failed to maintain it, allowing vermin infestation and damage throughout. Pursuant to the District Court's order, USIP's duly appointed leadership was able to resume operational control over the entity.

There is not now, and never has been, any evidence offered by Defendants that the President's foreign policy agenda has been impacted in any way by the operations of USIP mandated and authorized by Congress. Accordingly, there can be little value in allowing DOGE to implement another takeover, while the en banc Court considers this Petition and while Defendants' appeal is resolved on the

merits. In fact, given the damage done to USIP last time, another takeover by DOGE risks effectively destroying USIP and rendering meaningless any future merits decision affirming the District Court. For this reason, Plaintiffs-Appellees request that the Court allow USIP's duly appointed leadership to remain in charge, as the District Court ordered, while this Court considers this Petition.

June 29, 2025

Respectfully submitted,

/s/ Andrew N. Goldfarb
Andrew N. Goldfarb
Jacobus P. van der Ven
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
agoldfarb@zuckerman.com
cvanderven@zuckerman.com

William J. Murphy
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Telephone: (410) 332-0444
wmurphy@zuckerman.com

*Counsel for Plaintiffs-Appellees*

**ADDENDUM**

**RULE 26.1 DISCLOSURE STATEMENT**

The United States Institute of Peace is an independent non-profit corporation endowed by Congress with the powers of a District of Columbia non-member non-profit corporation except the power to cease activities and dissolve. It has no parent corporation and no publicly held corporation owns 10% or more of its stock. As a non-member non-profit corporation, USIP has no shareholders.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the applicable type-volume limitation set forth in Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,896 words, excluding the portions of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(f).

I further certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word Office in a proportionally spaced typeface (Times New Roman, 14 point).

*/s/ Andrew N. Goldfarb*
Andrew N. Goldfarb

# EXHIBIT 1

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 25-5185**                              **September Term, 2024**

**1:25-cv-00804-BAH**

**Filed On:** June 27, 2025

United States Institute of Peace, et al.,

      Appellees

     v.

Kenneth Jackson, in his official capacity as
Assistant to the Administrator for
Management and Resources for USAID and
in his purported capacity as acting president
of the United States Institute of Peace, et al.,

      Appellants

    **BEFORE:**   Katsas, Rao, and Walker, Circuit Judges

## O R D E R

    Upon consideration of the emergency motion for stay pending appeal and an immediate administrative stay, the opposition thereto, and the reply, it is

    **ORDERED** that the motion for stay pending appeal be granted. The Government has shown that (1) it "is likely to succeed on the merits," (2) it "will be irreparably injured absent a stay," (3) a stay will not "substantially injure" other interested parties, and (4) a stay is in the "public interest." See Nken v. Holder, 556 U.S. 418, 434 (2009).

## I. Background

    Congress created the United States Institute of Peace in 1984 as "an independent, nonprofit, national institute" designed "to promote international peace and the resolution of conflicts among the nations and peoples of the world without recourse to violence." 22 U.S.C. § 4601(b). The Institute is governed by a fifteen-member board, comprised of three ex officio members — the Secretary of State, Secretary of Defense, and president of the National Defense University — and twelve members appointed by the President and confirmed by the Senate. Id. § 4605(b). The twelve appointed members are statutorily insulated from at-will removal by the President. Id. § 4605(f) (specifying removal restrictions).

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 25-5185**                                    **September Term, 2024**

On February 19, 2025, President Trump issued an executive order directing that the "non-statutory components and functions" of the Institute "shall be eliminated to the maximum extent consistent with applicable law" and that the Institute "shall reduce the performance of [its] statutory functions and associated personnel to the minimum presence and function required by law."  Exec. Order No. 14,217 § 2, 90 Fed. Reg. 10577, 10577 (Feb. 19, 2025).  Following that order, on March 14, 2025, President Trump terminated the Institute's appointed members without invoking the criteria in 22 U.S.C. § 4605(f).  United States Institute of Peace v. Jackson, No. 25-cv-804, 2025 WL 1428641, *7 (D.D.C. May 19, 2025).  The three remaining ex officio members then replaced the Institute's president and transferred the Institute's headquarters building to the General Services Administration, among other contested actions.  Id. at *7, *10; see 22 U.S.C. § 4606(a) (authorizing Board to appoint and remove the Institute's president).

Five of the removed board members challenged their terminations as unlawful.  United States Institute of Peace, 2025 WL 1428641 at *10.  They requested reinstatement and further argued that after their removals, "all subsequent actions taken on behalf of [the Institute] under defendants' leadership" are invalid.  Id. at *10, *12.  The district court agreed.  It entered a permanent injunction reinstating the removed board members and unwinding various actions taken by the ex officio members during the removed members' absences.  Id. at *45-47.

## II. Likelihood of Success on the Merits

As a general rule, the President may remove executive officers at will.  Seila Law LLC v. CFPB, 140 S. Ct. 2183, 2206 (2020).  The Supreme Court has recognized a narrow exception for "multimember expert agencies that do not wield substantial executive power" and that exercise "quasi-judicial" or "quasi-legislative" power.  Id. at 2199-2200.  Because the Institute exercises substantial executive power, the Government is likely to succeed on its claim that the Board's removal protections are unconstitutional.[1]

_____

[1] Although Congress structured the Institute as a nonprofit corporation, it "is part of the federal government for constitutional separation-of-powers purposes."  United States Institute of Peace v. Jackson, No. 25-cv-804, 2025 WL 1428641, *20 (D.D.C. May 19, 2025); Herron v. Fannie Mae, 861 F.3d 160, 167 (D.C. Cir. 2017) ("a corporation is part of the Government for constitutional purposes when: (1) the Government creates the corporation by special law, (2) for the furtherance of governmental objectives, and (3) retains for itself permanent authority to appoint a majority of the directors of that corporation" (cleaned up)).

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 25-5185**                                        **September Term, 2024**

The record shows that the Institute engages in extensive activities within the domain of the President's foreign affairs powers.  According to declarations submitted by the plaintiffs, the Institute "has engaged in peacebuilding with conflict parties, armed groups, key civil society actors, and other stakeholders" abroad.  Robinson Decl. ¶ 4, Dkt. No. 20-11.  For example, the Institute brought together "trusted Palestinian, Israeli, and regional interlocutors to work together on problem-solving related to post-conflict recovery and stabilization in Gaza."  Id. ¶ 6.  It also fielded requests from the government of the Philippines "to discreetly facilitate ceasefire efforts" between it and a rebel group.  Harding Decl. ¶ 6, Dkt. No. 20-8.  In Afghanistan, the Institute rented an office in Kabul to "convene a variety of Afghan and international stakeholders . . . and create[] a neutral space for peacebuilders to engage in open dialogue."  Worden Decl. ¶ 5, Dkt. No. 20-34.  And the Institute facilitated "informal conversations with the Azerbaijani and Armenian Embassies about what would be needed . . . to reach a peace agreement ending their 30-plus year war."  Dale Decl. ¶ 6, Dkt. No. 20-9.  We agree with the Government that "[f]acilitating the foreign policy of the United States by brokering peace among warring parties on the international stage is plainly an exercise of executive power under our Constitution."  Stay Mot. at 11.

The Institute also shapes foreign affairs in the interest of the United States through the exercise of soft power.  For example, it provides "stipends, grants, fellowships, and other support to . . . leaders and scholars" from abroad and "conduct[s] training, symposia, and continuing education programs" for "noncitizens."  22 U.S.C. § 4604(b)(1), (6).  These are not merely "investigative and informative activities," contra United States Institute of Peace, 2025 WL 1428641 at *29 (quoting Buckley v. Valeo, 424 U.S. 1, 137 (1976)), but soft-power initiatives intended "to further the Nation's interest in promoting international peace," 22 U.S.C. § 4601(a)(7).  The Institute does all this while authorized to use "'United States' or 'U.S.' or any other reference to the United States Government or Nation in its title or in its corporate seal, emblem, badge, or other mark of recognition."  Id. § 4603(e)(2).

The President's inability to control the Institute's exercise of these "significant executive power[s]" undermines his ability to set and pursue his foreign policy objectives.  Seila Law, 140 S. Ct. at 2192; cf. United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 320 (1936) (the President is the "sole organ of the federal government in the field of international relations").  For that reason, the Government is likely to succeed on its claim that the Board's removal restrictions violate Article II.

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 25-5185**                          **September Term, 2024**

### III. Remaining Stay Factors

The remaining factors favor a stay.

The President faces irreparable harm from not being able to fully exercise his executive powers.  That harm outweighs any harm the removed board members may face.  Trump v. Wilcox, 145 S. Ct. 1415, 1415 (2025) ("the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty").  And finally, a stay is in the public interest because the people elected the President, not the removed board members, to wield the executive power.

*     *     *

For these reasons, the Government has met its burden for a stay pending appeal.

### Per Curiam

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:    /s/
Selena R. Gancasz
Deputy Clerk