**[ORAL ARGUMENT NOT YET SCHEDULED]**

**No. 25-5185**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

UNITED STATES INSTITUTE OF PEACE, et al.,

Plaintiffs-Appellees

v.

KENNETH JACKSON, in his official capacity as Assistant to the
Administrator for Management and Resources for USAID, et al.,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**OPPOSITION TO PETITION FOR
REHEARING EN BANC**

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE
McKAYE L. NEUMEISTER
COURTNEY E. ALBINI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7511*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 598-7329*

# TABLE OF CONTENTS

**Page**

GLOSSARY ......................................................................................... ii

INTRODUCTION AND SUMMARY ...........................................................1

STATEMENT ....................................................................................... 2

ARGUMENT ........................................................................................ 8

THIS COURT SHOULD DENY THE PETITION FOR
    REHEARING EN BANC. ................................................................. 8

    A.    The Panel's Stay Ruling is Correct. ........................................... 9

        1.    The Government Is Likely to Prevail on the Merits. ......... 9

        2.    The Equitable Factors Favor A Stay. ...............................13

    B.    This Case Does Not Meet The Criteria for En Banc
        Review.......................................................................................16

CONCLUSION ....................................................................................20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

**GLOSSARY**

| | |
|---|---|
| MSPB | Merit Systems Protection Board |
| NLRB | National Labor Relations Board |
| USIP | United States Institute of Peace |

## INTRODUCTION AND SUMMARY

The government has appealed a district court order that immediately reinstated principal executive officers—Board members of the United States Institute of Peace (USIP)—whom the President has lawfully removed, and that unwound actions to reform USIP.  A unanimous panel of this Court correctly stayed that order, which works a grave harm to the separation of powers and undermines the President's ability to exercise his executive authority.  As the panel held, "[t]he President's inability to control the Institute's exercise of … significant executive powers undermines his ability to set and pursue his foreign policy objectives," and "[f]or that reason, the Government is likely to succeed on its claim that the Board's removal restrictions violate Article II."  Order 3 (D.C. Cir. June 27, 2025) (Stay Op.) (cleaned up).  The balancing of harms also favors a stay pending appeal: "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."  *Id.* (quoting *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025)).

Plaintiffs have not shown circumstances warranting the extraordinary step of rehearing en banc of the government's stay motion.  The panel's result

is correct and consistent with the Supreme Court's and this Court's precedents.  The petition for rehearing en banc should be denied.

## STATEMENT

**1.**     Amid Cold War tensions, Congress recognized a "deep public need for the Nation to develop fully a range of effective options, in addition to armed capacity, that can leash international violence and manage international conflict."  United States Institute of Peace Act, Pub. L. No. 98-525, tit. XVII, § 1702, 98 Stat. 2492, 2649-50 (1984) (codified at 22 U.S.C. § 4601(a)(1)).  Citing "the Nation's interest in promoting international peace" and the "need for Federal leadership to expand and support the existing international peace and conflict resolution efforts of the Nation," Congress created USIP "to serve the people and the Government through the widest possible range of education and training, basic and applied research opportunities, and peace information services on the means to promote international peace and the resolution of conflicts among the nations and peoples of the world without recourse to violence."  22 U.S.C. § 4601(a)(6)-(7), (b).

As the stay panel held, "[t]he record shows that the Institute engages in extensive activities within the domain of the President's foreign affairs powers."  Stay Op.3.  USIP "has engaged in peacebuilding with conflict

parties, armed groups, key civil society actors, and other stakeholders abroad," including working to advance "post-conflict recovery and stabilization in Gaza"; facilitating ceasefire efforts between the government of the Philippines and a rebel group; convening Afghan and international stakeholders to discuss peacebuilding in Afghanistan; and facilitating discussions between Azerbaijan and Armenia to end their 30-year war. *Id.* (quotation marks omitted).

"The Institute also shapes foreign affairs in the interest of the United States through the exercise of soft power." *Id.* USIP provides "stipends, grants, fellowships, and other support to … leaders and scholars" from abroad and "conduct[s] training, symposia, and continuing education programs" for "noncitizens." 22 U.S.C. § 4604(b)(1), (6). USIP funds this work through congressional appropriations, *id.* § 4609—with the exception of outside gifts or contributions that may only be used to maintain its facility or provide hospitality, *id.* § 4604(h)(3)—and is authorized to do so using "'United States' or 'U.S.' or any other reference to the United States Government or Nation in its title or in its corporate seal, emblem, badge, or other mark of recognition," *id.* § 4603(e)(2).

Although its organic statute provides that, for statutory purposes, USIP shall be organized as "an independent nonprofit corporation," 22 U.S.C.

§ 4603(b), for constitutional purposes USIP is a governmental entity subject to executive control. *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 397 (1995); *see Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 485-86 (2010). USIP's duties and functions are prescribed by statute. *See* 22 U.S.C. § 4606. USIP is prohibited from issuing stock, *id.* § 4603(b), and upon its dissolution, its assets "shall revert to the United States Treasury," *id.* § 4610. USIP's everyday functions are subject to executive oversight. Among other things, USIP must annually submit reports to the President "detailing [its] progress … in carrying out" its statutory purposes. *Id.* § 4611. USIP must also undergo annual audits and report them to the President. *Id.* § 4607(g)-(h).

USIP operates under the leadership of a Board of Directors, 22 U.S.C. § 4605(a), composed of three voting ex officio members—the Secretaries of State and Defense, and the president of the National Defense University—and 12 members "appointed by the President, by and with the advice and consent of the Senate." *Id.* § 4605(b). While no more than eight Board members can be from the same political party, this allows for majority control of the Board by the President's political party. *Id.* § 4605(c). USIP's Board, in turn, selects USIP's president. *Id.* § 4606(a).

4

Congress provided that the President can remove Board members only (1) "in consultation with the Board, for conviction of a felony, malfeasance in office, persistent neglect of duties, or inability to discharge duties"; (2) "upon the recommendation of eight voting members of the Board"; or (3) "upon the recommendation of a majority of the members of the Committee on Foreign Affairs and the Committee on Education and Labor of the House of Representatives and a majority of the members of the Committee on Foreign Relations and the Committee on Labor and Human Resources of the Senate." 22 U.S.C. § 4605.[1]

2.    On February 19, 2025, the President issued Executive Order 14,217, directing that "[t]he non-statutory components and functions of [certain identified] governmental entities shall be eliminated to the maximum extent consistent with applicable law."  90 Fed. Reg. 10,577, 10,577 (Feb. 25, 2025).  "[S]uch entities" were also ordered to "reduce the performance of their statutory functions and associated personnel to the

---

[1] When President Reagan signed the USIP Act into law, he noted these provisions could not be invoked to interfere with the President's constitutional authority to remove Board members at will.  Ronald Reagan Presidential Libr. & Museum, *Statement on Signing the Department of Defense Authorization Act, 1985* (Oct. 19, 1984), https://perma.cc/B3JB-3JZQ.

5

minimum presence and function required by law." *Id.* USIP was among the identified entities. *Id.*

The White House Presidential Personnel Office subsequently notified USIP's appointed Board members they had been terminated. The remaining ex officio Board members then removed the then-acting president of USIP and designated Kenneth Jackson, and later Nate Cavanaugh, as acting presidents. Under new leadership, USIP transferred title of its headquarters building to the General Services Administration.

**3.** Six of USIP's terminated Board members and its former president brought suit, challenging their removals and the subsequent actions taken by newly designated leadership. On May 19, 2025, the district court entered summary judgment for plaintiffs, holding the President's removal of Board members was ultra vires and the removals and subsequent actions of the agency were without legal effect. Dkt. 40, at 89-102. The court agreed with defendants that USIP is part of the federal government for purposes of constitutional separation-of-powers principles. *Id.* at 43-51. The court concluded, however, that USIP is not part of the Executive Branch and thus not subject to the President's Article II removal authority. *Id.* at 51-76. The court also reasoned that, even assuming USIP is subject to Article II, its statutory removal restrictions are constitutional under *Humphrey's*

*Executor v. United States*, 295 U.S. 602 (1935), because USIP is led by a multi-member, politically balanced board of experts and exercises at most *de minimis* executive power. *Id.* at 76-89. The court ordered that plaintiffs shall continue to serve as Board members and president, and enjoined defendants from purporting to act on behalf of USIP and from maintaining or exercising any access or control over USIP's property and systems.

A unanimous panel of this Court granted a stay pending appeal of the district court's order. The panel reasoned that, "[a]s a general rule, the President may remove executive officers at will," subject to a "narrow exception for 'multimember expert agencies that do not wield substantial executive power' and that exercise 'quasi-judicial' or 'quasi-legislative' power." Stay Op.2 (quoting *Seila Law LLC v. CFPB*, 591 U.S. 197, 217-18 (2020)). The panel concluded the government "is likely to succeed on its claim that the [USIP] Board's removal protections are unconstitutional" "[b]ecause the Institute exercises substantial executive power[s]" in the "domain of the President's foreign affairs powers." Stay Op.2-3. The panel further concluded "[t]he President faces irreparable harm from not being able to fully exercise his executive powers," which "outweighs any harm the removed board members may face." Stay Op.4. Finally, the panel determined "a stay is in the public interest because the people elected the

7

President, not the removed board members, to wield the executive power." *Id.*

## ARGUMENT

### THIS COURT SHOULD DENY THE PETITION FOR REHEARING EN BANC.

Plaintiffs have failed to identify any circumstances justifying the extraordinary step of rehearing en banc of the government's stay motion. The panel's stay ruling was correctly decided, and it is consistent with the decisions of this Court and the Supreme Court. Plaintiffs' assertion that the ruling abrogates *Humphrey's Executor*, 295 U.S. 602, mischaracterizes the panel's decision, as does their assertion that the panel's ruling calls into question the status of entities such as the Federal Reserve Board of Governors. And their claim that the panel "misstates the record" in concluding USIP exercises substantial executive authority, Pet.9 (formatting altered), is a fact-bound challenge that does not merit this Court's further review. This Court can adjudicate the questions raised in this case in the merits briefing, which is imminent. The petition for rehearing en banc should be denied.

**A.      The Panel's Stay Ruling Is Correct.**

**1.      The Government Is Likely to Prevail on the Merits.**

**a.**      The unanimous stay panel correctly determined the government "is likely to succeed on its claim that [USIP]'s removal protections are unconstitutional."  Stay Op.2.  The panel explained that, generally, "the President may remove executive officers at will" with a "narrow exception for 'multimember expert agencies that do not wield substantial executive power.'"  *Id.*  Examining the record, the panel concluded USIP exercises such "substantial executive power[s]" by "engag[ing] in extensive activities within the domain of the President's foreign affairs powers."   Stay Op.2-3.  Specifically, the panel cited USIP's on-the-ground peace-brokering activities, concluding that "facilitating the foreign policy of the United States by brokering peace among warring parties on the international stage is plainly an exercise of executive power under our Constitution."  Stay Op.3 (cleaned up).  The panel also observed that USIP "shapes foreign affairs in the interest of the United States through the exercise of soft power" in the form of grant-making and educational programs, all "while authorized to use 'United States' or 'U.S.' or any other reference to the United States Government or Nation in its title" or seal.  *Id.*  (quotation marks omitted).  Because "[t]he President's inability to control the Institute's exercise of these 'significant

executive powers' undermines his ability to set and pursue his foreign policy objectives," the panel thus correctly concluded the government "is likely to succeed on its claim that the Board's removal restrictions violate Article II." *Id.* (alteration omitted).

**b.**     Plaintiffs primarily object to the panel's conclusion that USIP exercises substantial executive power. Pet.9-12. But the panel based that conclusion on, *inter alia*, multiple examples of USIP's "extensive activities within the domain of the President's foreign affairs powers," drawn directly from plaintiffs' declarations. Stay Op.3. Although plaintiffs quibble with the panel's construction of their declarations and descriptions of USIP's activities (Pet.11-12), arguing the panel's conclusion "misstates the record," Pet. 9 (formatting altered), their challenge is without merit, and in any event, that fact-bound disagreement does not warrant en banc review.

Plaintiffs also suggest the panel miscomprehended the proper analysis and try to reframe the relevant inquiry as "whether USIP performs [its] work 'on behalf of the government.'" Pet.10. But as both the district court and stay panel concluded—and plaintiffs do not seriously dispute—USIP constitutes part of the government "for constitutional separation-of-powers purposes." Stay Op.2 n.1 (quoting Dkt. 40, at 43). As noted above, USIP is engaging in foreign-affairs functions—ranging from on-the-ground peacebuilding to

soft-power initiatives through grant-making—that, when pursued by a governmental entity, constitute the exercise of executive power under Article II. *See* Stay Op.3 ("Facilitating the foreign policy of the United States by brokering peace among warring parties on the international stage is plainly an exercise of executive power under our Constitution." (quotation marks omitted)).

Plaintiffs cite no authority for the proposition that a governmental entity's mere *belief* that it is independent from the Executive Branch, or its holding itself out as such, is dispositive of the form of power it exercises. To the contrary, that an entity has some "functional independence" does not negate its "constitutional status": "Congress may afford the officers of [certain] entities a measure of independence from other executive actors, but they remain Executive-Branch officers subject to presidential removal." *Kuretski v. Commissioner*, 755 F.3d 929, 943-44 (D.C. Cir. 2014).

Plaintiffs also take issue with the panel's determination that USIP's grant-making authority is an executive function, contending this conclusion "render[s] the *Seila Law* standard meaningless." Pet.15-16. Regardless of whether grant-making authority in the abstract is properly considered "substantial executive power," the panel was specifically evaluating USIP's authority in the *foreign-affairs* context. *See* Stay Op.2-3 ("The Institute also

11

shapes foreign affairs in the interest of the United States through the exercise of soft power."). The panel was correct in concluding that, under these circumstances, USIP's "soft-power initiatives intended 'to further the Nation's interest in promoting international peace,'" Stay Op.3—including its grant-making—constitute the exercise of substantial executive power.

      **c.**      Even if the full Court were to disagree with the panel's conclusion that USIP exercises substantial executive power, the stay is independently justified on the ground that courts lack the power to grant relief restraining the removal of executive officers. Injunctions or declarations restoring removed executive officers to their positions—like the district court's order in this case—violate Article II, lack clear statutory authorization, and exceed federal courts' equitable powers. *Trump v. United States*, 603 U.S. 593, 620-21 (2024) (President's removal power is "'conclusive and preclusive,'" meaning it "may not be regulated by Congress or reviewed by the courts"). The Supreme Court has long held that "a court of equity has no jurisdiction over the appointment and removal of public officers." *White v. Berry*, 171 U.S. 366, 377 (1898); *Harris v. Bessent*, No. 25-5037, 2025 WL 1021435, at *5 (D.C. Cir. Apr. 7, 2025) (en banc) (Rao, J., dissenting) ("The lesson from history is clear: Federal courts have no equitable authority to enjoin the removal or to mandate the reinstatement of executive officers."). Although

the en banc Court rejected this reinstatement argument in the *Harris*/*Wilcox* stay order without explanation, *see Harris*, 2025 WL 1021435, at *2 (per curiam), the government respectfully submits this argument will prevail on the merits with the benefit of full consideration. *See id.* at *2-7 (Rao, J., dissenting); *Bessent v. Dellinger*, 145 S. Ct. 515, 516-18 (2025) (Gorsuch, J., dissenting).

### 2. The Equitable Factors Favor a Stay.

**a.** The panel also correctly concluded the equitable factors in this case favor stay pending appeal. As the panel held in granting the stay, "[t]he President faces irreparable harm from not being able to fully exercise his executive powers"—here, the powers through which the President "set[s] and pursue[s] his foreign policy objectives." Stay Op.3-4. Requiring the President to "recognize and work with an agency head whom he has already removed" "impinges on the conclusive and preclusive power through which the President controls the Executive Branch that he is responsible for supervising." *Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518, at *3 (D.C. Cir. Mar. 10, 2025) (per curiam) (quotation marks omitted). This is not "an abstract constitutional injury; it is a serious, concrete harm." *Harris v. Bessent*, No. 25-5037, 2025 WL 980278, at *19 (D.C. Cir. Mar. 28, 2025)

13

(Walker, J., concurring).  "That harm outweighs any harm the removed board members may face."  Stay Op.4.

As "[t]he Supreme Court has made clear," "the loss of employment is normally not enough to show irreparable harm."  *Aviel v. Gor*, No. 25-5105, 2025 WL 1600446, at *6 (D.C. Cir. June 5, 2025) (Rao, J., dissenting) (citing *Sampson v. Murray*, 415 U.S. 61, 91-92, 92 & n.68 (1974)).  While plaintiffs "may sue for damages resulting from [their] removal[s], [they] posses[s] no private right in the powers of [their] office[s] or the policy direction of the agency."  *Id.*; *see Raines v. Byrd*, 521 U.S. 811, 821 (1997).  Accordingly, "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty."  *Wilcox*, 145 S. Ct. at 1415.  The panel thus correctly stayed the district court's order.  And maintaining the stay "is appropriate to avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation."  *Id.*

**b.**  Plaintiffs' scant discussion of the equities in the petition is largely focused on securing "an immediate administrative stay" to prevent "[e]ven a brief return to [the Department of Government Efficiency]'s control while the en banc Court considers the petition."  Pet.3; *see* Pet.17.  But the panel's

stay order was issued on June 27, and that transition away from control by the removed Board members has already occurred.

Although plaintiffs speculate (Pet.3) that "it is not clear that USIP will be able to survive until Defendants' appeal is resolved on the merits," the circumstances of this litigation belie any such assertion. Defendants had possession of USIP's headquarters and assets for over two months prior to the district court's May 19 summary-judgment order. Following that order, plaintiffs were fully able to recover the building and assets and "resume operational control over" USIP. Pet.17. Plaintiffs' allegations of some superficial harm to the physical property during that time (Pet.7) cannot support the inference that USIP and its property will be "effectively destroy[ed]," Pet.18, before this Court decides the merits of the appeal.

Regardless, plaintiffs solely invoke harms to USIP as an institution. *See* Pet.2-3. But USIP is not a proper plaintiff here; only six former Board members joined this action as plaintiffs, meaning that a majority—four former appointed Board members and three ex officio Board members named as defendants—have not authorized the filing of this suit. The petition does not even attempt to assert irreparable harm to the individual plaintiffs.

15

### B.    This Case Does Not Meet the Criteria for En Banc Review.

In addition to being correct, the panel's stay decision fails to satisfy the criteria for this Court's en banc review.  Petitions for rehearing en banc are "not favored," "rarely granted," and "ordinarily will be allowed only if" the panel decision conflicts with a prior decision of this Court, the Supreme Court, or another court of appeals, or involves a question of exceptional importance.  *D.C. Circuit Handbook of Practice and Internal Procedures* 58 (2024).  En banc review of a stay pending appeal is even more rare.

Plaintiffs do not contend the panel's stay order conflicts with any other decision of this Court or of another court of appeals.  Instead, plaintiffs contend the order "conflicts with the Supreme Court's long-recognized exceptions to the President's at-will removal power" and "involves questions of exceptional importance regarding the scope of the President's executive power."  Pet.2 (citing Fed. R. App. P. 40(b)(2)(B), (D)).  Rehearing en banc of the panel's interlocutory stay order is not warranted on either basis.

**1.**    Plaintiffs erroneously contend the panel "went far beyond" the Supreme Court's stay order in *Wilcox*, 145 S. Ct. 1415, by "abrogating the *Humphrey's Executor* and *Wiener* exception."  Pet.12 (formatting altered); *see* Pet.2 ("[U]nder the panel's view there is *nothing* left of *Humphrey's Executor* and *Wiener*").  But the panel expressly noted that "[t]he Supreme

16

Court has recognized a narrow exception" to the general rule that the President may remove executive officers at will "for 'multimember expert agencies that do not wield substantial executive power' and that exercise 'quasi-judicial' or '"quasi-legislative' power." Stay Op.2 (quoting *Seila Law*, 591 U.S. at 217-18). The panel simply concluded the exception likely does not apply because USIP "exercises substantial executive power." *Id.* That is fully consistent with the Supreme Court's approach in *Wilcox*. *See* 145 S. Ct. at 1415 (acknowledging "narrow exceptions recognized by our precedents," and concluding "the Government is likely to show that both the NLRB and MSPB exercise considerable executive power" (citing *Seila Law*, 591 U.S. at 215-18)).

Plaintiffs also suggest the stay "mandat[es] at-will presidential removal … for bodies performing quasi-private non-executive work that Congress intentionally placed outside the Executive Branch," such as the Federal Reserve Board of Governors. Pet.1-2. As noted, however, the panel's stay ruling said nothing about the status of entities performing non-executive work. And unlike USIP, the Federal Reserve has a "special historical status," *Seila Law*, 591 U.S. at 222 n.8, which "follows in the distinct historical tradition of the First and Second Banks of the United States," *Wilcox*, 145 S. Ct. at 1415. The panel's stay order does not call into question the special

17

status of the Federal Reserve or the status of other entities performing non-executive work.

**2.**    Nor does the case present other exceptional circumstances warranting rehearing en banc in this posture.

Plaintiffs object (Pet.12-16) that the stay order interferes with "Congress's longstanding exercise of its Article I powers" to "create ... chartered corporations outside of Executive Branch control." The order does no such thing. Congress remains able to create corporations that are properly viewed as non-governmental for constitutional purposes, presuming those entities do not exhibit certain markers of government control. *See Herron v. Fannie Mae*, 861 F.3d 160, 167-68 (D.C. Cir. 2017). And Congress can create governmental entities that are not subject to the President's at-will-removal power, for instance, if they exercise only judicial or legislative power. But Congress cannot validly create independent governmental entities that exercise substantial executive power but purport to do so free from the President's control via at-will removal. Because Congress purported to do so with respect to USIP, the stay panel correctly concluded that USIP's "removal protections" are likely "unconstitutional." Stay Op.2.

18

More fundamentally, the stay panel addressed only the government's *likelihood* of success on the merits in this appeal. It did not definitively resolve any merits "questio[n] of exceptional importance regarding the scope of the President's executive power." Pet.2; *cf. Wilcox*, 145 S. Ct. at 1415 ("[W]e do not ultimately decide in this posture whether the NLRB or MSPB falls within such a recognized exception [to Presidential at-will removal]; that question is better left for resolution after full briefing and argument."). The government and plaintiffs have already filed their initial submissions and are currently awaiting a briefing schedule. The Court will thus consider the merits in short order. And when the merits panel issues its decision, whichever side is aggrieved can decide whether to seek en banc or Supreme Court review. There is no need for the en banc Court to weigh in at this interlocutory juncture.

# CONCLUSION

The petition for rehearing en banc should be denied.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE
McKAYE L. NEUMEISTER
 */s/ Courtney E. Albini*
COURTNEY E. ALBINI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7511*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 598-7329*
  *Courtney.albini2@usdoj.gov*

July 2025

**CERTIFICATE OF COMPLIANCE**

This response complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,879 words. This response also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

*/s/ Courtney E. Albini*
Courtney E. Albini

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Courtney E. Albini*
Courtney E. Albini