**NOT YET SCHEDULED FOR ORAL ARGUMENT**

# United States Court of Appeals
# for the District of Columbia Circuit

## No. 25-5185

UNITED STATES INSTITUTE OF PEACE; JOHN J. SULLIVAN, AMBASSADOR, in his official capacity as Chair of the Board of Directors of the United States Institute of Peace; JUDY ANSLEY, in her official capacity as a member of the Board of Directors of the United States Institute of Peace; JOSEPH L. FALK, in his official capacity as a member of the Board of Directors of the United States Institute of Peace; KERRY KENNEDY, in her official capacity as a member of the Board of Directors of the United States Institute of Peace;

*(For Continuation of Caption See Inside Cover)*

*On Appeal from the United States District Court for the District of Columbia in No. 25-cv-00804-BAH.*

# BRIEF FOR *AMICI CURIAE* BIPARTISAN CURRENT AND FORMER MEMBERS OF CONGRESS IN SUPPORT OF APPELLEES

CAREY R. DUNNE
KEVIN TROWEL
MÓNICA P FOLCH*
ZACK GOLDBERG
MARTHA REISER
FREE AND FAIR LITIGATION GROUP, INC.
266 West 37th Street, 20th Floor
New York, New York 10018
(646) 434-8604
carey@freeandfair.org

NORMAN L. EISEN
STEPHEN A. JONAS
JOSHUA G. KOLB
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE
Washington, D.C. 20003
(202) 594-9958
norman@democracydefenders.org

Joseph T. Baio*
JOSEPH T. BAIO LLC
240 Centre Street
New York, New York 10013
(914) 523-2255
josephtbaiolaw@icloud.com

October 2, 2025        *Application for admission pending

MARY SWIG, in her official capacity as a member of the Board of Directors of the United States Institute of Peace; NANCY ZIRKIN, in her official capacity as a member of the Board of Directors of the United States Institute of Peace; GEORGE E. MOOSE, AMBASSADOR; in his official capacities as Acting President of the United States Institute of Peace and as an *ex officio* member of the Board of Directors of the United States Institute of Peace,

*Plaintiffs-Appellees,*

*v.*

KENNETH JACKSON, in his official capacity as Assistant to the Administrator for Management and Resources for USAID and in his purported capacity as acting president of the United States Institute of Peace; U.S. DOGE SERVICE; U.S. DOGE SERVICE TEMPORARY ORGANIZATION; Amy Gleason, in her official capacity as the Acting Administrator of U.S. DOGE Service and U.S. DOGE Service Temporary Organization; JAMES M. BURNHAM, in his official capacity as an employee of the U.S. DOGE Service or the U.S. DOGE Service Temporary Organization; JACOB ALTIK, in his official capacity as an employee of the U.S. DOGE Service or the U.S. DOGE Service Temporary Organization; NATE CAVANAUGH, in his official capacity as an employee of the U.S. DOGE Service or the U.S. DOGE Service Temporary Organization; MARCO RUBIO, in his official capacity as the U.S. Secretary of State and in his official capacity as an *ex officio* member of the USIP Board of Directors; PETER B. HEGSETH, in his official capacity as the U.S. Secretary of Defense and in his official capacity as an *ex officio* member of the USIP Board of Directors; PETER A. GARVIN, VICE ADMIRAL, in his official capacity as President of the National Defense University and in his official capacity as an *ex officio* member of the USIP Board of Directors; DONALD J. TRUMP, in his official capacity as President of the United States of America; TRENT MORSE, in his official capacity as Deputy Director of Presidential Personnel in the White House Presidential Personnel Office, the White House Office, and the Executive Office of the President of the United States,

*Defendants-Appellants.*

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned certifies as follows:

(A)   **Parties and Amici**.  All parties, intervenors, and amici appearing before the district court and in this Court are listed in the brief for Defendants-Appellants in this case, other than any further amici filing briefs this same day.

(B)   **Ruling Under Review**.  To amici's knowledge, references to the ruling at issue appear in the brief for Defendants-Appellants in this case.

(C)   **Related Cases**.  References to related cases appear in the brief for Appellees.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................ iii

GLOSSARY OF ABBREVIATIONS ............................................................. vi

INTEREST OF AMICI ......................................................................................1

SUMMARY OF ARGUMENT ..........................................................................2

ARGUMENT .....................................................................................................5

    I.     The Constitution grants Congress independent foreign affairs powers. .........5

    II.     Congress created USIP to support Congress's exercise of foreign affairs authority. ...................................................................................................7

    III.     Congress regularly relies on USIP research and analysis in exercising its foreign affairs powers. ...........................................................................8

    IV.     The elimination of USIP by executive action alone violates the separation of powers principle and the Take Care Clause of the Constitution. ........................11

CONCLUSION .................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Am. Ins. Ass'n v. Garamendi*,
539 U.S. 396 (2003) ...............................................................................4, 5

*Biden v. Texas*,
597 U.S. 785 (2022) ...................................................................................6

*Bowsher v. Synar*,
478 U. S. 714 (1986)...................................................................................4

*Clinton v. City of New York*,
524 U.S. 417 (1998)...................................................................................12

*Dong. v. Smithsonian Inst.*,
125 F.3d 877 (D.C. Cir. 1997)...............................................................11, 12

*Medellin v. Texas*,
552 U.S. 491 (2008) ...................................................................................5

*N.L.R.B. v. Noel Canning*,
573 U.S. 513 (2014)...................................................................................4

*Oetjen v. Central Leather Co.*,
246 U.S. 297 (1918)...................................................................................5

*Schneider v. Kissinger*,
412 F.3d 190 (D.C. Cir. 2005)...................................................................2

*TikTok Inc. v. Garland*,
604 U.S. 56 (2025).....................................................................................6

*United States v. Butenko*,
494 F.2d 593 (3d Cir. 1974) .......................................................................3

*United States Inst. of Peace v. Jackson*,
783 F. Supp. 3d 316 (D.D.C. 2025) ..................................................3, 13

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) ...............................................................................6

*Zivotofsky v. Kerry*,
576 U.S. 1 (2015) ...............................................................................6, 12

*Zweibon v. Mitchell*,
516 F.2d 594 (D.C. Cir. 1975) ...............................................................2

**United States Constitution**

U.S. Const., art. 1, § 1 .........................................................................11

U.S. Const., art. I, § 8............................................................................5

U.S. Const., art. II, § 2 ...........................................................................5

U.S. Const., art. II, § 3 ......................................................................4, 12

**Statutes**

22 U.S.C. § 4601 .....................................................................................7

22 U.S.C. § 4601(a)(7)............................................................................7

22 U.S.C. § 4601(b) ................................................................................7

22 U.S.C. § 4603(b) ................................................................................7

**Executive Orders**

Exec. Order No. 14217, Commencing the Reduction of the Federal Bureaucracy,
90 Fed. Reg. 10577 (Feb. 19, 2025) .....................................................2

**Rules**

Fed. R. App. P. 29(a)(4)(E) ....................................................................1

D.C. Circuit Rule 29(d) .............................................................................1

## Other Authorities

The Federalist No. 51 (James Madison) ................................................12

Lauren Baillie et al., *The Future of the Security Sector in Ukraine* (U.S. Inst. of Peace, Oct. 2024) ......................................................................7

Letter from Reps. Lois Frankel et al. to Michael R. Pompeo, Sec'y of State (June 6, 2019), reprinted in U.S. Interests in South Asia and the FY 2020 Budget, 116th Cong. (2019) ......................................................................................10

Michael D. Ramsey, *The Constitution's Text in Foreign Affairs* (2007) ..................6

Hearing Before the Subcomm. on Near E., S. Asia, Cent. Asia & Counterterrorism of the S. Comm. on Foreign Relations, 116th Cong. (Sept. 24, 2019) ...............9, 10

Hearing Before the S. Special Comm. on Aging & the H. Select Comm. on the Strategic Competition Between the U.S. & the Chinese Communist Party, 119th Cong. (Apr. 9, 2025) ...............................................................11

Hearing on S. 1889 Before the Subcomm. on Education, Arts & Humanities of the S. Comm. on Labor & Human Resources, 97th Cong. 45 (Apr. 21, 1982)..............8

U.S. Inst. of Peace, *Afghanistan Study Group, Final Report: A Pathway for Peace in Afghanistan* (U.S. Inst. of Peace Feb. 2021).........................................9

U.S. Inst. of Peace, *The Iraq Study Group Report* ....................................9

U.S. Inst. of Peace, Syria Study Group ................................................9

Hearing Before the Subcomm. on W. Hemisphere, Transnational Crime, Civilian Sec., Democracy, Hum. Rts., & Glob. Women's Issues of the S. Comm. on Foreign Relations, 116th Cong. (2019) ...............................................11

**GLOSSARY OF ABBREVIATIONS**

USIP                United States Institute of Peace

## INTEREST OF AMICI[1]

The 17 amici listed in Appendix A are bipartisan current and former members of the United States Congress.  Many have served on the House Foreign Affairs Committee, the Senate Foreign Relations Committee, and other Congressional committees charged with oversight of foreign policy and national security. Several amici members voted in 1984 to establish the United States Institute of Peace ("USIP") with the specific intent to aid Congress in carrying out its constitutional responsibilities in foreign affairs.  Amici are united in the view that Congress created USIP as an independent nonprofit corporation for the express purpose of providing Congress and others research, training, and information in the field of international conflict resolution.  In amici's experience, Congress regularly relies on USIP data and analysis in exercising the significant foreign affairs powers specifically enumerated to Congress by the United States Constitution.  Amici have an interest in protecting Congress's ability to create, maintain, and make use of entities like USIP to provide Congress with the support it needs to discharge its constitutional

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person contributed money that was intended to fund preparing or submitting the brief.  *See* Fed. R. App. P. 29(a)(4)(E).  Pursuant to D.C. Circuit Rule 29(d), amici certify that this separate amicus brief is necessary because amici provide a unique perspective on the role of USIP as it relates to American foreign policy, and because it addresses Congress's role in codifying, reauthorizing, and making use of USIP.

authority. They submit this brief to underscore that the President's unilateral attempt to dismantle USIP violates separation-of-powers principles and undermines Congress's constitutional prerogatives.[2]

## SUMMARY OF ARGUMENT

There is "no doubt that decision-making in the fields of foreign policy and national security is textually committed to the political branches of government"— Congress *and* the Executive. *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005). This dispersion of constitutional authority and responsibility between the two branches is made explicit throughout Article I of the Constitution, which is "richly laden with delegation of foreign policy and national security powers." *Id.* Beyond the enumerated foreign policy responsibilities assigned to Congress, "other sections and clauses of Article I bear on the subject to provide further weight to the conclusion of contextual allocation." *Id.* These Article I provisions, together with the provisions in Article II that "allocate[e] . . . foreign relations and national security powers to the President," *id.*, establish a system of checks and balances that is essential to our system of government, *see Zweibon v. Mitchell*, 516 F.2d 594, 622 n.71 (D.C. Cir. 1975) ("[T]here is no historical support for the contention that the President is not subject to the traditional system of constitutional checks and

---

[2] *See* Exec. Order No. 14217, Commencing the Reduction of the Federal Bureaucracy, 90 Fed. Reg. 10577 (Feb. 19, 2025).

balances merely because foreign relations are implicated." (citing with approval *United States v. Butenko*, 494 F.2d 593, 630–37 (3d Cir. 1974) (Gibbons, J., dissenting)).

In amici's experience, USIP is critical to Congress's ability to fulfill its constitutional obligations in the realm of foreign affairs. Amici are well-positioned to expound on the value of USIP to members of Congress—they include members of Congress who voted in 1984 to establish USIP to assist Congress in the discharge of its constitutional duties. As amici know, and as the district court found, USIP is not an executive agency. *See United States Inst. of Peace v. Jackson*, 783 F. Supp. 3d 316, 360–67 (D.D.C. 2025). It is a legislative instrument created by Congress in 1984, funded by congressional appropriations, and charged with providing research, education, and analysis to Congress itself. USIP does not create or execute our Nation's foreign policy and is not an executive agency in name or function. Rather, since 1984 (and as explained in detail in other briefs), members of Congress—including amici—have relied on USIP to engage in "research, education, and scholarship," *id.* at 360, to "advanc[e] the country's knowledge of foreign conflicts and peaceful paths to resolution," *id.* at 362, and to undertake "studies and projects requested by government officials," many of which "derive from congressional committees rather than Executive branch officials," *id.*

The President's attempt to eliminate USIP by fiat is contrary to "the founding generation's deep conviction that 'checks and balances were the foundation of a structure of government that would protect liberty.'" *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 571 (2014) (Scalia, J., concurring, joined by Roberts, C.J., Thomas, J. and Alito, J.) (quoting *Bowsher v. Synar*, 478 U. S. 714, 722 (1986)).  Amici recognize the President's role in formulating and executing foreign policy, *see, e.g.*, *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003) (collecting cases), but the scope of that executive authority is not implicated, much less endangered, by USIP.  USIP is a tool created *by* and *for* Congress in furtherance of its own constitutional authority to discharge its own constitutional obligations.  No provision in the Constitution authorizes the President to dismantle USIP unilaterally; to the contrary, the President must "take care that the laws be faithfully executed," including the statutes that authorize and fund USIP.  U.S. Const. art. II, § 3.  In amici's view, the President's effort to eliminate USIP without Congressional approval is contrary to the basic principles of our system of government, and the Court should decline to endorse it.

Amici therefore urge the Court to affirm the judgment below and to make clear that Congress's independent role in foreign affairs must be respected.

## ARGUMENT

### I.   The Constitution grants Congress independent foreign affairs powers.

Congress's establishment of the United States Institute of Peace was a direct exercise of its independent constitutional powers in foreign affairs.  Under our constitutional structure, authority over the "conduct of the foreign relations of our Government" is shared between "the Executive and Legislative – 'the political' – Departments." *Medellin v. Texas*, 552 U.S. 491, 511 (2008) (quoting *Oetjen v. Central Leather Co.*, 246 U.S. 297, 302 (1918)).

While "the President has a degree of independent authority to act" in foreign affairs, "Congress holds express authority to regulate public and private dealings with other nations in its war and foreign commerce powers." *Garamendi*, 539 U.S. at 414.  The Constitution explicitly equips Congress with the power to conduct foreign relations, including the authority to "regulate Commerce with foreign Nations"; "declare War"; "raise and support Armies"; "provide and maintain a Navy"; "define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations"; and "establish an uniform Rule of Naturalization."  U.S. Const., art. I, § 8.

Congress also exercises foreign-affairs powers in conjunction with the President, such as treaty-making. *Id.* art. II, § 2. And, of course, the implementation of the President's foreign policy depends on Congress's exercise of its

appropriations, foreign trade, immigration, naturalization, and general law-making powers. *See* Michael D. Ramsey, *The Constitution's Text in Foreign Affairs* 108-14 (2007) (discussing Executive's reliance on the Legislative Branch in the realm of foreign affairs due to the fact that "Congress, not the President, holds lawmaking and funding power").

Thus, as a matter of constitutional law, Congress exercises significant authority in foreign affairs. "[T]he congressional role in foreign affairs [must] be understood and respected." *Zivotofsky v. Kerry*, 576 U.S. 1, 21 (2015); *see also TikTok Inc. v. Garland*, 604 U.S. 56, 75 (2025) (affording Congress "substantial respect" in the context of laws enacted to address "national security and foreign policy concerns"). And the Supreme Court has made clear that "[t]he Executive is not free from the ordinary controls and checks of Congress merely because foreign affairs are at issue." *Zivotofsky*, 576 U.S. at 21; *cf. Biden v. Texas*, 597 U.S. 785, 830 (2022) (Alito, S., dissenting) ("The President has vital power in the field of foreign affairs, so does Congress, and the President does not have the authority to override immigration laws enacted by Congress."). Indeed, "[w]hen the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring).

## II.    Congress created USIP to support Congress's exercise of foreign affairs authority.

In amici's experience as former and current members of Congress, USIP was created to serve as a resource for policy-makers—and especially members of Congress—in discharging their foreign affairs responsibilities.  Congress enacted the United States Institute of Peace Act to address the need for stronger research training, and information concerning international peace and conflict resolution efforts.  *See* 22 U.S.C. § 4601.

Contrary to Appellants' characterization of USIP as an Executive agency tasked with Executive functions, Appellant Br. 12-35, Congress established USIP as an "independent nonprofit corporation," *id.* § 4603(b); to "serve the people and the Government"—including Congress in particular, *id.* § 4601(b); by providing "research, education, and training and information services," concerning international conflict resolution, *id.* § 4601(a)(7).  Moreover, USIP does not create or advocate for specific foreign policies; USIP's own research publications make this clear.  *See, e.g.*, Lauren Baillie et al., *The Future of the Security Sector in Ukraine* (U.S. Inst. of Peace, Oct. 2024) ("The aim of this report is to present practical options for advancing Ukraine's security sector capabilities to consolidate peace and stability as the country transitions from war to peace; the United States Institute of Peace does not take specific policy positions or advocate for specific forms of assistance.").

7

Indeed, the legislative history of the United States Institute of Peace Act confirms that Congress's intent was to create USIP as a resource for its own exercise of foreign affairs powers.  Specifically, members of Congress expressed the view that an organization charged with researching peace and conflict resolution, "would be invaluable to the Congress and others in decision-making positions" to address questions of international conflict.  *See, e.g.*, United States Academy of Peace Act: Hearing on S. 1889 Before the Subcomm. on Education, Arts & Humanities of the S. Comm. on Labor & Human Resources, 97th Cong. 45, at 39 (Apr. 21, 1982).  In particular, it was proposed that such an organization could "conduct seminars for members of the Congress on crisis issues and the background of those issues and those nations as they come up." *Id.* at 53.  Thus, Congress conceived of the proposed organization (later realized as USIP) as a federal resource for Congress to gain access to conflict-resolution expertise, research, and training to inform its legislative decision-making in the realm of foreign affairs.

### III.     Congress regularly relies on USIP research and analysis in exercising its foreign affairs powers.

Congress has repeatedly exercised its Article I powers by commissioning USIP to conduct or facilitate foreign-affairs analysis to inform congressional decision-making.  For instance, in December 2019, Congress requested that USIP

8

facilitate an analysis of ongoing conflict in Afghanistan.[3]  USIP's research yielded a report that was "provided to, and at the request of, those in Congress who oversee American foreign policy and provide the resources to ensure that our national interests are met."[4]  Similarly, in 2006, Congress enlisted USIP to work with other organizations to conduct an assessment of political, security, and economic developments in Iraq.[5]  That work yielded specific recommendations for congressional action in Iraq, including that "Congress must carry out its constitutional responsibility to review budget requests for the war in Iraq carefully and to conduct oversight."[6]  In 2018, Congress asked USIP to establish the Syria Study Group to examine and make recommendations on the military and diplomatic strategy of the United States with respect to the conflict in Syria.[7]  The bipartisan Syria Study Group presented its analysis to the Senate Committee on Foreign Relations on September 24, 2019.[8]

---

[3] U.S. Inst. of Peace, Afghanistan Study Group, Final Report: A Pathway for Peace in Afghanistan 61 (U.S. Inst. of Peace Feb. 2021), *available at* https://www.usip.org/sites/default/files/2021-02/afghanistan_study_group_final_report_a_pathway_for_peace_in_afghanistan.pdf.

[4] *Id.* at 2.

[5] *See* https://www.usip.org/programs/iraq-study-group.

[6] U.S. Inst. of Peace, The Iraq Study Group Report 60, *available at* https://www.usip.org/sites/default/files/iraq_study_group_report.pdf.

[7] U.S. Inst. of Peace, Syria Study Group, *available at* https://www.usip.org/programs/syria-study-group.

[8] The Path Forward: Key Findings from the Syria Study Group Report: Hearing Before the Subcomm. on Near E., S. Asia, Cent. Asia & Counterterrorism of the S.

These congressionally-directed research efforts are just a few examples of how USIP has functioned as an important legislative tool—one that Congress built and has repeatedly used to gather independent analysis and recommendations necessary to carry out Congress's own foreign-affairs responsibilities.

Congress has repeatedly cited to USIP's research and analysis in public statements discussing its foreign affairs oversight and policy-making functions. For example, in 2019, a bipartisan group of members of the House of Representatives drafted a letter to the Secretary of State concerning the conflict in Afghanistan, citing USIP research.[9] The letter was later entered into the record during a House Foreign Affairs Subcommittee hearing on South Asia.[10] Also in 2019, during a hearing before the Senate Committee on Foreign Relations, a Republican Senator introduced testimony from the USIP Senior Program Officer for Religion and Inclusive Societies concerning the role of women in advancing peace and security in countries around the world.[11] In 2025, during a joint Senate-House hearing on the Chinese

---

Comm. on Foreign Relations, 116th Cong. (Sept. 24, 2019), *available at* https://www.congress.gov/event/116th-congress/senate-event/LC64815/text.

[9] Letter from Reps. Lois Frankel et al. to Michael R. Pompeo, Sec'y of State (June 6, 2019), reprinted in U.S. Interests in South Asia and the FY 2020 Budget: Hearing Before the Subcomm. on Asia, the Pac. & Nonprolif. of the H. Comm. on Foreign Affs., 116th Cong. 37–38 (2019), *available at* https://www.govinfo.gov/content/pkg/CHRG-116hhrg36642/pdf/CHRG-116hhrg36642.pdf.

[10] *Id.* at 36-37.

[11] Women in Conflict: Advancing Women's Role in Peace and Security: Hearing Before the Subcomm. on W. Hemisphere, Transnational Crime, Civilian Sec.,

Communist Party's exploitation of American investors, a Democratic member of the House of Representatives cited USIP research on cyber-scamming networks in Southeast Asia.[12]  These examples demonstrate a bipartisan practice: Congress turns to USIP as a trusted, nonpartisan source of research and expertise to conduct oversight and shape legislation on core questions of war, peace, and international security.

## IV.  The elimination of USIP by executive action alone violates the separation of powers principle and the Take Care Clause of the Constitution.

Amici respectfully submit that the dismantling of USIP is not only unwise, but also unlawful.  Article I of the U.S. Constitution vests legislative power in Congress.  U.S. Const. art. I, § 1.  Congress has long exercised its Article I authority to create and structure corporations and quasi-public bodies like USIP that are independent from the Executive branch.  *See, e.g.*, *Dong. v. Smithsonian Inst.*, 125

---

Democracy, Hum. Rts., & Glob. Women's Issues of the S. Comm. on Foreign Relations, 116th Cong. (2019), available at https://www.govinfo.gov/content/pkg/CHRG-116shrg40484/pdf/CHRG-116shrg40484.pdf.

[12] Transnational crime in Southeast Asia (joint House–Senate hearing, 2025) Financial Aggression: How the Chinese Communist Party Exploits American Retirees and Undermines National Security: Hearing Before the S. Special Comm. on Aging & the H. Select Comm. on the Strategic Competition Between the U.S. & the Chinese Communist Party, 119th Cong. (Apr. 9, 2025), *available at* https://www.congress.gov/119/chrg/CHRG-119shrg60494/CHRG-119shrg60494.pdf.

F.3d 877, 879-80 (D.C. Cir. 1997) ("It is plain that the [congressionally created Smithsonian Institution] is not an establishment in the executive branch."). "There is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes." *Clinton v. City of New York*, 524 U.S. 417, 438 (1998). Indeed, the President must "take care that the laws be faithfully executed." U.S. Const. art. II, § 3.[13]

The Constitution does not empower the President to dismantle USIP, or to disregard Congress's allocation of funds to USIP. Certainly, the President lacks any authority to prevent USIP from performing its statutorily mandated function of providing Congress with nonpartisan research and analysis relating to international conflicts to aid Congress in its exercise of constitutional authority. But, as the district court found, that is what the Administration attempted to do in March 2025, when it terminated all appointed USIP Board members, dismissed the vast majority

---

[13] As Justice Scalia explained:

> Congress *may* make laws necessary and proper for carrying into execution the President's powers, Art. I, § 8, cl. 18, but the President *must* "take Care" that Congress's legislation "be faithfully executed," Art. II, §3. And Acts of Congress made in pursuance of the Constitution are the "supreme Law of the Land"; acts of the President (apart from treaties) are not. Art. VI, cl. 2.

*Zivotofsky,* 576 U.S. at 83–84 (Scalia, J. dissenting, joined by Roberts, C.J., and Alito, J.). As the Founders noted: "In republican government, the legislative authority necessarily predominates." The Federalist No. 51 (James Madison).

of USIP's employees, and disposed of USIP's assets.  *See United States Inst. of Peace*, 783 F. Supp. 3d at 330–34.  The Administration's actions, in other words, would prevent USIP from fulfilling its Congressional mandate in violation of statutory requirements and the President's constitutional obligations.

## CONCLUSION

For the foregoing reasons, amici respectfully urge the Court to affirm the district court's order.

DATED: October 2, 2025

<div style="margin-left:40%">

/s/ *Carey R. Dunne*
Carey R. Dunne
Michele Roberts
Kevin Trowel
Mónica P. Folch*
Zack Goldberg
Martha Reiser
Free & Fair Litigation Group
266 West 37th Street, 20th Floor
New York, NY 10018
Telephone: (646) 434-8604
carey@freeandfair.org
michele@freeandfair.org
kevin@freeandfair.org
monica@freeandfair.org
zack@freeandfair.org
martha@freeandfair.org

Joseph T. Baio*
Joseph T. Baio LLC
240 Centre Street
New York, NY 10013
Telephone: (914) 523-2255
josephtbaiolaw@icloud.com

</div>

Norman L. Eisen
Stephen A. Jonas
Joshua G. Kolb
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave SE, Suite 15180
Washington, D.C. 20003
Telephone: (202) 594-9958
Norman@democracydefenders.org
Steve@democracydefenders.org
Joshua@democracydefenders.org

*Application for admission pending*

*Counsel for Amici Curiae Bipartisan
Current and Former Members of
Congress*

14

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,850 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using MS Word 2016 in <u>Times New Roman 14-point font</u>.

DATED: October 2, 2025       Respectfully submitted,

<u>/s/ *Carey R. Dunne*</u>
Carey R. Dunne
Free + Fair Litigation Group
*Counsel for amici*

## APPENDIX A: LIST OF AMICI CURIAE

Jeanne Shaheen
U.S. Senator from New Hampshire

Jeffrey Merkley
U.S. Senator from Oregon

Brian Schatz
U.S. Senator from Hawaii

Gregory W. Meeks
Representative of New York

Lois Frankel
Representative of Florida

Gabe Amo
Representative of Rhode Island

Jonathan Jackson
Representative of Illinois

Sara Jacobs
Representative of California

Sydney Kamlager-Dove
Representative of California

William Keating
Representative of Massachusetts

Bradley S. Schneider
Representative of Illinois

Dina Titus
Representative of Nevada

*Former Members of Congress*

Steve Bartlett
Representative of Texas
1983-1991

Tom Coleman
Representative of Missouri
1976-1993

Marvin Henry "Mickey" Edwards
Representative of Oklahoma
1977-1993

Claudine Schneider
Representative of Rhode Island
1981-1991

Christopher Shays
Representative of Connecticut
1987-2009

1