# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES INSTITUTE OF PEACE, *et al.*,

        *Plaintiffs-Appellees*,

v.

KENNETH JACKSON, *et al.*,

        *Defendants-Appellants*.

On Appeal from the United States District Court for the District of Columbia
No. 25-cv-804-BAH, The Honorable Beryl A. Howell, District Judge

# MOTION OF PLAINTIFFS-APPELLEES FOR PARTIAL VACATUR OF STAY PENDING APPEAL

ANDREW N. GOLDFARB
J. BENJAMIN JERNIGAN
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400
Washington, DC 20037
Telephone: (202) 778-1800

WILLIAM J. MURPHY
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Telephone: (410) 332-0444

*Counsel for Plaintiffs-Appellees*

October 15, 2025

# TABLE OF CONTENTS

                                                                                                Page

INTRODUCTION ..............................................................................................1

STATEMENT....................................................................................................4

ARGUMENT .....................................................................................................6

    I.   THE COMPETING EQUITIES DO NOT SUPPORT MAINTENANCE
         OF THE STAY OF ANTI-DISMANTLING RELIEF PENDING *SLAUGHTER*. ...............6

    II.   PARTY AND AMICI BRIEFING SHOWS THAT APPELLANTS ARE NOT
         ENTITLED TO A CONTINUED STAY OF THE ANTI-DISMANTLING RELIEF. .......11

CONCLUSION................................................................................................16

# INTRODUCTION

Since June, all components of the District Court's order—which it issued in furtherance of its judgment that Appellants unlawfully took control of the United States Institute of Peace ("USIP"), disposed of its real and personal property worth millions, and took steps to dismantle the organization—have been stayed pending appeal. One set of stayed relief allowed the Appellee Board members to continue serving in their lawfully held positions. The other set of relief invalidated and barred Appellants' actions that could dismantle USIP and cripple it from ever resuming its work. Appellees now seek a partial vacatur of the stay with respect to certain components of the latter set—referred to herein as the "anti-dismantling relief"—in light of the Court's *sua sponte* order holding the appeal in abeyance until after the Supreme Court decides *Trump v. Slaughter*.[1]

---

[1] Specifically, Appellees request vacatur of the stay as to the following "anti-dismantling" components of the District Court's order, JA294-97:

- "**DECLARED** that the purported appointments of Kenneth Jackson and Nate Cavanaugh to the positions of president of USIP pursuant to resolutions adopted by less than a majority of the duly appointed Board of Directors of USIP were invalid and therefore null, void, and without legal effect;"
- "**DECLARED** that all actions taken or authorized by Kenneth Jackson or Nate Cavanaugh as acting presidents of USIP were invalid and therefore null, void, and without legal effect;"
- "**DECLARED** that, given the illegitimate appointment of Nate Cavanaugh to the position as USIP president, the actions and documents by which he purportedly transferred USIP's headquarters, located at 2301 Constitution

1

Avenue, NW, Washington, DC 20037, to the General Services Administration were invalid and therefore null, void, and without legal effect;"

- "**DECLARED** that the transfer of USIP's other financial or physical assets to the General Services Administration was likewise invalid, null void, and without legal effect;"

- "**DECLARED** that the resolution adopted by two *ex officio* Directors of USIP's Board purportedly appointing Adam Amar as president of the Endowment of the USIP Fund and authorizing and instructing him to transfer any and all of the Endowment's assets to USIP was invalid, null[,] void, and without any legal effect;" and

- "**ORDERED** that the defendants who are *ex officio* members of USIP's Board of Directors may not act unilaterally or in any combination of the three of them together, without additional consent constituting a majority of members of the duly constituted USIP Board of Directors, to transfer any of USIP's assets[.]"

Appellees do not seek vacatur of the stay as to two remaining orders that also bear on anti-dismantling, so as not to interfere with the ability of those currently exercising control over USIP, should they choose to do so, to undertake basic caretaking tasks to preserve USIP's assets and functions, such as maintaining the physical plant of its building and the availability of its website, during the pendency of the appeal. JA296 ("**ORDERED** that defendants, except for the *ex officio* members of USIP's Board of Directors to the extent their official positions allow, are **ENJOINED** from further trespass against the real and personal property belonging to the Institute and its employees, contractors, agents, and other representatives"); ("**ORDERED** that defendants, except for the *ex officio* members of USIP's Board of Directors to the extent their official positions allow, are **ENJOINED** from maintaining, retaining, gaining, or exercising any access or control over the Institute's offices, facilities, computer systems, or any other records, files, or resources, and from acting or purporting to act in the name of Institute, and from using the Institute's name, emblem, badge, seal and any other mark of recognition of the Institute").

Holding the appeal in abeyance changes the equitable balance with regard to the anti-dismantling relief, because it adds many months to what was an expedited schedule for briefing and argument, threatening the complete dismantling of USIP during the pendency of the appeal. Reinstatement of the anti-dismantling relief is also appropriate because the Court could (and should) affirm all of that relief no matter how the Supreme Court decides the questions presented in *Slaughter*.

The Supreme Court granted certiorari before judgment in *Slaughter* on two questions: "(1) Whether the statutory removal protections for members of the Federal Trade Commission violate the separation of powers and, if so, whether *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), should be overruled"; and "(2) Whether a federal court may prevent a person's removal from public office, either through relief at equity or at law." *Trump v. Slaughter*, Nos. 25A264, 25-332, --- S. Ct. ----, 2025 WL 2692050 (Sept. 22, 2025). This Court can affirm the District Court's decision that the restrictions on the removal of USIP's board members are constitutional even if the Supreme Court overrules *Humphrey's Executor* because USIP does not exercise any power constitutionally vested in the President. And it can affirm the District Court's anti-dismantling relief without regard to the Supreme Court's resolution of the second question presented in *Slaughter* because this relief does not "prevent" the "removal" of USIP Board members from office. *Id.* Instead, this relief addresses Appellants' actions following the purported removals. Indeed,

3

Appellants' brief does not address the anti-dismantling relief and does not argue that the District Court lacked equitable authority to order it.

To be sure, the outcome in *Slaughter* will be relevant to the disposition of this appeal. But that is not a reason to keep in place the entirety of a stay order for many additional months when the merits briefing shows that the District Court's anti-dismantling relief is not likely to be affected by the outcome of that case—yet those additional months are likely to substantially increase the irreparable harm to Appellees. The requested partial vacatur will freeze conduct taken by a residual board and acting presidents whose authority depends on the lawfulness of the challenged removals, preserving the status quo and the efficacy of relief should it be upheld at the conclusion of this appeal. *See Nken v. Holder*, 556 U.S. 418, 427 (2009) (an appellate court must balance a stay's facilitation of "considered review" against the interest in "effective relief" for the party benefitting from the order).

Appellants oppose this request.

## STATEMENT

To implement an Executive Order to shut USIP down, on March 14, 2025, the President purported to remove all of USIP's board members save the three *ex officio* members, even though Congress forbade USIP from ceasing operations on its own, 22 U.S.C. § 4604(a), and appropriated fiscal year 2025 funding for USIP.

On May 19, 2025, the District Court granted summary judgment in Appellees' favor and entered a multi-component order barring Appellants from taking certain actions with respect to USIP. JA294-97. Some of this relief ensured that individual Appellees could continue to serve in their lawfully appointed roles as members of the USIP Board. But much of the relief was designed to unwind Appellants' unauthorized efforts to dismantle USIP under the auspices of a partial board of directors, and to prevent Appellants from further pursuing this course, such that USIP's assets and operations would be restored to the last uncontested status quo. JA295-97 (enjoining Appellants from dissipating USIP's assets; declaring invalid the purported appointment of Appellants Jackson and Cavanaugh as acting presidents of USIP; and declaring invalid Jackson and Cavanaugh's actions to dismantle USIP, including the purported transfers for no consideration of USIP's privately owned building and financial assets). On June 27, 2025, a motions panel of this Court stayed all of this relief pending appeal. *USIP v. Jackson*, No. 25-5185, 2025 WL 1840572 (D.C. Cir. June 27, 2025) (per curiam) (hereinafter "Stay Order").

Following entry of the contested Stay Order, the Court entered the parties' jointly requested expedited briefing schedule. Joint Motion for Briefing Schedule (July 25, 2025); Scheduling Order (July 25, 2025). Consistent with the parties' request for oral argument on the earliest possible date, the Court set argument for November 21, 2025. Clerk's Order (Sept. 9, 2025). Each side has since filed its

principal merits brief. A group of bipartisan current and former members of Congress and a group of former senior foreign policy and military officials each filed an *amicus* brief in support of Appellees.

On October 2, 2025, acting on its own motion, the Court removed the case from the November 21 argument calendar and held the case in "abeyance pending the Supreme Court's disposition of" *Slaughter*. Per Curiam Order, Dkt. 2137602 (Sept. 29, 2025). The Court directed the parties "to file motions to govern future proceedings in this case within 30 days" of the Supreme Court's disposition of *Slaughter*. *Id*.

## ARGUMENT

I. **The Competing Equities Do Not Support Maintenance of the Stay of Anti-Dismantling Relief Pending *Slaughter*.**

Since the June 27 order staying all relief, the equitable balance has shifted in favor of allowing the anti-dismantling relief to remain in effect. *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004) (a court of equity may "modify its decree in light of changed circumstances"). The abeyance order means that this appeal will not be ripe for decision until many months later than the stay panel could have contemplated—the Supreme Court may not decide *Slaughter* until the end of its current term in June 2026, and then subsequent briefing followed by oral argument will likely delay the disposition of this appeal by additional months. This development frustrates the need for an expeditious resolution of this appeal that the

Court recognized when it granted the parties' requested expedited briefing and argument schedule.

All the while, Appellants—whom the District Court held to be unlawfully exerting control over USIP—will be able to continue their demonstrated course of dismantling USIP. *See* JA391-92 (District Court finding that Appellees were suffering irreparable harm from actions by Appellants Jackson and Cavanaugh to terminate difficult-to-replace USIP staff and transfer USIP's unique real estate, all of which would "make it more difficult for plaintiffs, upon return to their roles, to fulfill their responsibilities"); JA131, 182, 506-07, 536, 1053 (declarations detailing termination of the vast majority of USIP staff); JA1051-53 (Appellants have allowed USIP's unique building to fall into disrepair while in control of it during the pendency of this litigation, including infiltration by rats and roaches, water leaks, graffiti, damage to the garage door, and problems with the vehicle barrier and cooling tower). Appellees are particularly concerned that Appellants will take further action to dissipate USIP's assets. *See* JA484-91 (documents demonstrating Appellants' attempts to transfer all USIP real and personal assets to the General Services Administration while the litigation was ongoing). The risk that Appellees will prevail in this appeal, only to be restored to control of an organization stripped of its valuable assets and that effectively no longer exists, has risen dramatically such that a continued stay of the anti-dismantling relief will "substantially injure" Appellees.

*Nken*, 556 U.S. at 43; *cf. Perlmutter v. Blanche*, No. 25-5285, 2025 WL 2627965, at *8 (D.C. Cir. Sept. 10, 2025) (Pan, J., concurring) (favorably citing District Court's conclusion in *Aviel v. Gor*, 780 F. Supp. 3d 1, 14 (D.D.C. 2025), that removal of the CEO of the Inter-American Foundation would cause irreparable harm where "the very survival of her organization [was] at stake").

Moreover, the parties' principal merits briefs have clarified the issues that will be the focus of this appeal. Appellants argue that the District Court exceeded its remedial authority *only* with respect to what they characterize as the aspects of the District Court's order that directed "the reinstatement of principal officers . . . already removed." Br. for Appellants at 50 (specifically challenging the district court's orders that declared Appellees' purported removals to be "null, void, and without legal effect" and that ordered that the Board-member Appellees "shall continue to serve . . . and may not be removed or treated in any way as having been removed . . . except in accordance with § 4605(f)" (quoting District Court Order, JA 294-96) (citation modified)). Appellees dispute this challenge, but they do not seek a vacatur of the stay of those aspects of the District Court's order.

Instead, Appellees seek a partial vacatur of the stay only with respect to those aspects of the order of the District Court that block Appellants from taking further actions to dismantle USIP in violation of the USIP Act. *See* JA295-97. These anti-dismantling orders have nothing to do with the "reinstatement" of the Appellant

8

Board members to their lawful positions, and therefore have nothing to do with the remedies question presented in *Slaughter*. Unlike what they call "reinstatement" relief, Appellants do not argue that the anti-dismantling relief was beyond the scope of the District Court's equitable and mandamus authority even if the purported removals were unlawful. Br. for Appellees at 46-47; Br. for Appellants at 50-61.

To be sure, Appellants' objection to the anti-dismantling relief rises and falls with the merits of their challenge to the constitutionality of the USIP Act's for-cause removal provisions. But this challenge does not turn on the resolution of the first question presented in *Slaughter*, whether the FTC removal protections "violate the separation of powers and, if so, whether [*Humphrey's Executor*] should be overruled." *Slaughter*, 2025 WL 2692050. The question whether to overrule *Humphrey's Executor* takes as a given that the FTC exercises power that Article II vests in the President and asks whether there nonetheless is an "exception[]" permitting removal protections for members of that agency. *See Trump v. Wilcox*, 145 S. Ct. 1415 (2025) ("Because the Constitution vests the executive power in the President, see Art. II, § 1, cl. 1, he may remove without cause executive officers who exercise that power on his behalf, subject to narrow exceptions recognized by our precedents."); *Seila L. LLC v. CFPB*, 591 U.S. 197, 204 (2020).

But in contrast to the FTC dispute, the parties' principal merits briefs in this appeal show that the primary dispute is whether USIP exercises *any* executive power.

9

Br. for Appellees at 17-32; Br. for Appellants at 20-36. If, as the District Court rightly held upon careful consideration of the factual record, USIP does not wield *any* of the President's power, then the President's authority under Article II to remove "those who wield executive power on [the President's] behalf" does not apply. *Seila Law*, 591 U.S. at 204; JA327-28, 355-73. Nor will *Slaughter's* potential clarification of the scope of an exception to that removal power likely control the outcome of this appeal. Neither *Slaughter* nor any of the other agency removal cases subject to recent Supreme Court interim orders presented a District Court holding that the entity in question did not perform *any* functions associated with executive power. *See Slaughter v. Trump*, No. CV 25-909 (LLA), 2025 WL 1984396, at *13 (D.D.C. July 17, 2025); *Wilcox v. Trump*, 775 F. Supp. 3d 215, 227 (D.D.C. 2025); *Harris v. Bessent*, 775 F. Supp. 3d 164, 176-77 (D.D.C. 2025); *Boyle v. Trump*, No. CV MJM-25-1628, 2025 WL 1677099, at *9-12 (D. Md. June 13, 2025). This Court will have to decide if USIP's research, educational, and conflict resolution functions constitute the exercise of executive power no matter how *Slaughter* is decided.[2]

---

[2] Appellees rely on *Humphrey's Executor* only in the alternative. "Even [i]f" the Court were to reverse the District Court on Appellees' primary argument that USIP does not exercise any executive power, the USIP Act's for-cause removal provision for USIP's multimember expert Board would still be constitutional under *Humphrey's Executor* (as the District Court concluded, also in the alternative). Br. for Appellees at 32; JA327, 373-74 (District Court opinion). *Slaughter* may well bear on this question. But it is inequitable to stay relief preserving the status quo pending disposition of a case that relates only to an alternative argument.

In sum, the anti-dismantling aspects of the District Court's relief have little to do with *Slaughter* and are vulnerable to becoming ineffective due solely to Appellants' actions taken while the appeal remains dormant. Under these circumstances, it is not equitable to maintain the stay pending appeal as to this relief while the Supreme Court hears and decides *Slaughter*.[3]

II.     **Party and *Amici* Briefing Shows That Appellants Are Not Entitled to a Continued Stay of the Anti-Dismantling Relief.**

The Supreme Court's grant of certiorari on the question whether to overrule *Humphrey's Executor* marks the likely culmination of a long-running debate over whether the President must have at-will removal authority over the leaders of agencies that that wield executive regulatory and enforcement power. But that debate, however it is resolved, has limited if any application to USIP. Comparison to *Slaughter* points up three critical differences between USIP and regulatory agencies like the FTC. The briefing to date on the issues presented by this appeal establishes that the likelihood of success on the merits, irreparable harm, and public interest factors weigh against maintaining the current stay on anti-dismantling relief pending appeal. *See Nken*, 556 U.S. at 434.

---

[3] This is especially so given that this Court has not held in abeyance certain other appeals that may be affected by one or more of the questions presented in *Slaughter*. *Grundmann v. Trump et al.*, No. 25-5165 (D.C. Cir.) (Federal Labor Relations Authority); *Perlmutter v. Blanche, et al.*, No. 25-5285 (D.C. Cir.) (Register of Copyrights).

***First***, it is undisputed that USIP does not exercise any regulatory or enforcement power. Nor do Appellants name any specific Article II foreign affairs power in which USIP participates—the international interactions Appellants discuss involve USIP acting as an independent think tank, not representing the United States or its interests. *Compare* App. to Stay at 15, *Trump v. Slaughter*, No. 25A264 (U.S. Sep. 4, 2025) (Solicitor General arguing that the FTC engages in the executive power of negotiating and concluding international agreements on behalf of the United States), *with* Br. for Appellants at 21-32; *see also* JA364 (District Court finding that USIP does not exercise any executive foreign affairs functions, such as conducting diplomacy and negotiations on behalf of the United States); Br. for Appellees at 8-11; 20-26. Indeed, USIP "makes no policy" and "does not act on behalf of the United States in any way." Br. of *Amici Curiae* Former Senior Foreign Policy and Military Officials in Supp. of Appellees at 21-24; JA361-73.

On this record, Appellants have not made and cannot make the required "strong showing" that they are likely to succeed in contending that USIP exercises any foreign policy power belonging to the President. *Nken*, 556 U.S. at 434. Nor can they establish damage to the President's ability "to fully exercise his executive powers," their asserted basis for irreparable harm and harm to the public absent a stay. Stay Order at *2. That is particularly so here, where Appellees do not ask for a

modification of the stay as to the relief that Appellants actually contest: the "reinstatement" of removed presidential appointees. Br. for Appellants at 50.

*Second*, unlike the regulatory agencies at issue in *Slaughter* and other recent cases, USIP plays an important role in supporting the constitutionally authorized activities of a coordinate branch: Congress. A bipartisan group of former members of Congress explain in an *amicus* brief that Congress "built and has repeatedly used [USIP] to gather independent analysis and recommendations necessary to carry out Congress's own foreign-affairs responsibilities." Br. for *Amici Curiae* Bipartisan Current and Former Members of Congress in Supp. of Appellees at 7-11; Br. of Appellees at 9; *cf. Perlmutter*, 2025 WL 2627965, at *1-2, 7, 9 (Pan, J., concurring) (Register of Copyright's role as an "advisor to Congress" in support of its constitutional role to legislate regarding copyrights supported injunction against attempt to remove Register and distinguished case from those involving regulatory "agencies that are housed within the Executive Branch" (citation omitted)). Appellants' brief does not engage at all with USIP's role in supporting Congress's legislative work, a role that further diminishes the likelihood of success on the merits of Appellants' theory that USIP is an agent of the Executive that carries out U.S. foreign policy. *Cf. Perlmutter*, 2025 WL 2627965, at *9.

The public interest cannot support a continued stay that would risk permitting Appellants to cripple USIP's ability ever to assist Congress again. *Cf. id.*

("profound" public interest favored permitting Register of Copyrights to continue to work lest Congress be "depriv[ed] . . . of her valuable" advisory services). By providing that USIP does not have the power to "cease its corporate activities" or dissolve itself, Congress made plain its desire for USIP to continue to function absent an act of Congress to the contrary. District of Columbia Nonprofit Corporation Act, Pub. L. No. 87-569, § 5(o), 76 Stat. 265, 268 (1962); 22 U.S.C. § 4604(a). The President's Executive Order seeking to dismantle USIP and the actions taken by Appellants since gaining control of the organization fly in the face of that legislative command. Indeed, Congress appropriated USIP $55 million to continue to operate in its service for fiscal year 2025. Pub. L. No. 118-47, Div. F, Title I, 138 Stat. 460, 736 (2024); Pub. L. No. 119-4, Div. A, §§ 1101, 1105 , 139 Stat. 9, 10-12 (2025).[4] As far as Congress and the public who elected it are concerned, USIP's advisory services should be in full swing; at the very least the status quo should be preserved so that USIP's services can be restored should Appellees prevail on appeal.

---

[4] Congress later rescinded only $15 million thereof. Pub. L. No. 119-28, §2(b)(19) 139. Stat. 467, 469 (2025). Though the original appropriation specified that the funds would remain available through September 30, 2025, when funds appropriated to USIP for a fiscal year are unspent, they may be transferred to the Endowment of USIP, where they "remain available for obligation or expenditure for the purposes of [the Endowment] without regard to fiscal year limitations." 22 U.S.C. § 4609(b). The Endowment is "capable of receiving, holding, and investing public funds for purposes in furtherance of the Institute . . . ." *Id.* § 4603(c).

***Third***, unlike regulatory agencies, USIP is not part of the Executive Branch, so this case does not implicate the public's interest in their elected President's control over that branch. *Cf.* Stay Order at *2. USIP is an independent nonprofit corporation with the ability to raise private revenues; it is controlled by a board consisting of a supermajority of individuals from outside the government and is staffed by non-governmental employees. 22 U.S.C. §§ 4603(b), 4604(h)(3), 4604(i)-(j), 4605(b)(4), 4605(d)(2), 4606(f)(1); Br. for Appellees at 2-8. Thus, USIP's structure has a firm constitutional "foothold in history" and "tradition," *Seila Law*, 591 U.S. at 222. For over 200 years Congress has created "quasi-private" structures with board members not subject to direct presidential removal, including the creation of the Smithsonian Institution pursuant to a private trust bequest. *Wilcox*, 145 S. Ct. at 1415; Br. for Appellees at 44-46. The public has an interest in preserving USIP's ability to carry out its mission. 22 U.S.C. § 4601(b) (USIP established "to serve the people and the Government").

Supreme Court interim orders "inform how a court should exercise its equitable discretion in *like* cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025) (emphasis added). For all the reasons stated herein, this is not a like case. It would not be equitable to continue to stay relief providing for the preservation of a nonprofit institution whose research and conciliation functions serve Congress and the broader public pending *Slaughter*'s resolution of the removal debate regarding

regulatory agencies. During what will now be a lengthy appeal, the status quo should be preserved, so that USIP is not dismantled pending the outcome of this case. The prevailing party in this corporate control dispute—whichever side that may be—should be able to resume control of a viable organization. *Cf. Dist. 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.*, 412 F.2d 165, 168 (D.C. Cir. 1969) (the status quo to be preserved by equitable order pending litigation is "the last uncontested status which preceded the pending controversy" (citation omitted)). Maintaining the stay as to relief concerning Appellants' right to serve as USIP Board members, while partially vacating the stay as to relief that preserves USIP's structural and functional status quo, strikes an equitable balance that is consonant with the purpose of a stay pending appeal: "to minimize harm while an appellate court deliberates." *Cf. United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring).

## CONCLUSION

For the foregoing reasons, Appellees respectfully request that the Court vacate the stay pending appeal insofar as it applies to the anti-dismantling components of the District Court's order listed in footnote 1, *supra*.

October 15, 2025                                   Respectfully submitted,

                                                       */s/ Andrew N. Goldfarb*
Andrew N. Goldfarb
J. Benjamin Jernigan
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
agoldfarb@zuckerman.com
bjernigan@zuckerman.com

William J. Murphy
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Telephone: (410) 332-0444
wmurphy@zuckerman.com

*Counsel for Plaintiffs-Appellees*

# CERTIFICATE OF COMPLIANCE

     I certify that this brief complies with the applicable type-volume limitation set forth in Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,085 words.

     I further certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word Office in a proportionally spaced typeface (Times New Roman, 14 point).

                                             /s/ *Andrew N. Goldfarb*
                                                Andrew N. Goldfarb