**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 25-5185**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

UNITED STATES INSTITUTE OF PEACE, et. al.,

Plaintiffs-Appellees,

v.

KENNETH JACKSON, in his official capacity as Assistant to the
Administrator for Management and Resources for USAID, et al.,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**RESPONSE TO APPELLEES' MOTION FOR PARTIAL VACATUR
OF STAY PENDING APPEAL**

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney
    General*

MARK R. FREEMAN
SHARON SWINGLE
McKAYE L. NEUMEISTER
COURTNEY E. ALBINI
  *Attorneys, Appellate Staff
  Civil Division, Room 7511
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 598-7329*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................1

STATEMENT ........................................................................................... 3

ARGUMENT ............................................................................................ 7

I.    Plaintiffs Fail To Make The Strong Showing Required To Justify
      Vacatur Or An Injunction On Appeal. ................................................ 8

II.   Plaintiffs Misapprehend The Potential Impact Of *Trump v.
      Slaughter* On This Appeal. ..............................................................17

CONCLUSION .......................................................................................20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** <u>**Page(s)**</u>

*Agostini v. Felton,*
  521 U.S. 203 (1997) .................................................................... 15

*Archdiocese of Washington v. Washington Metro. Area Transit Auth.,*
  877 F.3d 1066 (D.C. Cir. 2017) ................................................... 8

*Frew ex rel. Frew v. Hawkins,*
  540 U.S. 431 (2004) .................................................................... 14

*Horne v. Flores,*
  557 U.S. 433 (2009) ............................................................... 8, 14

*Humphrey's Executor v. United States,*
  295 U.S. 602 (1935)................................................................ 5, 17

*John Doe Co. v. CFPB,*
  849 F.3d 1129 (D.C. Cir. 2017) ................................................. 11

*LaShawn A. v. Barry,*
  87 F.3d 1389 (D.C. Cir. 1996) ................................................... 12

*Leidos, Inc. v. Hellenic Republic,*
  881 F.3d 213 (D.C. Cir. 2018)............................................... 12, 13

*Nken v. Holder*, 556 U.S. 418 (2009) ......................................... 12

*Petties v. District of Columbia,*
  227 F.3d 469 (D.C. Cir. 2000) ................................................... 11

*Rufo v. Inmates of Suffolk Cnty. Jail,*
  502 U.S. 367 (1992) .................................................................... 14

*Save Jobs USA v. Dep't of Homeland Sec.,*
  942 F.3d 504 (D.C. Cir. 2019) ................................................... 11

*Seila Law LLC v. CFPB,*
  591 U.S. 197 (2020) ................................................................. 1, 5

*Taylor v. FDIC,*
    132 F.3d 753 (D.C. Cir. 1997) .................................................................. 11

*Trump v. Wilcox,*
    145 S. Ct. 1415 (2025) ............................................................................ 15

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ................................................................................... 11

**Statutes and Rules:**

United States Institute of Peace Act:
       22 U.S.C. § 4601(b) ............................................................................. 3
       22 U.S.C. § 4603(b) ............................................................................. 3
       22 U.S.C. § 4605(a) ............................................................................. 4
       22 U.S.C. § 4605(b) ............................................................................. 4
       22 U.S.C. § 4605(f) ............................................................................. 4

Fed. R. Civ. P. 60(b)(5) ................................................................................. 14

**Court Orders:**

*U.S. Inst. of Peace v. Jackson*, No. 25-5185,
    2025 WL 1840572 (D.C. Cir. June 27, 2025) ....................... 1, 3, 4, 5, 12, 15

## GLOSSARY

FTC                          Federal Trade Commission

JA                           Joint Appendix

USIP                         United States Institute of Peace

## INTRODUCTION

A panel of this Court has already decided the appropriate status quo while this appeal remains pending: the President can continue to control the operations of the United States Institute of Peace (USIP), an executive agency exercising "substantial executive power[s]," through principal executive officers of his choosing—despite the district court's injunction to the contrary. *See U.S. Inst. of Peace v. Jackson*, No. 25-5185, 2025 WL 1840572, at *1-2 (D.C. Cir. June 27, 2025) (per curiam).  As the panel explained, "[t]he President's inability to control the Institute's exercise of … 'significant executive power[s]' undermines his ability to set and pursue his foreign policy objectives," and "[f]or that reason, the Government is likely to succeed on its claim that the Board's removal restrictions violate Article II."  *Id.* at *2 (quoting *Seila Law LLC v. CFPB*, 591 U.S. 197, 204 (2020)).

Now, four months after that stay was granted—and three months after this Court denied plaintiffs' petition for en banc reconsideration of the stay—plaintiffs again ask the Court to undo that status quo.  Specifically, plaintiffs seek partial vacatur of the stay order to permit aspects of the district court's judgment to take effect pertaining to the management of USIP.  Mot.1 n.1.  But plaintiffs' motion is not based on any alleged error in the stay panel's reasoning or any new facts on the ground that call into question that

decision. Instead, they invoke the Court's issuance of an order holding the case in abeyance pending the Supreme Court's disposition of *Trump v. Slaughter*, No. 25-332 (S. Ct.), as constituting "'changed circumstances'" that alter "the equitable balance" and warrant partially vacating the stay. Mot.6.

Plaintiffs have not justified the extraordinary relief that they request. Although plaintiffs frame their request as a motion to partially vacate the stay, in practical effect, they are seeking a mandatory injunction pending appeal—extraordinary relief for which they fail to demonstrate any entitlement. The motions panel's stay order is law of the case, and plaintiffs have not shown that the panel's conclusions were clearly erroneous or would work a manifest injustice. Nor have they demonstrated a significant change in circumstances that alters the equities as assessed by the motions panel. To the contrary, the concerns that plaintiffs identify regarding the effects of defendants' management of USIP were fully aired in their opposition to the stay and their en banc petition. Members of this Court correctly granted the stay, denied en banc reconsideration, and ordered abeyance notwithstanding the plaintiffs' arguments in this respect.

At bottom, plaintiffs' motion is premised on their objection to this Court's decision to hold the case in abeyance pending *Slaughter*. But the fact that plaintiffs have chosen not to seek reconsideration of the abeyance order

provides no reason to permit a second bite at the apple in challenging the stay. In any event, plaintiffs misapprehend the potential effect of *Slaughter* on this case. The "partial" relief they seek is inextricably intertwined with the core merits issues and reinstatement relief in this case, the resolution of which will likely be substantially affected by—if not outright controlled by—the Supreme Court's ruling in *Slaughter*.

Because plaintiffs do not justify revisiting the stay decision or granting an injunction pending appeal, their motion should be denied.

## STATEMENT

**1.** Congress created USIP "to serve the people and the Government through ... education and training, basic and applied research opportunities, and peace information services on the means to promote international peace and the resolution of conflicts among the nations and peoples of the world without recourse to violence." 22 U.S.C. § 4601(b). In furtherance of that objective, USIP "engages in extensive activities within the domain of the President's foreign affairs powers," including "peacebuilding with conflict parties, armed groups, key civil society actors, and other stakeholders abroad." *Jackson*, 2025 WL 1840572, at *2 (quotation marks omitted).

Although its organic statute provides that, for statutory purposes, USIP shall be organized as "an independent nonprofit corporation," 22 U.S.C.

§ 4603(b), for constitutional purposes USIP is a governmental entity subject to executive control. *See Jackson*, 2025 WL 1840572, at *1-2 & n.1. USIP operates under the leadership of a Board of Directors, 22 U.S.C. § 4605(a), composed of three voting ex officio members and 12 members "appointed by the President, by and with the advice and consent of the Senate." *Id.* § 4605(b). The statute provides that the President can remove Board members only in compliance with certain restrictions. *See id.* § 4605(f).

**2.** On March 14, 2025, the White House Presidential Personnel Office notified USIP's appointed Board members they had been terminated. JA313, 785-89. The remaining ex officio Board members thereafter removed the then-acting president of USIP and designated Kenneth Jackson, and later Nate Cavanaugh, as acting presidents. *See* JA461, 480. The new leadership began undertaking actions to manage USIP and its property.

Six of USIP's terminated Board members and its former president brought suit, challenging their removals and the subsequent actions taken by newly designated leadership. JA19-46. On May 19, 2025, the district court entered summary judgment for plaintiffs, holding that the President's removal of Board members was ultra vires and the removals and subsequent actions of the agency were without legal effect. JA386-99. The court concluded that USIP is not part of the Executive Branch and thus not subject

4

to the President's Article II removal authority. JA348-73. The court also reasoned that, even assuming USIP is subject to Article II, its statutory-removal restrictions are constitutional under *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). JA373-86. The court ordered that plaintiffs' removals as Board members and president were invalid and null and void, and invalidated defendants' actions taken after the removals. JA295-96.

**3.** On June 27, 2025, a unanimous panel of this Court granted a stay pending appeal of the district court's order. The panel reasoned that, "[a]s a general rule, the President may remove executive officers at will," subject to a "narrow exception for 'multimember expert agencies that do not wield substantial executive power' and that exercise 'quasi-judicial' or 'quasi-legislative' power." *Jackson*, 2025 WL 1840572, at *1 (quoting *Seila Law*, 591 U.S. at 217-18). The panel concluded the government "is likely to succeed on its claim that the [USIP] Board's removal protections are unconstitutional" "[b]ecause the Institute exercises substantial executive power[s]" in the "domain of the President's foreign affairs powers." *Id.* at *1-2. The panel further concluded that "[t]he President faces irreparable harm from not being able to fully exercise his executive powers," which "outweighs any harm the removed board members may face." *Id.* at *2.

Finally, the panel determined that "a stay is in the public interest because the people elected the President, not the removed board members, to wield the executive power." *Id.*

Plaintiffs petitioned for rehearing en banc and sought an emergency administrative stay of the June 27 stay order. This Court denied the requests. Order 1 (July 24, 2025). The parties proceeded to expedited merits briefing and requested oral argument "at the earliest available date." Joint Motion for Briefing Schedule 2 (July 25, 2025). The Court scheduled oral argument for November 21, 2025. Order 1 (Sept. 19, 2025). On September 29, however, the Court sua sponte removed the case from the argument calendar and held it in abeyance pending the Supreme Court's disposition of *Trump v. Slaughter*, No. 25-332 (S. Ct.) (cert. granted Sept. 22, 2025). Order 1 (Sept. 29, 2025).

On October 15, plaintiffs moved for partial vacatur of the June 27 stay order. Their motion did not request vacatur of the stay order as it pertains to staying the reinstatement of plaintiffs to the Board, but it did request vacatur of the order to allow the so-called "'anti-dismantling' components of the District Court's order" to go into effect. Mot.1 n.1. Those aspects of the order stayed appointment of acting presidents and nullified actions taken by

defendants in managing USIP immediately following the removal of plaintiffs. *See* JA295-97.[1]

## ARGUMENT

Five months ago, the district court ordered the reinstatement of principal officers of the United States whom the President lawfully removed from office and enjoined actions taken to reform USIP. A panel of this Court has already stayed that order, establishing the "status quo" while the parties adjudicate the lawfulness of the President's removal of plaintiffs from USIP's Board. Since then, the full Court has denied plaintiffs' petition to reconsider the stay order en banc. Order 1 (July 24, 2025). And the merits panel has issued a sua sponte order holding this case in abeyance pending the resolution of *Slaughter*—an order issued with full knowledge of the stay pending appeal, plaintiffs' arguments opposing the stay, and the possible effects on the timeline for the resolution of this appeal.

Plaintiffs now purport to seek a partial vacatur of the June 27 stay order, whereby the principal executive officers whom the President has tasked with running USIP would be almost entirely disabled from operating

---

[1] Plaintiffs do not seek to disable the defendants from undertaking "basic caretaking tasks to preserve USIP's assets and functions, such as maintaining the physical plant of its building and the availability of its website." Mot.2 n.1.

the agency.  Practically speaking, the order plaintiffs are seeking is the equivalent of an affirmative injunction pending appeal.  Under any applicable standard, plaintiffs have not demonstrated entitlement to that extraordinary relief.  The Court should deny the motion and leave the stay in effect pending the resolution of this appeal.

## I.    Plaintiffs Fail To Make The Strong Showing Required To Justify Vacatur Or An Injunction On Appeal.

As the moving party, plaintiffs bear the burden of establishing their entitlement to vacatur of the motions panel's stay or an injunction pending appeal.  *See Archdiocese of Washington v. Washington Metro. Area Transit Auth.*, 877 F.3d 1066, 1067-68 (D.C. Cir. 2017) (per curiam) (injunction pending appeal); *Horne v. Flores*, 557 U.S. 433, 447 (2009) (relief based on changed circumstances under Rule 60(b)(5)).  That is an exceptionally difficult showing and plaintiffs have failed to satisfy it.

**A.**    Although plaintiffs frame their motion as a request for partial vacatur of the stay, in substance they seek an injunction pending appeal.

**1.**    Plaintiffs contend that the district court issued two distinct "set[s] of relief": (1) reinstatement "allow[ing] the Appellee Board members to continue serving" on the Board, and (2) so-called "anti-dismantling relief" that "barred Appellants' actions that could dismantle USIP."  Mot.1.  Their motion seeks to "freeze conduct taken by a residual [B]oard and acting

8

presidents" of USIP, Mot.4, to prevent the "dismantling of USIP during the pendency of the appeal," Mot.3. Partially vacating the stay, however, would not provide plaintiffs' desired interlocutory relief.

The "anti-dismantling" components of the district court's judgment were not designed as separate forward-looking relief that could govern the future conduct of defendants in operating USIP. Rather, the judgment reinstated plaintiffs to USIP's Board, from which they could continue to direct agency operations. Moreover, plaintiffs' claims focused on the propriety of the removals and the leadership and control of the agency. There were no freestanding claims alleging that defendants' management of USIP violated the USIP Act, and the court did not grant relief on that basis. *See* JA34-44 (Am. Compl.); JA386 n.37 (declining to address argument that defendants' activities managing USIP violated statute).

As the text of the judgment makes clear, the components of relief at issue are almost entirely backward-looking. *See* JA295-96 (declaring that past actions were "invalid and therefore null, void, and without legal effect"). The objective of those provisions was to invalidate the specific actions taken by defendants following the removal of the Board members, on the theory that defendants were not legally in control of USIP at that time. *See* Mot.1 n.1 (invalidating: appointments of Jackson and Cavanaugh as presidents of

USIP; actions taken by Jackson and Cavanaugh while acting as USIP presidents; actions transferring USIP's property and assets; appointment of president of USIP endowment (citing JA294-97)). Vacating the stay as to those provisions would not result in prospective relief governing defendants' ongoing management of USIP during the pendency of this appeal.

Only one component of the relief at issue is prospective: a provision preventing the three ex officio Board members from "act[ing] … without additional consent constituting a majority of members of the duly constituted USIP Board of Directors, to transfer any of USIP's assets." Mot.2 n.1 (quoting JA297). But even this injunction does not constitute freestanding "anti-dismantling" relief. Rather, it was designed to effectuate reinstatement by preventing the defendants from acting as if plaintiffs were not validly in office and the three ex officio members constituted the entire Board. *See* JA396 (explaining that court was entering "injunctive relief … against subordinate" executive officials "forbidding interference with [defendants'] resumption of duties"). Moreover, this provision would not necessarily "freeze [defendants'] conduct," Mot.4; by its terms, the President would only need to appoint a single new Board member for defendants to manage USIP however they see fit during the pendency of this appeal.

**2.**     To obtain the sort of general, prospective "anti-dismantling relief" that plaintiffs seek would thus require an injunction pending appeal. Plaintiffs have not expressly sought such relief, nor can they demonstrate entitlement to it.

An injunction pending appeal is an "exceptional remedy," and requires that the movant demonstrate the four traditional preliminary-injunction factors: "'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *John Doe Co. v. CFPB*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (per curiam) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Plaintiffs cannot satisfy this showing because the motions panel has already determined in a stay posture that those factors favor the government.

This Court treats decisions of motions panels as law of the case, binding on subsequent merits panels in a given appeal "for all matters decided expressly or by necessary implication." *Taylor v. FDIC*, 132 F.3d 753, 761 (D.C. Cir. 1997); *see Save Jobs USA v. Dep't of Homeland Sec.*, 942 F.3d 504, 512 (D.C. Cir. 2019) ("Under this court's practice, a decision of the motions panel is the law of the case; a later panel considering the merits is bound by that law." (quoting *Petties v. District of Columbia*, 227 F.3d 469,

472 (D.C. Cir. 2000)).  Only where there are "extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice," or a "change in controlling legal authority," will this Court "reconsider issues already decided." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc) (quotation marks omitted).

The motions panel in this case already expressly determined that the government "'is likely to succeed on the merits'" and "'will be irreparably injured absent a stay,'" and that a stay "is in the 'public interest'" and would "not 'substantially injure' other interested parties." *Jackson*, 2025 WL 1840572, at *1 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).  In their motion to vacate, plaintiffs largely rehash various arguments that the motions panel considered and rejected. *See* Mot.11-15.  They have not alleged any change in relevant legal authority or shown that the stay panel's conclusions were clearly erroneous.

Nor have plaintiffs demonstrated that holding proceedings in abeyance while the Supreme Court decides a similar case would amount to manifest injustice.  Plaintiffs have no "settled expectations" on which they could "reasonably place reliance" that this appeal would be resolved on a particular timeframe. *See Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) (quotation marks omitted) (discussing manifest injustice).  Although

the parties agreed to a briefing schedule and requested expedited argument, nothing bound the Court to hold argument by a date certain or to issue a decision on a particular timeline.

Plaintiffs have also failed to show "clear and certain prejudice" from any potential delay in the resolution of this appeal that "is fundamentally unfair in light of governing law." *Leidos*, 881 F.3d at 217 (quotation marks omitted). They express concern that defendants' actions managing USIP during the pendency of this appeal would have lasting effects on the agency and hinder its operations if plaintiffs prevail on appeal and resume control. *See* Mot.7-8. But plaintiffs provide no reason to think that result would only occur during any *additional* length of the appeal occasioned by the abeyance. To the contrary, in seeking an emergency administrative stay pending en banc reconsideration, plaintiffs predicted that such harms would come to pass absent any abeyance. *See* Pet.18 ("another takeover by DOGE risks effectively destroying USIP"). Ultimately, it is eminently fair to both parties—and respectful of party and judicial resources—to await the disposition of a Supreme Court case that could control the outcome in this appeal.

**B.**    Plaintiffs fail to acknowledge the law-of-the-case doctrine or otherwise clearly specify what standard governs their motion. At one point,

they invoke case law regarding the standard for modifying relief in light of changed circumstances under Federal Rule of Civil Procedure 60(b)(5). *See* Mot.6 (citing *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004)). Even assuming an analogous standard applies to motions asking a merits panel to vacate the orders of an appellate motions panel—and that the Court should treat this as a motion to vacate rather than a request for an injunction—plaintiffs have not met their burden of demonstrating that the stay order here "is no longer equitable." Fed. R. Civ. P. 60(b)(5).

Under Rule 60(b)(5), parties can seek vacatur of an order "if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Horne*, 557 U.S. at 447 (quotation marks omitted); *see Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992) (requiring "a significant change in circumstances"). Plaintiffs cite no authority for the proposition that a court's case-management decisions constitute a relevant change in factual circumstances for these purposes. *See Horne*, 557 U.S. at 448 (listing "changes in the nature of the underlying problem, … and new policy insights" as potential relevant "changed circumstances").

Moreover, plaintiffs cannot demonstrate that any actual change has occurred of which the motions panel failed to take account. Plaintiffs fully

14

presented their concerns to the motions panel regarding the defendants'
management of USIP during the pendency of the appeal.  Stay Opp.22 ("The
entry of a stay would result in the continuation of Defendants' unlawful
efforts to dismantle the entity.").  The panel nonetheless concluded that "a
stay will not substantially injure other interested parties," and the harm to
the government "outweighs any harm the removed board members may
face."  *Jackson*, 2025 WL 1840572, at *1-2 (quotation marks omitted).  At
the time of that decision, it was apparent that the stay could easily remain in
effect for over a year until the Court resolved the merits of this appeal, and
that this timeline could be affected by the consideration of related cases by
the Supreme Court or this Court.  *See*, *e.g.*, *id.* at *2 (citing *Trump v. Wilcox*,
145 S. Ct. 1415, 1415 (2025)).  Where the possibility of an event is "known at
the time" the order at issue is entered, it "does not constitute a change in
factual conditions warranting relief under Rule 60(b)(5)" if that event comes
to pass.  *Agostini v. Felton*, 521 U.S. 203, 216 (1997).

Additionally, plaintiffs are incorrect in asserting that the "equitable
balance has shifted" such that a continued stay will "'substantially injure'"
them.  Mot.6-7 (quotation marks omitted).  As noted, the motions panel was
aware of plaintiffs' same concerns in granting the stay, and the en banc Court
was aware of them in denying reconsideration.  Since March 14, 2025, USIP

15

has been under defendants' control for over six months. (The district court's judgment was only in effect for about a month during that time.). Plaintiffs offer no plausible explanation for why, if the alleged actions they fear have not occurred already and would not occur before an expedited resolution of this appeal, they would nonetheless be realized during the possible additional delay of a few months caused by abeyance.

Finally, as the government has repeatedly explained (*e.g.*, Opening Br.61; Stay Mot.24), plaintiffs cannot properly assert harms to USIP as an institution in seeking to demonstrate irreparable injury to themselves. USIP is not a proper plaintiff here; only six former Board members joined this action as plaintiffs, meaning that a majority—four former appointed Board members and three ex officio Board members named as defendants—have not authorized the filing of this suit. Plaintiffs' motion does not allege any changed harms faced by them as individuals, apart from their former official positions.

**C.** To the extent plaintiffs attempt to shift the burden back onto the government to re-justify the already-granted stay, *see* Mot.11-12, that is clearly incorrect. It is inconsistent with treating the decisions of motions panels as law of the case to require defendants to re-establish their right to a stay each time a movant purports to identify a change in relevant

16

circumstances.  Doing so would allow parties to circumvent the Court's usual process—which involves proceeding to a decision on the merits after resolving any initial motions for interlocutory relief.

## II. Plaintiffs Misapprehend The Potential Impact Of *Trump v. Slaughter* On This Appeal.

In arguing that the equities support partial vacatur of the Court's stay order, plaintiffs also contend that the Supreme Court's decision in *Trump v. Slaughter* will not resolve the merits issue in this case or foreclose the partial relief that they are seeking to put into effect.  *See* Mot.6-11.  Both assertions are incorrect.

**A.**  Plaintiffs posit that "the constitutionality of the USIP Act's for-cause removal provisions" "does not turn on the resolution of the first question presented in *Slaughter*," regarding the constitutionality of the FTC's statutory-removal restrictions and whether *Humphrey's Executor*, 295 U.S. 602, should be overruled.  Mot.9; *see* Mot.10 ("This Court will have to decide if USIP's ... functions constitute the exercise of executive power no matter how *Slaughter* is decided.").

It is impossible to accurately assess the impact that *Slaughter* will have on this case, however, without knowing the outcome or the Supreme Court's reasoning in reaching it.  If the Supreme Court upholds for-cause removal restrictions for multi-member agencies, depending on the reasoning, this

Court might be able to assume arguendo that the President's Article II removal authority applies to USIP and hold that, regardless, USIP's statutory-removal restrictions are constitutional.  In that sense, *Slaughter* could potentially control the outcome of this case and obviate the need to definitively decide whether USIP is an Executive Branch agency.  And regardless of the bottom-line in *Slaughter*, that decision will certainly be relevant in assessing the constitutionality of USIP's statutory-removal restrictions if the Court holds that USIP is an Executive Branch agency exercising executive power.

**B.**     Plaintiffs also assert that the remedial question presented in *Slaughter*—the same question presented in this case regarding whether courts have the authority to prevent the removal of officials from public office—has "nothing to do with" the components of the district court's judgment that they seek to put into effect.  Mot.8-9.  Again, plaintiffs misconstrue the nature of that partial relief and its relation to reinstatement. As discussed above, the district court's judgment does not contain a distinct set of prospective "anti-dismantling" relief.  Each provision of relief is designed to fully effectuate reinstatement.

Plaintiffs assert that this Court could "affirm the District Court's anti-dismantling relief without regard to … *Slaughter* because this relief does

not 'prevent' the 'removal' of USIP Board members from office." Mot.3. This statement ignores the district court's clear explanation that this relief necessarily flowed from reinstatement of the Board members. The court determined that "the President's removal of all appointed Board members was unlawful [and] *ultra vires*," and that "all of the actions that flowed from that" removal were therefore unlawful because they resulted from actions of "[t]he three *ex officio* members" alone, even though "the legitimately constituted Board" still legally "consisted of ten other members." JA386. If, as a result of *Slaughter*, the district court could not prevent the removal of the USIP Board members, then after the removals the Board was properly understood to comprise only the three ex officio members, and subsequent actions flowing from the decisions of those ex officio members were lawful. Accordingly, there would be no basis to invalidate those actions and the judgment would need to be reversed in its entirety.

**C.**    At bottom, plaintiffs' objections have little to do with the scope of the stay pending appeal. In essence they challenge this Court's decision to hold the case in abeyance pending the disposition of *Slaughter*. Plaintiffs were free to ask the Court to reconsider its sua sponte abeyance order, but they have chosen not to do so. That litigation decision cannot mean that plaintiffs are instead entitled to disruptive interim relief—restricting the

19

government's actions during the pendency of this appeal in a manner different from anything the district court possibly intended.

## CONCLUSION

The Court should deny plaintiffs' motion.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE
McKAYE L. NEUMEISTER

  *s/ Courtney E. Albini*
COURTNEY E. ALBINI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7511*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 598-7329*
  *Courtney.Albini2@usdoj.gov*

October 2025

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 26(a)(2)(a) because it contains 4,167 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Georgia 14-point font, a proportionally spaced typeface.

*s/ Courtney E. Albini*
Courtney E. Albini

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

*/s/ Courtney E. Albini*
Courtney E. Albini