ORAL ARGUMENT HELD IN ABEYANCE

No. 25-5185

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

UNITED STATES INSTITUTE OF PEACE, *et al.*,

*Plaintiffs-Appellees*,

v.

KENNETH JACKSON, *et al.*,

*Defendants-Appellants*.

---

On Appeal from the United States District Court for the District of Columbia
No. 25-cv-804-BAH, The Honorable Beryl A. Howell, District Judge

---

# REPLY OF PLAINTIFFS-APPELLEES IN SUPPORT OF MOTION FOR PARTIAL VACATUR OF STAY PENDING APPEAL

---

ANDREW N. GOLDFARB
J. BENJAMIN JERNIGAN
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400
Washington, DC 20037
Telephone: (202) 778-1800

WILLIAM J. MURPHY
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Telephone: (410) 332-0444

*Counsel for Plaintiffs-Appellees*

October 30, 2025

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

ARGUMENT .........................................................................................................2

    I.   CHANGED CIRCUMSTANCES WARRANT FRESH ANALYSIS OF WHETHER A STAY PENDING APPEAL IS EQUITABLE. ........................................................2

    II.  THE *SLAUGHTER* PROCEEDINGS ONLY UNDERSCORE THAT ON THE NOW FULSOME RECORD HERE, THE SUCCESS ON THE MERITS FACTOR DOES NOT SUPPORT STAYING THE ANTI-DISMANTLING RELIEF DURING THE ABEYANCE PERIOD. .................................................................................4

    III. THE REMAINING EQUITABLE FACTORS DO NOT SUPPORT A CONTINUED STAY OF THE ANTI-DISMANTLING RELIEF. ........................................................8

CONCLUSION ...................................................................................................11

# INTRODUCTION

Appellants' Response to Appellees' Motion for Partial Vacatur of Stay Pending Appeal (the "Response") ducks the issue before the Court: whether, now that the appeal has been postponed to await the Supreme Court's disposition of *Trump v. Slaughter*, No. 25-332, it is equitable to stay relief that would prevent the government from irreparably injuring Appellees by dismantling USIP. The government's arguments about the standard the Court should apply are flatly wrong. Seeking a partial vacatur of the stay of relief that Appellees had *won* in the district court is not a request for this Court to issue an injunction; nor should this request be treated as one to vacate a final district court judgment under Fed. R. Civ. P. 60(b)(5).

Moreover, the stay panel's ruling is not "law of the case," as Appellants contend. The Court now has before it merits briefs from both sides and can weigh Appellants' likelihood of success on the merits of their appeal without the inherent limits of expedited stay briefing, just as it would have done if the case had come before the Court for oral argument as scheduled under the original expedited briefing order. The briefing shows that USIP does not exercise executive power (much less executive power comparable to the FTC's). Thus, affirmance of the district court's ruling that the removals of USIP's board members were unlawful will not likely be affected by the outcome of the first question presented in *Slaughter*. And Appellees are asking the Court to vacate the stay only with respect to relief other than what

1

Appellants call "reinstatement" of the Board members. The anti-dismantling relief at issue in this Motion falls outside the supposed limitation on judicial power that the Supreme Court will consider in the second question presented in *Slaughter*.

Nor do Appellants show that the balance of harms favors a continued stay for many months of the anti-dismantling relief. The pending Motion identifies irreparable harm to Appellees if the relief remains stayed, while the Response identifies no harm to Appellants if it does not. The anti-dismantling relief will serve to preserve USIP's assets for the benefit of whichever party prevails in this appeal.

## ARGUMENT

### I. Changed circumstances warrant fresh analysis of whether a stay pending appeal is equitable.

Appellants' Response proceeds as if a stay pending appeal is a norm to which an appellant is forever and always entitled. But a stay pending appeal, "an intrusion into the ordinary processes of administration and judicial review," is the exception, not the rule. *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citation modified). Such an intrusion is acceptable only when the equities justify it; when circumstances change, a fresh equitable analysis becomes necessary. Thus, "whether to vacate" the stay turns on "whether the stay applicant" (not the party seeking vacatur) has shown that the equities support continuing the stay. *See In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).

The standards Appellants invoke as an obstacle to modifying the stay do not apply. Appellees plainly do not seek a mandatory injunction pending appeal—that relief is sought when a party loses on a request for an injunction in district court, appeals that ruling, and asks the Court of Appeals to issue the injunction while the appeal proceeds. Appellants lost below; the district court *did* issue injunctive and declaratory relief. The question posed by this Motion is whether the stay should be partially lifted to preserve the status quo during an unexpectedly long period before resolution of the appeal. Appellants' extended discussion of the standard for an injunction pending appeal is entirely beside the point. *See* Response at 8-13.

Similarly, Appellees' Motion (at 6) cited *Frew v. Hawkins*, 540 U.S. 431 (2004), for a basic rule of equity which Appellants do not and cannot contest—not to suggest that the Court borrow the inapposite Fed. R. Civ. P. 60(b) standard for altering a final judgment and apply it to the question whether to modify the provisional decision to grant a stay.

Nor is a stay ruling considered to be law of the case. Rather, it is a form of equitable relief taken against the background of a predictive assessment of the merits made on limited briefing and of the balance of harms to the parties under particular circumstances. *See East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 660-62 (9th Cir. 2021) (en banc). "The opinion of the motions panel will not constrain what the merits panel may decide either as law of the case or through precedent." *Ozturk*

3

*v. Hyde*, No. 25-1019, 2025 WL 2679904 (2d Cir. Sept. 19, 2025) (Menashi, J., concurring in denial of rehearing en banc).

**II.    The *Slaughter* proceedings only underscore that on the now fulsome record here, the success on the merits factor does not support staying the anti-dismantling relief during the abeyance period.**

Partial vacatur of a stay is warranted when the equities no longer support the extraordinary intrusion the stay represents. *See World Trade Ctr.*, 503 F.3d at 170. The Court now has available to it the principal briefs from both parties *and* the government's principal brief in *Slaughter*. *See id.* ("Having heard the interlocutory appeal after full briefing, we are in a position to evaluate the Appellants' probability of success in a more focused way than could the motions panel."). The parties' briefing in this case shows that USIP does not exercise any executive power. It is not "impossible" (Response at 17) to know the impact *Slaughter* will have on the question whether Congress may restrict removal of Board members of an entity that does not exercise executive power. It will have none, and Appellants do not offer any theory to the contrary.

*Slaughter*, like the stay rulings in *Trump v. Wilcox*, 145 S. Ct. 1415 (2025), and *Trump v. Boyle*, 145 S. Ct. 2653 (2025), involves agencies with regulatory and enforcement responsibilities that USIP simply does not have. Brief for the Petitioners at 19, *Slaughter*, No. 25-332 (Oct. 10, 2025). The government's *Slaughter* brief argues that the Supreme Court wrongly characterized certain powers

4

of the 1935 FTC as "quasi-legislative" or "quasi-judicial" rather than executive. *Id.* at 23-25 (citing *Humphrey's Executor v. United States*, 295 U.S. 602, 628 (1935)). But USIP exercises *none* of those powers, however characterized. And the new powers the government says place the present-day FTC outside the scope of precedent also involve enforcement orders, rulemaking, adjudication, and investigations—powers USIP does not have. *Id.* at 25-27.

Indeed, the newfound FTC power that the government characterizes as a power to "conduct[] foreign relations," *id.* at 28, further underscores that USIP plays no role in the foreign relations of the United States. The FTC can "negotiate and conclude an international agreement in the name of the United States or the Commission." *Id.* Appellants' merits brief does not identify any similar functions for USIP, or indeed any activities in which USIP represents the United States or its interests. That is because none of USIP's peace-building activities are taken in the name of the United States or any branch of the United States government, much less constitute agreements negotiated and concluded on behalf of the government. Two *amicus* briefs filed in this case, one from former national security and diplomatic officials and the other from former members of Congress, support the showing in Appellees' brief that USIP's work does not implicate the President's Article II foreign affairs powers.

Appellants' arguments about the second question in *Slaughter* are also misdirected. Appellants seem to contend that because the district court's merits basis for the anti-dismantling relief was the same as its merits basis for the "reinstatement" relief—the legal conclusion that President Trump was not authorized to terminate the Board members without complying with the USIP Act—the district court was without power to issue *any* relief in support of that conclusion, even if the conclusion is correct. Response at 9-10, 18-19. That argument is legally incorrect, does not appear in Appellants' brief on the merits, and is not the argument the government has presented to the Supreme Court on the second question presented in *Slaughter*. Even if Appellants are right that what they characterize in their merits appeal brief (at 50) as "[t]he district court's *de jure* reinstatement of a principal officer" was "beyond the equitable authority of the court," they have not presented any reason why the district court could not issue relief *other* than reinstatement in support of its merits holding.

The government's claim in *Slaughter* is that courts may not issue injunctions that invalidate the unlawful removal of public officials. The government argues that there is a rule of equity that prevents courts from issuing such injunctions—but the authority the government cites shows that historically equitable relief was denied because such relief was *available at law*, not because courts had no remedial power to decide legal questions concerning the contested rights of officeholders. Brief for

6

the Petitioners, *supra*, at 38, 41-43; *see In re Sawyer*, 124 U.S. 200, 212 (1888) ("The jurisdiction to determine the title to a public office belongs exclusively to the courts of law, and is exercised either by *certiorari*, error, or appeal, or by *mandamus*, prohibition, *quo warranto*, or information in the nature of a writ of *quo warranto*, according to the circumstances of the case, and the mode of procedure, established by the common law or by statute."). Pre-merger remedies at law were available to discharged officeholders, as this Court has recognized. *See Kalbfus v. Siddons*, 42 App. D.C. 310, 319-21 (D.C. Cir. 1914); Appellees' Br. at 51. In fact, Mr. Wiener himself brought a *quo warranto* challenge (at law) to the authority of his successor before suing for backpay; his appeal to this Court was dismissed as moot because the statute authorizing the War Claims Commission expired before it could be resolved. *Wiener v. United States*, 357 U.S. 349, 351 n.* (1958). The government's brief in *Slaughter* offers only a half-hearted and flimsy argument about mandamus, *Slaughter* Br. at 43, which Appellees' Brief (at 49-51) showed was the established remedy.

But even if Appellants' argument and the government's *Slaughter* argument about "reinstatement" injunctions were correct, that would have no effect on the district court's anti-dismantling orders. Those orders address the secondary effects of the illegal terminations of USIP's Board members, and prevent the unlawful transfer of USIP's building, intellectual property, and bank accounts. Those orders

7

do not "reinstate" the Appellees as Board members; they simply preserve the relevant status quo for this nonprofit corporation while the Court resolves the merits of the terminations. Appellants do not point to anything that would suggest the district court lacked the equitable power to grant such a remedy; nor do they point to any reason to believe that issue will be decided in *Slaughter*. This Court should reject Appellants' breathtaking *non sequitur* (not offered in their merits brief) that if, as they contend, "*de jure* reinstatement of a principal officer is beyond the equitable authority of the court" (Appellants' Br. at 50), then the district court was also barred from granting any other remedy.

III.  **The remaining equitable factors do not support a continued stay of the anti-dismantling relief.**

The abeyance order recently entered by this Court has the side effect of allowing unforeseen additional time for Appellants to continue their demonstrated course of dissipating and failing to care for USIP's assets. Mot. at 7; *see World Trade Ctr.*, 503 F.3d at 170 ("effect of the passage of time" is relevant to reevaluation of the harm to the party opposing a stay and to the public interest). Moreover, recovering the assets Appellants have already dissipated will become more difficult as time goes on. This is real harm, not just to the USIP organization, but to the individual Appellees, whom the only court to have examined this case on a full merits record held to be rightful officers of a District of Columbia nonprofit corporation. As Board members, the Appellees have a personal interest in preserving

8

the assets of USIP as they await the prospect of returning to leadership of a viable organization should they prevail on appeal. *See Bd. of Dir., Washington City Orphan Asylum v. Bd. of Trs., Washington City Orphan Asylum*, 798 A.2d 1068, 1070, 1070-77 (D.C. 2002) ("purportedly ousted board" members of the Washington City Orphan Asylum, a nonprofit corporation Congress had chartered in 1828, had standing to challenge their ouster and a threat "to end all funding to the operating unit of the organization"; the directors asserted not only "the interest of the youth" their organization served but also "their own interest in serving in the capacity accorded them by the statute").

Appellants are wrong to argue (Response at 15) that the abeyance order is not a new circumstance because "it was apparent" to the motions panel "that the stay could easily remain in effect for over a year until the Court resolved the merits . . . ." The Court expedited the appeal and would have heard argument on November 21, at which point the merits panel could well have reached the same conclusion as the court in the *World Trade Center* case: that upon full review, a stay is no longer equitable. Even assuming the stay panel factored in a year from its June 27 order, a decision in this case by late June 2026 is no longer in the cards. Given the likelihood of a late-term decision in *Slaughter*, the abeyance order means that in June 2026 the parties in this case will at best just be responding to a new briefing schedule, with oral argument still to come.

9

On the other side of the ledger, even if the purported irreparable harm of the President "not being able to fully exercise his executive powers" applies to "reinstatement relief," Response at 5 (quoting *USIP v. Jackson*, No. 25-5185, 2025 WL 1840572, at *2 (D.C. Cir. June 27, 2025)), this harm does not apply to the anti-dismantling relief at issue in this Motion. Indeed, Appellees' requested vacatur would simply preserve USIP's last uncontested organizational status quo, including its retention of assets. Nor does vacatur of the anti-dismantling relief—which would not allow Appellees to resume their roles with USIP—implicate the harm balance that drove the stay orders in *Wilcox* and *Boyle*: "the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." *Perlmutter v. Blanche*, No. 25-5285, 2025 WL 2627965, at *10 (D.C. Cir. Sept. 10, 2025) (Walker, J., dissenting) (quoting *Wilcox*, 145 S. Ct. at 1415, and citing *Boyle*, 145 S. Ct. at 2654).

Finally, reinstatement of the district court's orders requiring USIP to preserve its assets so that they will remain available to the prevailing party once this appeal is decided—whether that is the President or Appellees—will not harm the President or any other Appellant. Congress expressly provided that USIP may not cease its activities or dissolve without further act of Congress; the President cannot suffer harm from an order blocking him from dismantling an organization he may not

10

lawfully dismantle. Mot. at 14 (citing District of Columbia Nonprofit Corporation Act, Pub. L. No. 87-569, § 5(o), 76 Stat. 265, 268 (1962); 22 U.S.C. § 4604(a)).

## CONCLUSION

Appellees respectfully request that the Court grant their Motion for Partial Vacatur of the Stay Pending Appeal.

October 30, 2025                                              Respectfully submitted,

    */s/ Andrew N. Goldfarb*
Andrew N. Goldfarb
J. Benjamin Jernigan
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
agoldfarb@zuckerman.com
bjernigan@zuckerman.com

William J. Murphy
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Telephone: (410) 332-0444
wmurphy@zuckerman.com

*Counsel for Plaintiffs-Appellees*

11

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the applicable type-volume limitation set forth in Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,570 words.

I further certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word Office in a proportionally spaced typeface (Times New Roman, 14 point).

*/s/ Andrew N. Goldfarb*
Andrew N. Goldfarb
