**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES INSTITUTE OF PEACE, *et al.*,<br><br>*Plaintiffs-Appellees*,<br><br>v.<br><br>KENNETH JACKSON, et al.,<br><br>*Defendants-Appellants*. | ) | No. 25-5185 |

**EMERGENCY MOTION OF PLAINTIFFS-APPELLEES FOR**
**PARTIAL VACATUR OF STAY PENDING APPEAL**

## INTRODUCTION

Appellees seek relief from the Court's order staying the District Court's injunction for one, narrow reason: to prevent Appellants or those acting on their behalf from carrying out plans to carve President Trump's name into the façade of the iconic USIP headquarters building.

The District Court granted summary judgment in favor of Plaintiffs-Appellees and granted injunctive and declaratory relief, based on its determination that the United States Institute of Peace ("USIP") does not exercise executive power and that the statutory restrictions on removal of board members are constitutional. Since June 2025, all components of the District Court's order—which it issued in furtherance

of its judgment that Appellants unlawfully took control of USIP, disposed of its real and personal property worth millions, and took steps to dismantle the organization—have been stayed pending appeal. The Court's *sua sponte* order holding the appeal in abeyance following the Supreme Court's grant of review in *Trump v. Slaughter* had the effect of nullifying the order expediting the government's appeal in light of the stay, and has now extended briefing for almost a full year beyond the end of the original briefing schedule.

During that time, Appellants did *not* maintain the status quo as of the time of the District Court's order. Rather, they continued to dismantle USIP and to actively undermine the organizational independence enshrined in USIP's organic statute—including by affixing the President's name to the building. Unsatisfied with the relative impermanence of external lettering, Appellants apparently now intend to *carve* President Trump's name into the façade of USIP's privately owned headquarters building while this litigation is pending. The building—which was largely funded by private donations to USIP as a tax exempt nonprofit corporation—is a work of expressive architecture designed to be "symbolic of USIP's" independent "mission." *See USIP v. Jackson*, 783 F. Supp. 3d 316, 375, 378-79 (D.D.C. 2025). Alteration of the design to impose a different message would cause irreparable harm.

Because circumstances have materially changed, and because Appellants are exploiting this Court's stay to threaten specific irreparable harm to USIP, Appellees seek a narrow modification of the stay to prevent Appellants from irreparably injuring USIP by carving President Trump's name into its headquarters building or any other permanent structure on the land under USIP control. The threatened carving would impose serious irreparable harm. It is a discrete act that can and should be forestalled through a limited, status-quo-preserving modification of the stay pending appeal.

Before deciding to file this motion, Appellees asked Appellants to represent that they would not carve the President's name onto the USIP building while the case is pending. Appellants' counsel stated that they were not aware of any "imminent" plans to do so, but did not confirm that no such action would be taken pending the outcome of this litigation. Appellants oppose this motion.

## BACKGROUND

To implement an Executive Order to shut USIP down, on March 14, 2025, the President purported to remove all of USIP's board members save the three *ex officio* members, even though Congress forbade USIP from ceasing operations on its own, 22 U.S.C. § 4604(a), and appropriated fiscal year 2025 funding for USIP.

On May 19, 2025, the District Court granted summary judgment in Appellees' favor and entered a multi-component order barring Appellants from taking certain

actions with respect to USIP. 783 F. Supp. 3d at 383-84. Some of this relief ensured that individual Appellees could continue to serve in their lawfully appointed roles as members of the USIP Board. But much of the relief was designed to unwind Appellants' unauthorized efforts to dismantle USIP under the auspices of a depleted board of directors, and to prevent Appellants from further pursuing this course, such that USIP's assets and operations would be restored to the last uncontested status quo. *Id.* (enjoining Appellants from dissipating USIP's assets; declaring invalid the purported appointment of Appellants Jackson and Cavanaugh as acting presidents of USIP; and declaring invalid Jackson and Cavanaugh's actions to dismantle USIP, including the purported transfers for no consideration of USIP's privately owned building and financial assets). On June 27, 2025, a motions panel of this Court stayed all of this relief pending appeal. *USIP v. Jackson*, No. 25-5185, 2025 WL 1840572 (D.C. Cir. June 27, 2025) (per curiam) (hereinafter "Stay Order").

Following entry of the contested Stay Order, the Court entered the parties' jointly requested expedited briefing schedule. Dkt. 2127393 (July 25, 2025). Consistent with the parties' request for oral argument on the earliest possible date, the Court set argument for November 21, 2025. Dkt. 2135887 (Sept. 19, 2025).

On September 29, 2025, acting on its own motion, the Court removed the case from the November 21 argument calendar and held the case in "abeyance pending the Supreme Court's disposition of" *Trump v. Slaughter*. Dkt. 2137602.

On November 26, 2025, the Court denied Appellees' motion for partial vacatur of the Stay Order, which motion sought to lift portions of the Stay Order to allow the "anti-dismantling" elements of the District Court's order to take effect. Dkt. 2147574.

On June 29, 2026, the Supreme Court issued the *Slaughter* decision. On July 31, 2026, the Court returned the case to its active docket and set a schedule for the completion of briefing. Dkt. 2186152. On August 28, 2026, Appellees filed their supplemental brief. Dkt. 2190460. After an extension, Appellants will file their reply brief on October 2, 2026, which will complete the briefing. Dkt. 2192711.

Appellees have previously described the ways in which Appellants have exploited the Stay Order that are inconsistent with the purpose of a stay and that will substantially impair Appellees' ability, should they prevail, to restore USIP to its congressionally mandated activities. *See* Dkts. 2181613, 2182416. One such action was the affixing of lettering bearing the President's name above the Institute's name on the front of the USIP building. *See https://www.bbc.com/news/articles/cp39qx4ledeo* (Dec. 4, 2025).

What prompted this motion was information Appellees received reflecting that Appellants have taken steps to prepare to *carve* the President's name into the USIP headquarters building. Appellees understand that a formal request for the work has been made and a contractor has been selected.

## ARGUMENT

The Court may modify its Stay Order when it "has been turned through changing circumstances into an instrument of wrong." *Consol. Edison Co. of New York, Inc. v. Fed. Power Comm'n*, 511 F.2d 372, 378 (D.C. Cir. 1974) (quoting *United States v. Swift & Co.*, 286 U.S. 106, 114-15 (1932)). Indeed, this Court has recognized its "responsibility to take corrective action when its prior orders threaten to foster rather than forestall irreparable harm." *Id.*

As explained below, if the current Stay Order facilitates Appellants' effort to carve the President's name into USIP's headquarters building, it will foster irreparable harm. Given the change in circumstances—the impending risk of indisputably irreparable harm, the shift in the balance of equities to strongly favor Appellees as to this particular course of conduct by Appellants, and legal developments that suggest Appellees are likely to prevail on the merits—the Stay Order should be modified.

### I. Carving President Trump's Name Into The USIP Building Would Irreparably Injure USIP.

Over the past ten months, Appellants have repeatedly exploited the extended stay period to act in ways that are fundamentally at odds with a stay pending appeal—including bolting the President's name onto the USIP building's exterior, contrary to Congress's direction that this independent nonprofit be named the

"United States Institute of Peace." 22 U.S.C. § 4603(a). Appellees have declined to seek specific relief from the Court during this period.

However, the irreparable injury posed by *carving* President Trump's name into the USIP building changes the calculus and justifies this application. Whether USIP must be subject to the executive's control is a core question in this ongoing litigation. Having lost at the District Court, Appellants should not be able to take advantage of the Stay Order (and the unusually extended period it has been in effect) to literally set things in stone by stamping their view of the merits of this dispute into USIP's headquarters building.

"[I]t is well-settled that unauthorized interference with a real property interest constitutes irreparable harm as a matter of law, given that a piece of property is considered to be a unique commodity for which a monetary remedy for injury is an inherently inadequate substitute." *Shvartser v. Lekser*, 308 F. Supp. 3d 260, 267 (D.D.C. 2018) (rejecting claim that property must be "especially unique" before harm to a party's interest in it is considered irreparable) (quoting *7-Eleven, Inc. v. Khan*, 977 F. Supp. 2d 214, 234 (E.D.N.Y. 2013)).

While the contemplated harm to USIP's building would be irreparable even if the building were not "unique," the harm to the USIP building would be especially acute given its singular architecture and purpose. *See Jackson*, 783 F. Supp. 3d at 378-79 (finding that USIP's "unique building [] is symbolic of USIP's mission," with

a design "intended to reflect and functionally aid the Institute's mission"). Alterations to real property that is the subject of a dispute constitutes irreparable harm. *See, e.g.*, *Brooklyn Heights Ass'n, Inc. v. Nat'l Park Serv.*, 777 F. Supp. 2d 424, 435-36 (E.D.N.Y. 2011) (finding that imminent drilling and boring of pits into the concrete floor of the Tobacco Warehouse, a building "worthy of preservation and care," constituted irreparable harm); *see also Monument Realty LLC v. Washington Metro. Area Transit Auth.*, 540 F. Supp. 2d 66, 76 (D.D.C. 2008) ("Because the Bus Garage is real property that is valued for its uniqueness, the Court concludes that the plaintiffs have established that the harm here cannot be remedied with monetary damages alone, and is thus irreparable.").

## II. The Balance Of Equities Has Changed.

On the question whether the Stay Order should be modified to prevent Appellants from carving the President's name into the USIP building while the appeal proceeds, the balance of equities strongly favors Appellees. Notwithstanding the importance that the President and his supporters place on attaching his name to notable buildings, *see, e.g.*, *Beatty v. Trump*, No. 25-cv-4480-CRC, 2026 WL 2718566 (Sept. 15, 2026) (rejecting second attempt of Kennedy Center board, which the President chairs, to put the President's name on the Kennedy Center building and grounds); *see also https://www.nbcnews.com/politics/donald-trump/trump-asked-dulles-penn-station-named-exchange-gateway-money-released-rcna257708* (Feb.

5, 2026) (reporting Administration's demand to rename Dulles Airport and New York's Penn Station after President Trump), Appellants will suffer no harm or prejudice whatsoever if they are precluded from carving the President's name into the USIP building unless and until this litigation concludes in their favor. Indeed, as noted above, Appellants have already put the President's name on the building via bolted-on lettering. What possible equitable interest could be at stake in making this change permanent now, while litigation remains pending?

By contrast, the harm to USIP will be substantial in the absence of relief. In addition to the defacement of its private property, USIP faces the prospect, should it prevail in this litigation, of regaining control of a building that has been permanently altered in a way that is fundamentally inconsistent with the structure and mission assigned it by Congress. In short, Congress created USIP as an independent nonprofit to pursue research and training in the field of non-violent conflict resolution. 22 U.S.C. §§ 4603-04. As Appellees explained in their brief, the record shows that USIP is effective in its congressionally mandated mission "precisely because parties on all sides understand USIP to be independent from, and not to speak for," the United States' foreign policy apparatus. Dkt. 2137112 at 10. Having its building branded with the name of a President would signal incorrectly that USIP is part of or dependent upon the Executive Branch, or at minimum that USIP lacks the independence that has been critical to its effectiveness over 40 years.

As part of its remedial order, the District Court enjoined Appellants from "further trespass against the real and personal property belonging to the Institute and its employees, contractors, agents, and other representatives." 7873 F. Supp. 3d at 384. In its prior motion for partial vacatur, Appellees did not seek to lift the Stay Order as to this part of the injunction, so that Appellants could care for and maintain USIP's physical assets, including the building. *See* Dkt. 2140334 at n.1. However, now that Appellants appear ready to affirmatively (and more permanently) deface the building instead of maintaining and preserving it, the Court should modify the Stay Order to the extent necessary to prevent that harm from occurring.

## III. *Slaughter* Erodes The Stay Panel's Likelihood Of Success Determination.

The Stay Order rested mainly on the motion panel's conclusion that Appellants were like to succeed on the merits. However, since then, the Supreme Court has issued the *Slaughter* decision. For the reasons set out in Appellees' supplemental brief, *Slaughter* supports the District Court's conclusion that USIP does not exercise executive power and thus that the USIP Act's removal restrictions for its non-governmental board members are constitutional. Dkt. 2190460.

**CONCLUSION**

For the foregoing reasons, Appellees respectfully request that the Court modify the Stay Order insofar as necessary to prohibit Appellants (or anyone acting on their behalf) from carving the President's name into any part of the USIP building or affixing his name on any other permanent USIP structure on the grounds subject to USIP's control.

September 17, 2026

Respectfully submitted,

*/s/ Andrew N. Goldfarb*
Andrew N. Goldfarb
J. Benjamin Jernigan
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
agoldfarb@zuckerman.com
bjernigan@zuckerman.com

William J. Murphy
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Telephone: (410) 332-0444
wmurphy@zuckerman.com

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the applicable type-volume limitation set forth in Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,209 words.

I further certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared using Microsoft Word Office in a proportionally spaced typeface (Times New Roman, 14 point).

/s/ *Andrew N. Goldfarb*
Andrew N. Goldfarb