[ARGUMENT SCHEDULED FOR NOVEMBER 17, 2026]

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| UNITED STATES INSTITUTE OF PEACE, et al.,<br><br>Plaintiffs-Appellees,<br><br>v.<br><br>KENNETH JACKSON, in his official capacity as Assistant to the Administrator for Management and Resources for USAID, et al.,<br><br>Defendants-Appellants. | No. 25-5185 |

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR PARTIAL VACATUR OF STAY PENDING APPEAL**

In June 2025, a panel of this Court decided the appropriate status quo while this appeal remains pending: the President can continue to control the operations of the United States Institute of Peace (USIP), an executive agency exercising "substantial executive power[s]," through principal executive officers of his choosing—despite the district court's injunction to the contrary. *See U.S. Inst. of Peace v. Jackson*, No. 25-5185, 2025 WL 1840572, at *1-2 (D.C. Cir. June 27, 2025) (per curiam). Now, for the third time since that stay order was issued, plaintiffs again ask the Court to undo

that status quo. Specifically, plaintiffs seek partial vacatur of the stay order to permit the district court's injunction to take effect to the extent it would prohibit the government "from carving the President's name into any part of the USIP building or affixing his name on any other permanent USIP structure on the grounds." Mot.11. Because plaintiffs have not justified the extraordinary relief that they request, their motion should be denied.

## BACKGROUND

1. This case involves a challenge to the President's removal of members of the Board of Directors of the U.S. Institute of Peace (USIP) in March 2025. Six of USIP's terminated Board members and its former president brought suit, challenging their removals and the subsequent actions taken by newly designated leadership. JA19-46. On May 19, 2025, the district court entered summary judgment for plaintiffs, holding that the President's removal of Board members was ultra vires and the removals and subsequent actions of the agency were without legal effect. JA386-99. The court ordered that plaintiffs' removals as Board members and president were invalid and null and void, invalidated defendants' actions taken after the removals, and enjoined defendants from "from further trespass against the real and personal property belonging to the Institute" and "from maintaining, retaining, gaining, or exercising any access or control over the

Institute's offices, facilities, computer systems, or any other records, files, or resources, and from acting or purporting to act in the name of Institute." JA295-96.

2. On June 27, 2025, a unanimous panel of this Court granted a stay pending appeal of the district court's order. The panel concluded the government "is likely to succeed on its claim that the [USIP] Board's removal protections are unconstitutional" "[b]ecause the Institute exercises substantial executive power[s]" in the "domain of the President's foreign affairs powers." *Jackson*, 2025 WL 1840572, at *1-2. The panel further concluded that "[t]he President faces irreparable harm from not being able to fully exercise his executive powers," which "outweighs any harm the removed board members may face." *Id.* at *2. Finally, the panel determined that "a stay is in the public interest because the people elected the President, not the removed board members, to wield the executive power." *Id.*

Plaintiffs petitioned for rehearing en banc and sought an emergency administrative stay of the June 27 stay order. The en banc Court denied the requests, without noting any dissents. Order 1 (July 24, 2025). The parties proceeded to expedited merits briefing, and the Court scheduled oral argument for November 21, 2025. Order 1 (Sept. 19, 2025). On September

29, however, the Court sua sponte removed the case from the argument calendar and held it in abeyance pending the Supreme Court's disposition of *Trump v. Slaughter*, No. 25-332 (S. Ct.) (cert. granted Sept. 22, 2025). Order 1 (Sept. 29, 2025).[1]

3. On October 15, 2025, plaintiffs moved for partial vacatur of the June 27 stay order. Their motion did not request vacatur of the stay order as it pertains to staying the reinstatement of plaintiffs to the Board, but it did request vacatur to allow other components of the district court's injunction to go into effect pertaining to the appointment of acting presidents and the nullification of actions taken by defendants in managing USIP immediately following the removal of plaintiffs. Mot. for Partial Vacatur 1-2 (Oct. 15, 2025). A panel of the Court unanimously denied the motion for partial vacatur, explaining that plaintiffs had "not demonstrated that circumstances have changed such that partial vacatur of the stay pending appeal is warranted." Order 1 (Nov. 26, 2026).

4. On September 17, 2026, plaintiffs filed the instant "emergency motion" to partially vacate the stay pending appeal. The motion represents

[1] The Supreme Court issued its decision in *Slaughter* on June 29, 2026. *See Trump v. Slaughter*, 146 S. Ct. 2283 (2026). On July 31, 2026, the Court issued an order removing the case from abeyance and setting a schedule for remaining briefing. The government's reply brief is due October 2. Oral argument is scheduled for November 17.

that plaintiffs "received [information] reflecting that Appellants have taken steps to prepare to *carve* the President's name into the USIP headquarters building. Appellees understand that a formal request for the work has been made and a contractor has been selected." Mot.5. Plaintiffs do not state from whom they learned this information, who in the government purportedly made "a formal request for the work" and selected a contractor, or when these actions purportedly occurred. The motion seeks to partially vacate the stay order "as necessary to prohibit Appellants (or anyone acting on their behalf) from carving the President's name into any part of the USIP building or affixing his name on any other permanent USIP structure on the grounds subject to USIP's control." Mot.11.

In response to an email inquiry in advance of plaintiffs' motion, the undersigned counsel advised plaintiffs' counsel that we were aware of no imminent plans to engrave the President's name onto the USIP building, and thus saw no basis for plaintiffs to seek emergency relief in this Court. Since the motion was filed, the undersigned counsel have consulted further with contacts at the State Department, which currently occupies and controls the USIP building pursuant to an occupancy agreement and permit with USIP. We are informed by those contacts that there are no current plans to engrave the President's name onto the USIP building. As to plaintiffs' alleged

information, we have been informed by our State Department contacts that in March 2026, the Department performed preparatory market research for possible engraving of the USIP building and retaining wall, which involved contacting two potential vendors and receiving an estimate from one vendor. However, the Department has authorized us to state that it did not take further action with awards or selecting a vendor for any engraving since that time and has no current plans to move forward with engraving the building or retaining wall.

## ARGUMENT

In granting the government a stay pending appeal, a unanimous panel of this Court set the status quo that would govern while this appeal remains pending: that there be no injunction in effect preventing the President from controlling the operations or property of USIP. Twice already this Court has resisted plaintiffs' attempts to disrupt that status quo. In seeking to do so once again, plaintiffs have again failed to "demonstrate[] that circumstances have changed such that partial vacatur of the stay pending appeal is warranted." Order 1 (Nov. 26, 2026) (citing *Consol. Edison Co. of New York, Inc. v. Fed. Power Comm'n*, 511 F.2d 372, 378 (D.C. Cir. 1974)). Plaintiffs purport to identify two new changed circumstances, neither of which supports their extraordinary request for relief.

1.a. Plaintiffs allege that "Appellants apparently now intend to carve President Trump's name into the façade of USIP's … headquarters building while this litigation is pending," Mot.2, citing "information" that plaintiffs purport to have "received" to the effect that "a formal request for the work has been made and a contractor has been selected," Mot.5. Plaintiffs contend that the fact that the government "now … appear[s] ready to affirmatively (and more permanently) deface the building" constitutes changed circumstances warranting relief from the stay. Mot.10. Significantly, however, plaintiffs do not specify from whom they received this information, who in the government is alleged to have contracted for this work, when those contracting actions allegedly took place, or when any purported carving is scheduled to occur. Plaintiffs' vague allegations about what the government "appears ready" to do and "apparently" intends do not demonstrate that circumstances on the ground have in fact materially changed.

Indeed, it appears that plaintiffs' allegations reference actions taken by the State Department back in March 2026 to investigate the possible engraving of the building. But the State Department has authorized us to state that no further action has been taken by the Department since that time, and the Department has no current plans to move forward with any

engraving.

b. Even if there were such plans, they would not constitute changed circumstances warranting a revision to the stay pending appeal. Plaintiffs themselves allege that the government already "bolt[ed] the President's name onto the USIP building's exterior." Mot.6. Plaintiffs have thus been aware of the government's intent to affix the President's name to the USIP building, such that any new plans to do so now through different means would not constitute changed circumstances. And if bolting the President's name to the stone face of the building does not constitute irreparable harm—as plaintiffs seem to concede—it is difficult to see why carving or otherwise "affixing [the President's] name" (Mot.11) on structures on the USIP grounds would necessarily do so.

Additionally, plaintiffs have long alleged that permitting government control of USIP during this appeal threatens "damage to USIP's headquarters" and "risks effectively destroying USIP." Pls. Pet. for Rehearing En Banc 17-18 (June 29, 2025); Pls. Opp'n to Mot. for Stay Pending Appeal 21-22 (June 2, 2025) (citing harm in the form of "the misappropriation of [USIP's] headquarters building" and USIP's "unique building … fall[ing] into disrepair in Defendants' hands"). This Court granted a stay pending appeal and declined to reconsider the stay en banc

notwithstanding those allegations. Plaintiffs' new, unfounded allegations that the government plans to alter the building in a specific way do not amount to materially changed circumstances.

c. Finally, plaintiffs are improperly asserting harms to the USIP building in seeking relief. As the government has explained, USIP itself is not properly viewed as a plaintiff in this litigation. Only six former Board members and the Board's former president are plaintiffs, meaning that a majority of the 15 voting members of the formerly constituted Board did not authorize filing suit. And plaintiffs cannot rely on their former status as Board members and president to invoke the entity's interests, because responsibility over USIP's assets is vested in the offices; plaintiffs have no personal right to exercise the powers of an office after having been removed. *See* Opening Br.60-61; Gov't Stay Mot. 24-25 (May 23, 2025).

2. Plaintiffs also contend that there are changed circumstances in light of a "legal development[]," Mot.6, contending that "*Slaughter* erodes the stay panel's likelihood of success determination," Mot.10. That is incorrect. As the government will explain in its forthcoming reply brief (due October 2), the stay panel correctly concluded that USIP's Board members exercise executive power, and *Slaughter* confirms the stay panel's conclusion that the Board members therefore must be subject to at-will removal.

Additionally, *Slaughter* was decided nearly three months ago. If plaintiffs truly thought that *Slaughter* "eroded" the stay panel's conclusion regarding likelihood of success on the merits such as to warrant vacatur of the stay pending appeal, they would not have waited almost three months to file this motion.

Moreover, plaintiffs' description of the effects of *Slaughter* in the new motion to vacate contradicts their prior assertions. In seeking to expedite oral argument in this case three days after *Slaughter* was decided, plaintiffs asserted that "*Slaughter* does not resolve this case." Mot. to Vacate Abeyance Order 2 (July 2, 2026). And in previously seeking a partial vacatur of the stay in this case, plaintiffs alleged that if their arguments were correct that USIP does not exercise executive power, *Slaughter* would not affect the outcome of this appeal. *See* Pls. Mot. for Partial Vacatur 4 (Oct. 30, 2025) (contending that it had become clear that *Slaughter* would have no impact on "the question whether Congress may restrict removal of Board members of an entity that does not exercise executive power"); *see id.* at 1 ("[A]ffirmance of the district court's ruling that the removals of USIP's board members were unlawful will not likely be affected by the outcome of the first question presented in *Slaughter*."). It is incongruous for plaintiffs to now assert that *Slaughter* alone so clearly undermines the stay panel's conclusion

regarding likelihood of success on appeal as to warrant partial vacatur of the stay.

## CONCLUSION

The Court should deny plaintiffs' motion.

Respectfully submitted,

SHARON SWINGLE
/s/ *McKaye L. Neumeister*
MCKAYE L. NEUMEISTER
Attorneys, Appellate Staff
Civil Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Room 7231
Washington, D.C. 20530
(202) 514-8100

SEPTEMBER 2026

**CERTIFICATE OF COMPLIANCE**

I certify that this motion complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 2087 words.

*/s/ McKaye L. Neumeister*
McKaye L. Neumeister